CARLA A. McCAULEY (State Bar No. 223910)
    carlamccauley@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California  90017-2566
Tel.:  (213) 633-6800  Fax:  (213) 633-6899

ROBERT D. BALIN (*pro hac vice*)
    robbalin@dwt.com
LACY H. KOONCE, III (*pro hac vice*)
    lancekoonce@dwt.com
SAMUEL BAYARD (*pro hac vice*)
    samuelbayard@dwt.com
GEORGE WUKOSON (*pro hac vice*)
    georgewukoson@dwt.com
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas
New York, New York  10020
Tel.:  (212) 489-8230  Fax:  (212) 489-8340
ATTORNEYS FOR PLAINTIFFS

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHINA CENTRAL TELEVISION, a China company; CHINA INTERNATIONAL COMMUNICATIONS CO., LTD., a China company; TVB HOLDINGS (USA), INC., a California corporation; and DISH NETWORK L.L.C., a Colorado corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> CREATE NEW TECHNOLOGY (HK) LIMITED, a Hong Kong company; HUA YANG INTERNATIONAL TECHNOLOGY LIMITED, a Hong Kong company; SHENZHEN GREATVISION NETWORK TECHNOLOGY CO. LTD., a China company; CLUB TVPAD, INC., a California corporation; BENNETT WONG, an individual, ASHA MEDIA GROUP INC. d/b/a TVPAD.COM, a Florida corporation; AMIT BHALLA, an individual; NEWTVPAD LTD. COMPANY d/b/a NEWTVPAD.COM a/k/a TVPAD USA, a Texas corporation; LIANGZHONG ZHOU, an individual; HONGHUI CHEN d/b/a E-DIGITAL, an individual; JOHN DOE 1 d/b/a BETV; JOHN DOE 2 d/b/a YUE HAI; JOHN DOE 3 d/b/a 516; JOHN DOE 4 d/b/a HITV; JOHN DOE 5 d/b/a GANG YUE; JOHN DOE 6 d/b/a SPORT ONLINE; JOHN DOE 7 d/b/a GANG TAI WU XIA; and JOHN DOES 8-10, <br><br> Defendants. | Case No. <br> **CV 15-1869 MMM (AJWx)** <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS CREATE NEW TECHNOLOGY (HK) LIMITED AND HUA YANG INTERNATIONAL TECHNOLOGY LIMITED; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> [[Proposed] Order; Compendium of Evidence Vols. I through 5, Application to Seal concurrently submitted] <br><br> Date:  November 23, 2015 <br> Time:  10:00 a.m. <br> Courtroom:    780 <br> Judge:        Hon. Margaret M. Morrow <br><br> Complaint Filed:  March 13, 2015 |

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ......................................... 1

I.    INTRODUCTION ................................................................................. 1

II.   ARGUMENT ...................................................................................... 4

    A.    Legal Standard Governing Default Judgment Motions....................... 4

    B.    Plaintiffs Have Satisfied All Procedural Requirements for
        Obtaining a Default Judgment Against Defendants............................ 4

    C.    The *Eitel* Factors Favor Entry of Default Judgment In This Case....... 6

        1.    Plaintiffs Will Be Prejudiced Without Entry of
            Default Judgment. ........................................................ 6

        2.    Plaintiffs' Claims Are Meritorious and The
            Complaint Sufficiently Pled..................................... 7

            a.    Defendants Have Engaged in Direct Infringement of
                Plaintiffs' Copyrights...................................... 7

            b.    Defendants Have Engaged in Secondary Copyright
                Infringement....................................................... 9

            c.    Defendants Violated the Lanham Act and Infringed
                the TVB and CCTV Trademarks. .................................. 10

            d.    Defendants' Conduct Constitutes a Violation of
                Business & Professions Code § 17200. ......................... 12

        3.    Plaintiffs' Damages Are Appropriate Given the
            Seriousness and Scope of the Infringing Conduct. ................. 12

        4.    There Is No Possibility of Dispute Regarding
            Material Facts............................................................. 14

        5.    There Is No Possibility of Excusable Neglect. ..................... 15

        6.    Policy For Deciding Case On the Merits. ......................... 15

    D.    Plaintiffs Are Entitled To All of Their Requested Relief. ................. 16

        1.    Plaintiffs' Request for Statutory Damages For
            Willful Copyright Infringement Is Reasonable..................... 16

            a.    Willfulness ................................................... 16

            b.    Number of Registered Works ................................... 17

            c.    The Amount Requested Is Consistent with Precedent .. 17

MOTION FOR DEFAULT JUDGMENT
DWT 26997300v12 0094038-000021

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

d.      Plausible Relationship to Actual Damages ................... 19

2.     Plaintiffs' Request for Damages of $25,460,691 for Trademark Infringement Is Reasonable. ................................. 22

3.     Plaintiffs Are Entitled to Injunctive Relief. ............................ 23

4.     Attorneys' Fees and Costs ....................................................... 25

5.     Post-Judgment Interest ............................................................ 25

III.    CONCLUSION .............................................................................. 25

ii

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

Page

**Cases**

*A & M Records, Inc. v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001) .......................................................................... 7, 9

*ABC, Inc. v. Aereo, Inc.*,
   134 S. Ct. 2498 (2014) ...................................................................................... 8, 9

*Acad. of Motion Picture Arts & Scis. v. Creative House Prom's., Inc.*,
   944 F.2d 1446 (9th Cir. 1991) ............................................................................. 12

*Apple Computer, Inc. v. Franklin Computer Corp.*,
   714 F.2d 1240 (3d Cir. 1983) ............................................................................... 24

*Century 21 Real Estate Corp. v. Sandlin*,
   846 F.2d 1175 (9th Cir. 1988) ............................................................................. 23

*Chi-Boy Music v. Charlie Club, Inc.*,
   930 F.2d 1224 (7th Cir. 1991) ............................................................................. 16

*Columbia Pictures Indus., Inc. v. Fung*,
   710 F.3d 1020 (9th Cir. 2013) ............................................................................... 9

*Columbia Pictures v. Krypton Broadcasting*,
   259 F.3d 1186 (9th Cir. 2001) ................................................................... 3, 16, 18

*Cooper v. Ningbo Xingqiang Metallic Prods. Co.*,
   No. 11-CV-00745-RLH, 2013 WL 1250867 (D. Nev. Mar. 26, 2013) ................ 18

*Craigslist, Inc. v. Kerbel*,
   2012 U.S. Dist. LEXIS 108573 (N.D. Cal. Aug. 2, 2012) .................................. 23

*Derek Andrew, Inc. v. Poof Apparel Corp.*,
   528 F.3d 696 (9th Cir. 2008) ............................................................................... 16

*DFSB Kollective Co. v. Tran*,
   11CV1049 LHK, 2011 WL 6730678 (N.D. Cal. Dec. 21, 2011) ......................... 19

*DISH Network L.L.C. v. TV Net Solutions, LLC*,
   12-CV-1629, 2014 U.S. Dist. LEXIS 165120 (M.D. Fla. Nov. 25,
   2014) ...................................................................................................................... 8

iii

*Eitel v. McCool*,
  782 F.2d 1470 (9th Cir. 1986) ...................................................................*passim*

*Elektra Entm't Group Inc. v. Bryant*,
  No. CV 03-6381 GAF, 2004 WL 783123 (C.D. Cal. Feb. 13, 2004) .......... 6, 8, 15

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
  76 F.3d 259 (9th Cir. 1996) ............................................................................ 10

*Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*,
  886 F.2d 1545 (9th Cir. 1989) ........................................................................ 16

*Geddes v. United Fin. Group*,
  559 F.2d 557 (9th Cir. 1977) ....................................................................... 4, 7

*Graduate Mgmt. Admission Council v. Raju*,
  267 F. Supp. 2d 505 (E.D. Va. 2003) ............................................................. 18

*Harris v. Emus Records Corp.*,
  734 F.2d 1329 (9th Cir. 1984) ........................................................................ 19

*IO Grp., Inc. v. Antelope Media, LLC*,
  No. C-08-4050 MMC, 2010 WL 2198707 (N.D. Cal. May 28, 2010)........... 18, 24

*Jackson v. Sturkie*,
  255 F. Supp. 2d 1096 (N.D. Cal. 2003) .......................................................... 16

*Lamb v. Starks*,
  1997 U.S. Dist. LEXIS 11369 (N.D. Cal. Jul. 2, 1997)....................................... 19

*Lava Records, LLC v. Ates*,
  Civ. A-05-1314, 2006 WL 1914166 (W.D. La. July 11, 2006) ......................... 24

*Lindy Pen Co. v. Bic Pen Corp.*,
  982 F.2d 1400 (9th Cir. 1993) ........................................................................ 25

*Louis Vuitton Malletier SA v. Akanoc Solutions*,
  658 F.3d 936 (9th Cir. 2011) .......................................................................... 18

*Lucasfilm Ltd. v. Media Market Gp., Ltd.*,
  182 F. Supp. 2d 897 (N.D. Cal. 2002) ............................................................ 23

*MAI Systems Corp. v. Peak Computer, Inc.*,
  991 F.2d 511 (9th Cir. 1993) ..................................................................... 23, 24

iv

MOTION FOR DEFAULT JUDGMENT
DWT 26997300v12 0094038-000021

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Marcelos v. Dominguez,*
   No. C 08-00056 WHA, 2009 WL 230033 (N.D. Cal. Jan. 29, 2009) ................. 15

*Meadows v. Dom. Rep.,*
   817 F.2d 517 (9th Cir. 1987) ............................................................ 15

*National Football League v. PrimeTime 24 Joint Venture,*
   131 F. Supp. 2d 458 (S.D.N.Y. 2001) ................................................. 18

*O'Reilly v. Valley Entertainment, Inc.,*
   C-09-03580-CW, 2011 U.S. Dist. LEXIS 15826 (N.D. Cal. 2011) ....................... 5

*Optimal Pets, Inc. v. Nutri-Vet, LLC,*
   877 F. Supp. 2d 953 (C.D. Cal. 2012) ................................................. 11

*Peer Intern. Corp. v. Pausa Records, Inc.,*
   909 F.2d 1332 (9th Cir 1990) ............................................................ 18

*PepsiCo, Inc. v. Cal. Sec. Cans,*
   238 F. Supp. 2d 1172 (C.D. Cal. 2002) ........................................... 7, 12

*Perfect 10, Inc. v. Amazon.com, Inc.,*
   508 F.3d 1146 (9th Cir. 2007) .......................................................... 9

*Philip Morris USA v. Castworld Prods., Inc.,*
   219 F.R.D. 494 (C.D. Cal. 2003) ................................................... 6, 14

*Schwarzenegger v. Fred Marin Motor Co.,*
   374 F.3d 797 (9th Cir. 2004) ............................................................ 5

*Sennheiser Elect. Corp. v. Eichler,*
   CV 12-10809 MMM, 2013 WL 3811775 (C.D. Cal. July 19, 2013) ........... 4, 7, 19

*Shanghai Automation Instrument Co., Ltd. v. Kuei,*
   194 F. Supp. 2d 995 (N.D. Cal. 2001) ................................................. 15

*Taylor Made Golf Co., Inc. v. Carsten Sports Ltd.,*
   175 F.R.D. 658 (S.D. Cal. 1997) ...................................................... 25

*Two Pesos, Inc. v. Taco Cabana, Inc.,*
   505 U.S. 763 (1992) ...................................................................... 10

*U2 Home Entm't, Inc. v. Wei Ping Yuan,*
   245 Fed. Appx. 28 (2d Cir. 2007) ..................................................... 18

v

MOTION FOR DEFAULT JUDGMENT
DWT 26997300v12 0094038-000021

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Warner Bros. Entertainment Inc. v. Caridi*,

    346 F. Supp. 2d 1068 (C.D. Cal. 2004) ............................................13, 15, 16, 18

**Statutes**

15 U.S.C.

    § 1116(a) ..............................................................................................................23

    § 1117(a) ......................................................................................................22, 25

    § 1121(a) ................................................................................................................5

    § 1125(a) ..............................................................................................................10

    § 1125(a)(1)(B) ..........................................................................................11, 12, 25

17 U.S.C.

    §§ 101, 411(a) ........................................................................................................8

    § 106....................................................................................................................7

    § 501(a) ................................................................................................................8

    § 502(a) ..............................................................................................................23

    § 504(b) ..............................................................................................................21

    § 504(c)(1)-(2)......................................................................................................16

    § 505 ....................................................................................................................25

28 U.S.C.

    § 1331 ....................................................................................................................5

    § 1338 ....................................................................................................................5

    § 1338(b) ..............................................................................................................6

    § 1367 ....................................................................................................................6

    § 1961(a) ..............................................................................................................25

50 App. U.S.C. § 521 ................................................................................................4

California Business and Professions Code

    § 14330 ................................................................................................................23

    § 14340 ................................................................................................................23

    § 17200................................................................................................6, 7, 12, 23

**Rules**

Federal Rule of Civil Procedure 55........................................................................15

Federal Rule of Civil Procedure 55(b)(2) ................................................................4

Local Rule 54 ........................................................................................................25

Local Rule 55-3 ....................................................................................................25

MOTION FOR DEFAULT JUDGMENT

DWT 26997300v12 0094038-000021

**DAVIS WRIGHT TREMAINE** LLP

865 S. FIGUEROA ST, SUITE 2400

LOS ANGELES, CALIFORNIA 90017-2566

(213) 633-6800

Fax: (213) 633-6899

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on November 23, 2015 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 780 of the Honorable Margaret M. Morrow, located at 255 East Temple Street, Los Angeles, California, Plaintiffs China Central Television, China International Communications Co., Ltd., TVB Holdings (USA), Inc., and DISH Network L.L.C. (collectively "Plaintiffs") will and hereby do move this Court pursuant to Federal Rule of Civil Procedure 55 for Default Judgment against Defendants Create New Technology (HK) Limited and Hua Yang International Technology Limited ("Defendants").

As set forth in the accompanying declarations and memorandum of points and authorities, Plaintiffs are entitled to entry of default judgment against Defendants as they were both properly served with the Complaint in this action, they both failed to timely respond, and default has been entered against Defendants. Accordingly, Plaintiffs seek judgment in their favor and against the Defendants for statutory damages in the amount of $300,900,000 on Plaintiffs' copyright claims, and $25,460,691 in damages on Plaintiffs' trademark claims, for attorneys' fees and costs and for post-judgment interest.  In addition, Plaintiffs seek an Order permanently enjoining and restraining Defendants, their agents, servants, employees and all persons acting in concert with them, from infringing or fostering others to infringe Plaintiffs' Copyrighted Programming or the CCTV or TVB Marks, as more fully set forth in Plaintiffs' concurrently lodged Proposed Order Granting Plaintiffs' Motion for Default Judgment and Permanent Injunction.

///

///

MOTION FOR DEFAULT JUDGMENT
DWT 26997300v12 0094038-000021

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

This Motion is based upon this Notice, the Memorandum of Points and Authorities, the Declarations of Carla A. McCauley, George P. Wukoson, Liangzhong Zhou, Christopher Kuelling, Samuel P. Tsang, Chunguang Lu, Christopher Weil and Nicholas Braak, and Exhibits 1 through 67, and any additional evidence and arguments as may be presented at or before any hearing on this matter.

DATED:  September 14, 2015

DAVIS WRIGHT TREMAINE LLP
CARLA A. McCAULEY
ROBERT D. BALIN (*pro hac vice*)
LACY H. KOONCE, III (*pro hac vice*)
SAMUEL BAYARD (*pro hac vice*)
GEORGE WUKOSON (*pro hac vice*)


By  /s/Carla A. McCauley
_____
        Carla A. McCauley

Attorneys for Plaintiffs
CHINA CENTRAL TELEVISION; CHINA INTERNATIONAL COMMUNICATIONS CO., LTD.; TVB HOLDINGS (USA), INC.; AND DISH NETWORK L.L.C.

2

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This action arises out of a massive copyright infringement enterprise that Defendants Create New Technology (HK) Limited ("CNT") and Hua Yuang International Technology Limited ("HYIT") (collectively "Defendants") perpetrate through a set-top television box known as the TVpad. The infringing television retransmission service that Defendants provide through the TVpad device ("TVpad Service") originates in China and targets viewers in the United States, among other countries, deliberately transforming those viewers into infringers themselves who further transmit unauthorized programming to others.  Since 2011 this infringing service has intercepted and delivered to U.S. TVpad users—24 hours per day, seven days a week—virtually every minute of television programming transmitted by Plaintiffs in China across dozens of channels. The scale of the operation is breathtaking: The TVpad Service has illegally broadcast well over ***one million hours of infringing programming***.[1] CNT boasts that it has sold 11 million TVpads globally[2]—all on the strength of the TVpad's ability to deliver infringing content— which equates to well over ***two billion dollars*** in worldwide revenues from sales of the device.

As the largest broadcasters of Chinese-language television in mainland China and Hong Kong (Complaint ¶¶1-3, 5), respectively, China Central Television ("CCTV") and Television Broadcasts Limited ("TVB") are the primary victims of this rampant and willful infringement, directed primarily at Chinese-speaking TVpad users. Weil Decl. ¶¶5-16. Plaintiffs CCTV, China International Communications Co., Ltd., TVB Holdings (USA), Inc., and DISH Network L.L.C. (collectively

---

[1] Declaration of Nicholas Braak ("Braak Decl.") ¶14; Declaration of Samuel P. Tsang ("Tsang Decl.") ¶5.

[2] Declaration of Christopher Weil ("Weil Decl.") Ex. 58 at 1.

MOTION FOR DEFAULT JUDGMENT
DWT 26997300v12 0094038-000021

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

"Plaintiffs") are the legal and beneficial owners of exclusive rights to exploit copyrighted CCTV and TVB television programs in the United States, and Defendants' willful actions have infringed Plaintiffs' copyrights every single day on an hourly basis for years, causing them severe, ongoing injury. Complaint ¶¶2-3. In addition, Defendants use Plaintiffs' trademarks to market their pirate TVpad Service, including falsely claiming to consumers that the programming offered is authorized by Plaintiffs.  Complaint ¶¶138-141.

To make matters worse, Defendants have deliberately thumbed their noses at the U.S legal process and in particular this Court. First, Defendants ignored cease and desist letters threatening legal action. Then, after being served with the Complaint, rather than defending the instant lawsuit (after first hiring, then firing, U.S. counsel), Defendants opted to default, while continuing to sell the TVpad device and TVpad Service to U.S. consumers. Most egregiously, after this Court entered a preliminary injunction on June 11, 2015, Defendants continued to brazenly engage in their infringing conduct, forcing Plaintiffs to move for contempt, which motion is pending before this Court. At every step, rather than curtailing their actions, Defendants have intensified their infringing conduct – including by opening their first physical storefront in California. Declaration of Carla McCauley ("McCauley Decl.") Ex. 18.

In light of the vast scope of this willful infringement, and now that the Clerk of Court has entered default, Plaintiffs respectfully request that default judgment be entered against Defendants. Plaintiffs seek the maximum amount of statutory damages allowable under the Copyright Act ($150,000 per work) for each of the 2,006 registered television programs at issue here, for a total of **$300,900,000**. While large, the statutory damages sought here bear a plausible relationship to Plaintiffs' likely actual damages (over $296 million), and Defendants' likely infringing profits (over $25 million). Plaintiffs also seek **$25,460,691** in actual damages for trademark infringement under the Lanham Act. Given the facts, Plaintiffs' requested damages for copyright and trademark infringement are eminently reasonable, as are their

MOTION FOR DEFAULT JUDGMENT
DWT 26997300v12 0094038-000021

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

requests for attorneys' fees, costs and permanent injunctive relief to prevent continued infringement of their copyrighted works and trademarks by these recalcitrant Defendants and their agents.

Significantly, the amounts that Plaintiffs seek are not based on guesswork, but on hard data. Plaintiffs have, *inter alia*, served subpoenas on Defendants' distribution center in California, on one of their banks, and on their international shipping companies. Plaintiffs have elicited information from TVpad distributors and obtained customs records showing Defendants' TVpad shipments.  Plaintiffs have made extraordinary efforts to obtain data that Defendants have at their ready disposal, but have not produced because of their calculated decision not to defend. The sums that Plaintiffs seek here, if anything, likely understate the true damages.

Few copyright cases have ever involved the staggering amount of infringing content at issue here. Even in *Columbia Pictures v. Krypton Broadcasting*, 259 F.3d 1186 (9th Cir. 2001), in which the plaintiff was awarded $31.68 million in maximum statutory damages—which was before the statutory maximum was raised to $150,000 per work—there were only 440 television episodes infringed. Here, Plaintiffs hold copyright registrations for over 2,000 episodes (over five times as many works), and those registrations are a mere drop in the bucket compared to the total number of Plaintiffs' works that Defendants have infringed.[3]

The $326,360,691 award that Plaintiffs seek here is manifestly reasonable given the massive scope of Defendants' infringement, the egregiousness of Defendants' continuing willful—indeed, contumacious—conduct, the actual harm that Plaintiffs have suffered, and the ill-gotten gains that Defendants have received.

---

[3] In another copyright infringement case involving the TVpad, Judge Klausner of this Court recently awarded a $65 million default judgment to Korean-language broadcasters who sued these same Defendants. McCauley Decl. Ex. 37 ("*Munhwa* Order"). The number of TVpad units sold to Korean-speaking consumers in the United States is dwarfed, however, by those sold to Chinese-speaking consumers. McCauley Decl. ¶57 (10% of TVpad units sold are to Korean-speaking users).

MOTION FOR DEFAULT JUDGMENT
DWT 26997300v12 0094038-000021

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## II.   ARGUMENT

### A.   Legal Standard Governing Default Judgment Motions.

Upon entry of default, the complaint's factual allegations regarding liability are taken as true and are deemed admitted. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977); *Sennheiser Elect. Corp. v. Eichler*, CV 12-10809 MMM (PLAx), 2013 WL 3811775, at *2 (C.D. Cal. July 19, 2013) ("[T]he factual allegations of the complaint, except those concerning damages, are deemed to have been admitted by the non-responding party" after default). "If the court determines that the allegations in the complaint are sufficient to establish liability, it must then determine the 'amount and character' of the relief that should be awarded." *Id*.

### B.   Plaintiffs Have Satisfied All Procedural Requirements for Obtaining a Default Judgment Against Defendants.

Plaintiffs served the Summons and Complaint on HYIT on March 17, 2015, and on CNT on March 18, 2015. McCauley Decl. Ex.8; Dkt. No. 64 (April 27, 2015 McCauley Decl. ¶¶3-4 and Ex. B and April 21, 2015 Declaration of Tse Wai Suen ¶¶ 6-7); Dkt. No. 67 (April 30, 2015 McCauley Decl. ¶¶3-4 and Ex. B and April 27, 2015 Declaration of Tse Wai Suen ¶¶ 6-7). HYIT has not appeared or responded to the Complaint. *See* McCauley Decl. ¶3. CNT initially appeared by counsel, but CNT's counsel subsequently asked for leave to withdraw and CNT has chosen not to respond to the Complaint. *Id*. Plaintiffs will personally serve copies of this Motion on both CNT and HYIT at their registered addresses in Hong Kong. *See* Fed. R. Civ. P. 55(b)(2); McCauley Decl.¶6, Ex. 10. Defendants are not infants or incompetents, nor are they military service members, or otherwise entitled to the exceptions found in the Servicemembers Civil Relief Act (50 App. U.S.C. § 521). McCauley Decl. ¶5. On May 28, 2015, the Clerk entered default against Defendants based on these facts. McCauley Decl. ¶4; Dkt. No. 88.

This Court has jurisdiction to enter judgment in this matter. Taking the Complaint's well-pleaded allegations as true, there is personal jurisdiction over

Defendants because Plaintiffs have alleged that Defendants have purposefully consummated transactions with residents of the forum, and otherwise purposefully availed themselves of the forum by conducting activities here; Plaintiffs' claims arise from the Defendants' forum-related activities; and exercise of jurisdiction is reasonable. *Schwarzenegger v. Fred Marin Motor Co*., 374 F.3d 797, 800-01 (9th Cir. 2004); *O'Reilly v. Valley Entertainment, Inc*., C-09-03580-CW (DMR), 2011 U.S. Dist. LEXIS 15826, at *9-*13 (N.D. Cal. 2011) (discussing *Calder* effects test in context of default judgment). Specifically, Plaintiffs alleged that Defendants have engaged in direct copyright and trademark infringement through intentional acts. Complaint ¶¶3-4, 10-12, 86-87, 93, 95-99, 125. Plaintiffs alleged that Defendants used Plaintiffs' Marks to advertise and market the TVpad device and TVpad Service, including intentionally and falsely claiming that the TVpad Service was authorized. Complaint ¶¶138-141. Plaintiffs also have alleged that Defendants transmitted, supplied, shipped, advertised and marketed both the TVpad Service and TVpad devices to customers and business partners in the State of California and this District, causing injury to Plaintiffs in this State and this District. Complaint ¶¶38, 142-150. Plaintiff TVB (USA) is headquartered in this District and thus is directly harmed in the location of its principal place of business. Complaint ¶17. Finally, given Defendants' failure to enter an appearance, and given the scope and nature of their infringement, including in this District, exercise of jurisdiction is reasonable. *See, e.g., O'Reilly*, 2011 U.S. Dist. LEXIS 15826, at *14-*15 (discussing reasonableness of exercise of jurisdiction over foreign defendant who defaulted in copyright action). Accordingly, this Court has personal jurisdiction over Defendants.

The Court also has subject matter jurisdiction: (i) pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121(a) because the action arises under acts of Congress relating to copyrights and trademarks; and (ii) over the claims asserted under California law because they are related to Plaintiffs' claims for copyright and trademark infringement and therefore fall within this Court's supplemental

jurisdiction under 28 U.S.C. §§ 1338(b) and 1367. Complaint ¶37. Thus, Plaintiffs have satisfied all procedural requirements for obtaining a default judgment.

**C.    The *Eitel* Factors Favor Entry of Default Judgment In This Case.**

In the Ninth Circuit, a court's decision to grant default judgment is guided by the following factors:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). While the decision to grant a default judgment is left to the sound discretion of the Court, "default judgments are more often granted than denied." *Philip Morris USA v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003). Weighing the seven *Eitel* factors here compels the issuance of a default judgment in this case.

**1.    Plaintiffs Will Be Prejudiced Without Entry of Default Judgment.**

Prejudice exists where, absent entry of a default judgment, a plaintiff would lose the right to judicial resolution of its claims and be deprived of other recourse to recovery. *Elektra Entm't Group Inc. v. Bryant*, No. CV 03-6381 GAF (JTLX), 2004 WL 783123, at *3 (C.D. Cal. Feb. 13, 2004). Here, without a default judgment, Plaintiffs plainly will be deprived of the right to judicial relief from Defendants' egregious acts of copyright and trademark infringement, unfair competition, and violation of California Business and Professions Code section 17200, and would be left without recovery for the injuries Plaintiffs have sustained from Defendants' massive infringement. Thus, this factor favors Plaintiffs.

MOTION FOR DEFAULT JUDGMENT
DWT 26997300v12 0094038-000021

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

2.   **Plaintiffs' Claims Are Meritorious and The Complaint Sufficiently Pled.**

The second and third *Eitel* factors are commonly analyzed together and "require that a plaintiff state a claim on which the [plaintiff] may recover." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (internal citations omitted). Because, upon entry of default, the Complaint's factual allegations regarding liability are taken as true, Defendants' default serves as an admission of Plaintiffs' well-pled allegations of fact. *See Geddes*, 559 F.2d at 560; *Sennheiser*, 2013 WL 3811775 at *2. Plaintiffs' detailed, 74-page Complaint pleads facts sufficient, as a matter of law, to establish that Defendants are liable for copyright and trademark infringement, unfair competition and violation of Section 17200.[4]

a.   **Defendants Have Engaged in Direct Infringement of Plaintiffs' Copyrights.**

Plaintiffs' first claim for relief is for direct copyright infringement against Defendants.[5] Complaint ¶¶231-244. To state a claim, Plaintiffs must show that (1) they own the copyrights, and (2) Defendants violated "at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001).

As set forth in the Complaint, CCTV holds U.S. copyright registrations for various television programs. Complaint ¶41, Exs. A-B. Similarly, TVB, through it subsidiaries, has secured U.S. copyright registrations for various television programs and episodes. Complaint ¶56, Exs. C-D; Tsang Decl. Ex. 44. Collectively, these CCTV and TVB registered programs are called "Plaintiffs' Registered Programs" for

---

[4] The merits of Plaintiffs' claims are further established by the declarations and voluminous exhibits Plaintiffs have submitted on both the preliminary injunction motion and this default judgment motion.

[5] The claims for direct copyright infringement and secondary copyright infringement are alleged against the "Retransmission Service Defendants," which is defined to include Defendants. Complaint ¶ 3.

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

purposes of this motion. Plaintiffs also allege that, as CCTV's and TVB's television programs are foreign works, registration with the United States Copyright Office is not a prerequisite to filing a copyright infringement action with respect to them. 17 U.S.C. §§ 101, 411(a). Complaint ¶¶42, 57, 234. Plaintiffs further allege that they are the legal and/or beneficial owners of exclusive U.S. rights to CCTV's and TVB's television programs and broadcasts, including but not limited to Plaintiffs' Registered Programs. Complaint ¶¶232, 235.

Finally, Plaintiffs allege with specificity in the Complaint that Defendants have directly infringed their rights in their copyrighted works by publicly performing, publicly displaying and reproducing their copyright works in the United States without authorization. Complaint ¶¶82-100, 236-239. Defendants have engaged in direct infringement by: capturing and retransmitting Plaintiffs' copyrighted television programming over the Internet to TVpad users in the United States, and making and storing copies of Plaintiffs' copyrighted programming in the United States for later playback at the request of TVpad users. Complaint ¶¶82-83, 86-88, 94, 97-98; *see also ABC, Inc. v. Aereo, Inc.*, 134 S. Ct. 2498, 2510 (2014) (holding Aereo violated plaintiffs' exclusive right of public performance by streaming plaintiffs' television programs over the Internet to "large numbers of paying subscribers who lack any prior relationship to the works."); *DISH Network L.L.C. v. TV Net Solutions, LLC*, 12-CV-1629, 2014 U.S. Dist. LEXIS 165120, at *13-*14 (M.D. Fla. Nov. 25, 2014) (retransmission of Arabic television channels over the Internet into the United States infringed DISH's public-performance rights).

As a result of Defendants' failure to appear and/or defend, these allegations are deemed true. *Elektra Entm't*, 2004 WL 783123, at *2. By retransmitting, copying and streaming Plaintiffs' copyrighted programming to U.S. users, Defendants have committed direct copyright infringement in violation of 17 U.S.C. § 501(a).

MOTION FOR DEFAULT JUDGMENT
DWT 26997300v12 0094038-000021

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

### b.   Defendants Have Engaged in Secondary Copyright Infringement.

Plaintiffs' second claim for relief is for secondary copyright infringement against Defendants under theories of contributory infringement and vicarious liability. For all theories of secondary liability, a plaintiff "must establish that there has been direct infringement by third parties," *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007), requiring the same showing of (1) copyright ownership and (2) violation of an exclusive interest under the Copyright Act. *Napster*, 239 F.3d at 1013. As discussed above in Part II.C.2.a, Plaintiffs have established copyright ownership. Plaintiffs also have established the second element by showing that third parties have directly infringed Plaintiffs' works, including TVpad users who retransmit Plaintiffs' copyrighted works through a peer-to-peer network. Complaint ¶¶106, 111-117, 121, 246-247; *see Aereo*, 134 S. Ct. at 2506 ("[T]he concep[t] of public performance . . . cover[s] not only the initial rendition or showing, but also any further act by which that rendition or showing is transmitted or communicated to the public.").

To prevail on a contributory copyright infringement claim, Plaintiffs must prove that Defendants (a) have knowledge of infringing activity; and (b) induce, cause, or materially contribute to direct infringement by others. *Amazon.com*, 508 F.3d at 1171. Inducement, in turn, has four elements: (1) distribution of a device, product, or service; (2) acts of infringement; (3) an object of promoting use of the device, product, or service to infringe copyright; and (4) causation. *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1032 (9th Cir. 2013). Material contribution can be established by proof that a computer system operator "has actual knowledge that specific infringing material is available using its system and can take simple measures to prevent further damage to copyrighted works, yet continues to provide access to infringing works." *Amazon.com*, 508 F.3d at 1172. To prevail on vicarious infringement, Plaintiffs must establish that defendant (1) has the right and

MOTION FOR DEFAULT JUDGMENT
DWT 26997300v12 0094038-000021

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

ability to control the infringing conduct, and (2) derives a direct financial benefit from that conduct. *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 261 (9th Cir. 1996).

Defendants manufacture, distribute, maintain and market the TVpad Service, TVpad device, TVpad Store, and Infringing TVpad Apps, all with the object of promoting their use to infringe Plaintiffs' copyrighted television programs, thereby knowingly and intentionally inducing infringement of Plaintiffs' copyrighted works and materially contributing to the continued infringement of Plaintiffs' copyrighted works. Complaint ¶¶248-249. These allegations are further bolstered by detailed allegations of Defendants' practical and legal control over all aspects of the TVpad Store and infringing applications; their manufacturing and distribution of the device; and their aggressive advertising of TVpad's use of a peer-to-peer network as the means through which the device and its applications offer "free" programming, and how the Infringing TVpad Applications that deliver TVB and CCTV copyrighted programming can be best viewed and accessed. Complaint ¶¶111-137, 148. Moreover, the allegations point not only to the Defendants' unwillingness to take actions within their control to stop the infringement, but the fact that the Defendants' entire business model is based upon generating profit from the vast infringement Defendants encourage. Complaint ¶¶111, 120-121, 123-124, 135-137.

These allegations, which must be taken as true, establish Plaintiffs' claims for secondary copyright infringement under multiple theories.

### c.   Defendants Violated the Lanham Act and Infringed the TVB and CCTV Trademarks.

Plaintiffs' fourth and fifth causes of action are for trademark infringement in violation of 15 U.S.C. § 1125(a) and common law trademark infringement under California state law. Complaint ¶¶268-279. The Lanham Act prohibits infringement of trademarks even if they have not been registered with the United States Patent and Trademark Office. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767-68

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

(1992) (infringement of unregistered marks prohibited by 15 U.S.C. § 1125(a)). The Lanham Act also prohibits the use in connection with any goods or services of any word, term or name, any false designation of origin or any false or misleading description or representation in commercial advertising or promotion that misrepresents the nature, characteristics or qualities of the person's or anyone else's goods, services or commercial activities. 15 U.S.C. § 1125(a)(1)(B). Common law prohibits the infringement of trademarks where the owners of the trademarks show they are the first to use the trademark and/or trade dress in a particular area. *Optimal Pets, Inc. v. Nutri-Vet, LLC*, 877 F. Supp. 2d 953, 958 (C.D. Cal. 2012).

Plaintiffs' allegations in the Complaint establish that Defendants have violated Plaintiffs' exclusive rights to use their trademarks for their television services. CCTV brands its television broadcasting services with marks including CCTV and CCTV AMERICA and the stylized CCTV logo. Complaint ¶48. CCTV's wholly owned indirect subsidiary, CICC, is authorized to use the CCTV Marks in connection with its distribution of CCTV programming in the United States. Complaint ¶¶44, 49. TVB brands its television broadcasting services and programming under a family of trademarks and service marks, including (a) the word mark JADE (U.S. Serial No. 76406416); (b) the JADE logo (U.S. Serial No. 76445144 and U.S. Application Serial No. 86171201); (c) the word mark TVB (U.S. Application Serial No. 86171162); and (d) the Chinese language word mark for THE JADE CHANNEL (U.S. Serial No. 76407746). Complaint ¶64. TVB has authorized its indirect subsidiary, TVB (USA), to use the TVB Marks in the United States. Complaint ¶65. Long before the acts described in the Complaint, Plaintiffs have used their respective marks in interstate commerce in connection with television broadcasting services, programming and related entertainment services. Complaint ¶¶49, 52-53, 68-69. Plaintiffs have also alleged that they have spent substantial amounts promoting their brands and Marks in conjunction with television broadcasting, programming and related entertainment services. Complaint ¶¶48-50, 66-67, 274.

Plaintiffs have alleged that Defendants infringe their marks and engage in unfair competition and common law trademark infringement by using Plaintiffs' marks to advertise the TVpad Service and by falsely representing to consumers that Plaintiffs have authorized the streaming of their television programming on the TVpad, creating consumer confusion regarding Plaintiffs' relationship, authorization, sponsorship and affiliation with Defendants' products and services. Complaint ¶¶138-141. These allegations, taken as true, establish Plaintiffs' claims for trademark infringement under Section 1125(a)(1)(B) and common law trademark infringement.

### d.    Defendants' Conduct Constitutes a Violation of Business & Professions Code § 17200.

Plaintiffs CCTV, CICC and TVB (USA)'s sixth claim for relief is for violation of California Bus. & Prof. Code section 17200 *et seq.*, prohibiting any unlawful, unfair or fraudulent business act or practice. Complaint ¶¶280-285. Plaintiffs allege that Defendants' actions, including those discussed in Part II.C.2.c, are likely to cause confusion or deceive consumers about the affiliation, connection or association of Defendants with Plaintiffs as to the origin, sponsorship or approval of Defendants' products and services by Plaintiffs. Such conduct constitutes unlawful, unfair or fraudulent business acts or practices in violation of Section 17200. *Id.* ¶¶281-282; *Acad. of Motion Picture Arts & Scis. v. Creative House Prom's., Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991) (likelihood of confusion is test under both the Lanham Act and Section 17200). Plaintiffs allege that they have suffered injury in fact and have lost money and property as a result of Defendants' actions. Complaint ¶ 283. Again, Defendants' default constitutes admission of the facts alleged in the Complaint, and these admitted facts state a claim for violation of Section 17200.

### 3.    Plaintiffs' Damages Are Appropriate Given the Seriousness and Scope of the Infringing Conduct.

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp.

2d at 1176. Plaintiffs seek $326,360,691, including $300,900,000 in statutory damages for copyright infringement and $25,460,691 for trademark infringement. This significant sum reflects the gravity of Defendants' conduct, which constitutes massive and flagrantly willful infringement of Plaintiffs' entire slate of television programming, on an ongoing 24/7 basis for four years. This sum likely understates significantly the damages to Plaintiffs and the infringing profits that Defendants have garnered, which Plaintiffs cannot fully ascertain due to Defendants' defaults.

Even the incomplete evidence that Plaintiffs have collected through third-party discovery shows that Defendants have manufactured, marketed and sold ***at least*** 194,073 TVpad devices in the United States. This is only a floor, as Defendants have unquestionably sold many more TVpads—perhaps hundreds of thousands more—over the past four years. Similarly, while TVB and CCTV have documented that Infringing TVpad Apps made available on the TVpad have illegally streamed 2,006 copyrighted programs owned by Plaintiffs over just a short period of time, this evidence only reflects infringing broadcasts of television episodes registered with the U.S. Copyright Office (in order to seek statutory damages). But this is only the smallest tip of the largest iceberg. Plaintiffs' year-long investigation confirms that Defendants have infringed Plaintiffs' entire programming schedules channel by channel, all day, every day for at least four years.  Braak Decl. ¶¶12-14; Tsang Decl. ¶¶5-15.

Defendants have exacerbated their wrongful conduct by ignoring Plaintiffs' cease and desist letters (Kuelling Decl. ¶¶19-23), ignoring this and concurrent litigation by other plaintiffs seeking to halt Defendants' flagrant infringement, and ignoring this Court's June 11, 2015 Preliminary Injunction Order [Dkt. No. 98] ("PI Order"), all while continuing to actively market the TVpad and the Infringing TVpad Apps that illegally stream Plaintiffs' programs. It is hard to imagine more egregious, willful behavior. Not only are Plaintiffs injured by this massive piracy of their copyright protected works, but Defendants clearly know their conduct is wrongful.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

As this Court stated in *Warner Bros. Entertainment Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1072 (C.D. Cal. 2004):

> The amount of actual monetary damage Warner Bros. sustained as a result of Caridi's conduct is unclear. However, with every day that passes, that amount may be growing larger since Caridi may be continuing to infringe upon Warner Bros.'s copyrights. Moreover, since Warner Bros. alleged (and, by virtue of the entry of default, proved) willful infringement by Caridi, Warner Bros. is entitled to received enhanced statutory damages in an amount not to exceed $150,000 per film. Thus, the amount of money at stake is significant. This factor favors Warner Bros.

Here, the facts are even more compelling, as it is undisputed that—in brazen violation of the PI Order—Defendants <u>continue</u> their willful infringement of Plaintiffs' copyrighted works.[6] For all of these reasons, the amount of statutory damages requested by Plaintiffs is entirely commensurate with the seriousness of the Defendants' conduct.

### 4. There Is No Possibility of Dispute Regarding Material Facts.

The fifth *Eitel* factor requires the Court to consider the possibility of a dispute as to a material fact. *Eitel*, 782 F.2d at 1471-72. A defendant's failure to respond to a complaint indicates that "the likelihood that any genuine issue may exist is, at best, remote." *Philip Morris*, 219 F.R.D. at 500. There is no possible dispute concerning

---

[6] In a recent case involving these same Defendants, where several Korean-language broadcasters sought $358 million in damages against estimated global TVpad sales revenues of nearly $1 billion, this Court in considering the fourth *Eitel* factor found that "while both figures are astoundingly high, the amount of money at stake is proportional to the seriousness [of] Defendant's conduct." McCauley Decl. Ex. 37 (*Munhwa* Order at 5). Notably, that case involved sales of TVpad devices only to Korean-language customers, who make up only a very small subset of TVpad users compared to Chinese-language users. McCauley Decl. ¶57. Also, plaintiffs in that case cited global sales of 3 million TVpad units as a basis for their estimate of a billion dollars in TVpad sales, but Defendants now claim to have sold over three times that number of units worldwide. Weil Decl. Ex. 58.

MOTION FOR DEFAULT JUDGMENT
DWT 26997300v12 0094038-000021

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

the material facts because the factual allegations of Plaintiffs' complaint are taken as true. *Marcelos v. Dominguez*, No. C 08-00056 WHA, 2009 WL 230033, at *4 (N.D. Cal. Jan. 29, 2009).

### 5.  There Is No Possibility of Excusable Neglect.

Under the sixth *Eitel* factor, the Court considers whether Defendants' default resulted from excusable neglect. *Eitel*, 782 F.2d at 1471-72. Here, there are no facts suggesting that HYIT's failure to respond in this action is a result of excusable neglect. McCauley Decl. ¶3. As for CNT, after initially requesting additional time to respond to the Complaint, CNT subsequently made the strategic decision not to respond and to default, instructing its counsel to cease work and withdraw as counsel of record. Dkt. No. 56-1 at 5. That decision was followed by CNT's failure to comply with this Court's PI Order. This state of affairs demonstrates that CNT's conduct is intentional and not a result of neglect. Further, neither of Defendants' conduct is excusable because they were served with process, yet never made any attempt to file a responsive pleading. *See Meadows v. Dom. Rep.*, 817 F.2d 517, 521 (9th Cir. 1987) ("A defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and failed to answer."). There is no excusable neglect. *See Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (defendant's default when properly served with complaint and notice of entry of default not attributable to excusable neglect).

### 6.  Policy For Deciding Case On the Merits.

The final *Eitel* factor considers the preference for deciding cases on the merits. *Eitel*, 782 F.2d at 1471-72. "However, this factor, standing alone, cannot suffice to prevent entry of default judgment for otherwise default judgment could never be entered." *Caridi*, 346 F. Supp. 2d at 1073.  Fed. R. Civ. P. 55 authorizes termination of a case before a hearing on the merits in these precise circumstances. *See Bryant*, 2004 U.S. Dist. LEXIS 26700, at *13. Here, the only reason this lawsuit against Defendants cannot proceed to the merits is because Defendants decided not to appear

MOTION FOR DEFAULT JUDGMENT
DWT 26997300v12 0094038-000021

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

and defend this action.

**D.   Plaintiffs Are Entitled To All of Their Requested Relief.**

**1.   Plaintiffs' Request for Statutory Damages For Willful Copyright Infringement Is Reasonable.**

The Copyright Act authorizes statutory damages of $750 to $30,000 per infringed work, and enhanced statutory damages of up to $150,000 per infringed work for willful infringement. 17 U.S.C. § 504(c)(1)-(2). Statutory damages are available because actual damages and lost profits "are often virtually impossible to prove." *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991). "Statutory damages are particularly appropriate in a case . . . in which defendant has failed to mount any defense or to participate in discovery, thereby increasing the difficulty of ascertaining plaintiffs actual damages." *Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1101 (N.D. Cal. 2003).

Courts may award enhanced statutory damages both "to provide adequate compensation to the copyright holder and to deter infringement." *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1554 (9th Cir. 1989). District courts have broad discretion in determining statutory damages awards for copyright infringement. *Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1101-02 (N.D. Cal. 2003). A party may elect statutory damages "regardless of the adequacy of the evidence offered as to his actual damages and the amount of the defendant's profits." *Krypton Broad.*, 259 F.3d at 1194 (citation omitted).

Here, an award of $300,900,000 in statutory damages for Defendants' enormous and willful ongoing infringement is appropriate.

**a.   Willfulness**

Defendants' default mandates a finding of willfulness. *Caridi*, 346 F. Supp. 2d at 1074 ("Because of the entry of default . . . the Court must take Warner Bros.'s allegation of willful infringement as true."); *see also Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008). Indeed, Defendants' documented

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

actions establish extreme willfulness: (1) Defendants have deliberately advertised and marketed the availability of TVB and CCTV programming for years despite having no license or agreement with Plaintiffs; (2) Defendants ignored the pre-litigation cease and desist letter that Plaintiffs sent to CNT on November 20, 2014; and (3) most damning, Defendants have even refused to obey this Court's PI Order, and have contemptuously continued to infringe CCTV and TVB programming on an ongoing basis. Plaintiffs have recently confirmed that Defendants continue to ship TVpad devices into the United States, which make available the Infringing TVpad Apps that stream Plaintiffs' television programs as soon as they are broadcast in China. Weil Decl. ¶22. Further, Plaintiffs have confirmed that 1,976 episodes of TVB's registered programs remain available on the TVpad as video-on-demand programming, while 328 episodes of new TVB programs pending registration are likewise available. Tsang Decl. ¶11.

### b.      Number of Registered Works

Plaintiffs have registered 2,006 television episodes with the U.S. Copyright Office; and Plaintiffs have confirmed that the Infringing TVpad Apps provided through the TVpad device by Defendants illegally stream, record and retransmit these registered programs. *See* Complaint ¶¶41, 114; Tsang Decl. ¶¶14-15. Moreover, Defendants' willful infringement extends well beyond the 2,006 registered works.  For year, Defendants have illegally streamed Plaintiffs' television broadcasts through the TVpad Service, including recent infringement of 328 additional TVB episodes that have been submitted or are in the process of being submitted for copyright registration. Tsang Decl. ¶11. Given this complete picture of Defendants' ongoing violations, deliberate default in this action, and flagrant violation of the Court's PI Order, it is appropriate for this Court to award statutory damages of $150,000 per work, for each of the 2,006 works, for a total of $300,900,000.

### c.      The Amount Requested Is Consistent with Precedent

Plaintiffs' proposed statutory damages are consistent with other cases in which

statutory damages have been awarded for similarly egregious, willful infringement. *See*, *e.g.*, *Peer Intern. Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336-37 (9th Cir 1990) (affirming award of maximum statutory damages for each of 80 infringed works); *Louis Vuitton Malletier SA v. Akanoc Solutions*, 658 F.3d 936, 946-47 (9th Cir. 2011) (same, for two works); *Krypton Broad.*, 259 F.3d at 1195 (approving award of $31.68 million based on two-thirds of statutory maximum for 440 works). Other circuit and district courts likewise have awarded maximum statutory damages awards in cases involving willful conduct of the type at issue here. *See, e.g.*, *U2 Home Entm't, Inc. v. Wei Ping Yuan*, 245 Fed. Appx. 28, 29 (2d Cir. 2007) (affirming award of maximum statutory damages for each of 47 infringed motion picture works); *Graduate Mgmt. Admission Council v. Raju*, 267 F. Supp. 2d 505, 511-12 (E.D. Va. 2003) (entering default judgment and awarding maximum statutory damages for each of 22 infringed works); *National Football League v. PrimeTime 24 Joint Venture*, 131 F. Supp. 2d 458, 475-86 (S.D.N.Y. 2001) (awarding maximum statutory damages for each of 18 infringed telecasts).

The district courts in this Circuit also have approved maximum statutory damages awards in copyright cases. In *IO Grp., Inc. v. Antelope Media, LLC*, No. C-08-4050 MMC, 2010 WL 2198707, at *1 (N.D. Cal. May 28, 2010), for example, the Court awarded the maximum statutory damages of $150,000 per work in an action involving distribution of copyrighted adult content on a revenue-generating online forum. The court noted the particularly "egregious" circumstances, including defendant's continued infringement after notice of the lawsuit, and the fact that its default prevented plaintiff from establishing the true scope of plaintiff's losses or defendant's revenue. *Id.* Likewise, in *Caridi*, 346 F. Supp. 2d at 1074, the court awarded $150,000 for each work infringed where the defendant ignored warnings of infringement and defaulted rather than defend. *Id.*; *see also Cooper v. Ningbo Xingqiang Metallic Prods. Co.*, No. 11-CV-00745-RLH, 2013 WL 1250867, at *1-3 (D. Nev. Mar. 26, 2013) (awarding maximum statutory damages of $150,00 for each

MOTION FOR DEFAULT JUDGMENT
DWT 26997300v12 0094038-000021

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

of six infringed works, where defendant failed to contest TRO or preliminary injunction and continued to sell infringing products).

Although the total award in these cases was lower than the amount sought by Plaintiffs here, there were far fewer works infringed in those cases, and the scope of the infringing enterprises were significantly smaller.

### d.    Plausible Relationship to Actual Damages

Plaintiffs' proposed statutory damages award also bears more than a "plausible relationship" to Plaintiffs' actual damages, a factor considered by courts in this Circuit in setting statutory damages. *DFSB Kollective Co. v. Tran*, 11CV1049 LHK, 2011 WL 6730678, at *9 (N.D. Cal. Dec. 21, 2011). To establish the relationship between statutory damages on the one hand and plaintiff's actual damages on the other hand, plaintiff may adduce evidence of (a) the estimated revenues lost by plaintiff; and (b) the expenses saved and profits garnered by the defendant. *See, e.g.*, *Lamb v. Starks*, 1997 U.S. Dist. LEXIS 11369, at *6 (N.D. Cal. Jul. 2, 1997); *Sennheiser*, 2013 WL 3811775, at *8-9 (discussing type of evidence that can establish plausible relationship between trademark statutory damages and plaintiff's actual damages).  "[T]here need not be a precise link between [defendant's] revenues or profits and the ultimate award." *Sennheiser*, 2013 WL 3811775, at *8.[7]

Here, Defendants' infringement has caused financial damage to Plaintiffs and resulted in infringing profits to Defendants in at least the following ways:

- Infringing sales – Revenues that Defendants have garnered from sales of TVpads to Chinese-speaking consumers in the United States.
- Lost licensing revenue – Licensing fees that Defendants otherwise

---

[7] Evidence of actual damages under a "plausible relationship" analysis need not meet the same standard of proof as where a plaintiff seeks actual damages or infringing profits; otherwise a key purpose of statutory damages—allowing a recovery where proof of actual damages and infringing profits is difficult—would be frustrated. *See Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984) ("[s]tatutory damages may be elected whether or not there is adequate evidence of the actual damages suffered by plaintiff or of the profits reaped by defendant.").

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

would have had to pay (and Plaintiffs would have realized) to acquire the right to show TVB and CCTV channels; and

- Lost subscription revenue – Fees that Plaintiffs would have realized if TVpad users instead had purchased CCTV and TVB television programming through licensed providers, such as DISH.

The above categories do not overlap, but rather highlight why unscrupulous parties go to great lengths to build services on stolen content: By avoiding payment to acquire the right to use such content, they can sell competing products for lower prices (including without requiring subscriptions). We address each category below.

### i. Defendants' Infringing Revenues

Defendants have sold at least 194,073 TVpad units in the United States. McCauley Decl. ¶9; Ex. 11. This is a conservative figure that rests, at best, on incomplete data from third parties (by reason of Defendants' default and failure to provide discovery), and that clearly does not reflect <u>all</u> of Defendants' likely U.S. TVpad sales over the past four years. *Id.* ¶10. Of those 194,073 TVpad units, at least 8,191 units were sold by Defendants directly to consumers, and the rest were sold in bulk to U.S. TVpad distributors, who then sold the devices to consumers. *Id.* ¶9.

Defendants have sold TVpad devices directly to consumers at prices ranging from $199 to $299. Weil Decl. ¶19. Assuming, conservatively, an average price of $249 per TVpad, sales of 8,191 TVpads to consumers have generated at least $2,039,559 in revenues to Defendants. Weil Decl. ¶25; McCauley Decl. ¶25, Ex. 11.

Defendants have sold TVpad devices to its U.S. distributors for a wholesale price ranging from $110 to $145, depending on the TVpad version being sold and how long it was on the market. Assuming, conservatively, an average price of $126 per TVpad, sales of 185,882 units of TVpads to distributors have generated at least $23,421,132 in revenues to Defendants. Zhou Decl. ¶10; Weil Decl. ¶29; McCauley Decl. ¶¶13-14, 21, 24, 36 & Ex. 11.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Therefore, in the aggregate, Defendants have realized **at least $25,460,691** in revenues[8] from sales of TVpad devices.[9] <u>At a bare minimum,</u> Plaintiffs should be awarded an equivalent amount in statutory damages here. As discussed below, however, the licensing fees lost by Plaintiffs (and avoided by Defendants) dwarf this amount, and provide a more accurate estimation of the real harm here.

## ii. <u>Lost Licensing Revenue</u>

Plaintiffs TVB (USA) and CCTV have suffered losses of **at least $279,465,120 million** in lost licensing revenue that Defendants otherwise would have been required to pay in order to acquire the rights to show TVB and CCTV programming on the TVpad, had they not chosen to acquire that content illegally.

Authorized partners in the United States, such as DISH, pay license fees per subscriber for channels they receive permission to distribute. Here, Defendants would have needed to pay at least $30 per subscriber, per month, for all of the TVB and CCTV channels that Defendants offer through the TVpad. Kuelling Decl. ¶14; Tsang Decl. ¶17. To provide those channels to the 194,073 TVpad customers in the United States, Defendants would have had to pay over $279,465,120 million in

---

[8] Given Defendants' default, Plaintiffs have no means of determining what portion of Defendants' infringing revenues constitute profits. In copyright cases, the burden is on defendants to demonstrate any offsetting expenses against revenues, and any elements of profits not attributable to infringement of the plaintiff's works. 17 U.S.C. § 504(b). Here, the revenue calculation must be treated as profits given Defendants' default and failure to present evidence of offsetting costs.

[9] Some portion of the TVpad units sold in the United States may have been sold to Korean-speaking customers, rather than Chinese-speaking customers, but such demographic information is not within Plaintiffs' possession given Defendants' default, and as noted it is Defendants' burden to prove any profits not attributable to infringement. However, in the *Munhwa Broadcasting* case, this Court accepted plaintiffs' evidence that there were 19,677 U.S. users of Korean TVpad apps. Thus, sales to Korean-speaking TVpad users constitute approximately 10% of the 194,073 total TVpads sold to U.S. users. McCauley Decl. ¶57 & Ex. 37 (*Munhwa* Order at 8). This would be consistent with the evidence in this case that the TVpad is primarily marketed to "overseas Chinese" rather than other populations. Weil Decl. ¶¶5-16. Assuming 90% of the units were sold to Chinese-speaking users, the infringing revenues would total $22,914,622.

21

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

licensing fees to TVB and CCTV. McCauley Decl. ¶54.[10] This amount represents both lost revenue to Plaintiffs as well as fees Defendants avoided, allowing them to offer their TVpad Service for free.

### iii. Plaintiffs' Lost Subscription Revenues

DISH charges its subscribers on a monthly basis for authorized packages of CCTV and TVB programming. Kuelling Decl. ¶13. For its Great Wall package of CCTV channels, DISH currently charges approximately $15 per month; it charges approximately $30 for its Jade package of TVB channels. *Id.*

Consumers who purchase TVpads and access CCTV and TVB content for free represent lost potential subscribers for Plaintiffs. Indeed, TVpad users have stated publicly on Defendants' official websites that they did not renew their DISH subscription once they purchased a TVpad. Weil Decl. ¶15. Further, Plaintiffs have seen a significant downturn (as much as 50%) in subscription revenues since the introduction of the TVpad device in 2011. Tsang Decl. ¶18; Kuelling Decl. ¶16. If only a quarter of the 194,073 TVpad users instead purchased a subscription to just one of the CCTV or TVB packages through an authorized service such as DISH, and held such a subscription for 24 months (the length of a typical contract, *see* Kuelling Decl. ¶4), this would have resulted in ***$17,466,480 million*** in subscription fees. McCauley Decl. ¶56.

### 2. Plaintiffs' Request for Damages of $25,460,691 for Trademark Infringement Is Reasonable.

Damages in the amount of a defendant's profits are available for trademark infringement pursuant to 15 U.S.C. § 1117(a). "[S]ales are equivalent to profits absent evidence from the defendant as to costs or other deductions from said profits."

---

[10] Here, no apportionment for Korean users is necessary, because regardless of which channels a TVpad user might actually choose to watch, the TVpad Store on the TVpad makes all channels available to all users, and thus Defendants would have had to license all such channels for each TVpad sold.

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Craigslist, Inc. v. Kerbel*, 2012 U.S. Dist. LEXIS 108573, at *51 (N.D. Cal. Aug. 2, 2012) (holding third-party evidence of defendant's gross sales substantiated damages for Lanham Act violation). Here, Plaintiffs have provided evidence that Defendants sold at least $25,460,691 worth of TVpad devices to distributors and consumers in the United States, based in part on Defendants' assertions that TVpad users can watch TVB and CCTV shows on the TVpad device, and their using Plaintiffs' Marks when doing so. Complaint ¶¶138-141. Given Defendants' failure to make an appearance in this action or to offer any evidence to discount the gross sales established by Plaintiffs' evidence, the gross sales figure is appropriately entered as damages for the Defendants' trademark infringement in this action.

### 3.    Plaintiffs Are Entitled to Injunctive Relief.

"The basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." *Lucasfilm Ltd. v. Media Market Gp., Ltd.*, 182 F. Supp. 2d 897, 899 (N.D. Cal. 2002). "As a general rule, a permanent injunction will be granted when liability has been established and there is a threat of continuing violations." *MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 520 (9th Cir. 1993). The Copyright Act specifically authorizes the Court to grant injunctive relief to "prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). Similarly, under the Lanham Act and California law, injunctive relief is available to prevent future trademark infringement. 15 U.S.C. § 1116(a); Cal. Bus. & Prof. Code §§ 14330, 14340, 17200 *et seq.*; *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180-81 (9th Cir. 1988) ("Injunctive relief is the remedy of choice for trademark and unfair competition cases.").

Defendants' default acts as an admission of the factual allegations regarding liability. Additionally, there is a significant threat of continuing irreparable injury present here, which, when balanced against the negligible hardship to Defendants and the public interest, favor an injunction.

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

First, there is a near certainty that without a permanent injunction, Defendants will continue to infringe Plaintiffs' television programming, causing continued irreparable injury to Plaintiffs. *IO Group, Inc. v. Antelope Media, LLC*, 2010 WL 2198707, at *2 (N.D. Cal. May 28, 2010). This is established by Defendants' continued promotion and sales of TVpads and Infringing TVpad Apps in violation of the PI Order. Plaintiffs have submitted declarations detailing the irreparable injury they have experienced over the years during which Defendants have operated their pirate network, and how such injury will continue if Defendants are not enjoined. *See* Tsang Decl. ¶¶16-30; Lu Decl. ¶¶26-36; Kuelling Decl. ¶¶12-18.

Second, an award of monetary damages alone is unlikely to prevent or deter Defendants' conduct because it may prove challenging—if not impossible—to collect a damage award from these overseas Defendants. *See Lava Records, LLC v. Ates*, Civ. A-05-1314, 2006 WL 1914166, at *3 (W.D. La. July 11, 2006) (awarding permanent injunction because of "the need to prevent irreparable harm to Plaintiffs, which will not be remedied by a damage award that may or may not be collectible"). Defendants have completely disregarded this action and this Court. It is highly unlikely that Defendants would be willing to voluntarily satisfy any damage award.

Finally, the public interest will be served by granting an injunction to uphold Plaintiffs' rights. *See MAI Systems*, 991 F.2d at 520; *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983) ("[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work."). Particularly given that Defendants have falsely advertised and marketed their TVpad device and the TVpad Service as "authorized," a permanent injunction is necessary to ensure that consumers do not unwittingly purchase a device that streams unauthorized content, thinking the product and its promised content is legitimate.

Plaintiffs therefore submit that their requested permanent injunctive relief be

MOTION FOR DEFAULT JUDGMENT
DWT 26997300v12 0094038-000021

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

entered in its entirety against Defendants and those working in concert with them.

### 4.   Attorneys' Fees and Costs

Attorneys' fees and costs are recoverable on Plaintiffs' copyright claims under 17 U.S.C. § 505, and on Plaintiffs' trademark claims under 15 U.S.C. § 1117(a) due to the "exceptional circumstances" surrounding Defendants' willful violation of 15 U.S.C. § 1125(a)(1)(b). *See Lindy Pen Co. v. Bic Pen Corp*., 982 F.2d 1400, 1409 (9th Cir. 1993) (case is "exceptional" where trademark infringement is "malicious, fraudulent, deliberate, or willful."); *Taylor Made Golf Co., Inc. v. Carsten Sports Ltd*., 175 F.R.D. 658, 663 (S.D. Cal. 1997) (same where defendant does not make an appearance). Plaintiffs will submit an Application to Tax Costs, following entry of judgment. L.R. 54. Plaintiffs seek attorneys' fees calculated according to the fee schedule set forth in L.R. 55-3, which provides that fees shall be calculated as $5,600 plus 2% of the amount of the Judgment over $100,000.

### 5.   Post-Judgment Interest

Plaintiffs respectfully request post-judgment interest calculated "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a).

## III.   CONCLUSION

For the reasons stated above, Plaintiffs respectfully request the Court grant their Motion for Default Judgment in its entirety.

DATED: September 14, 2015     DAVIS WRIGHT TREMAINE LLP

By: /s/Carla A. McCauley
_____
Carla A. McCauley
Attorneys for Plaintiffs
CHINA CENTRAL TELEVISION; CHINA
INTERNATIONAL COMMUNICATIONS CO.,
LTD.; TVB HOLDINGS (USA), INC.; AND
DISH NETWORK L.L.C.

25

MOTION FOR DEFAULT JUDGMENT
DWT 26997300v12 0094038-000021

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899