CARLA A. McCAULEY (State Bar No. 223910
    carlamccauley@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California  90017-2566
Tel.:  (213) 633-6800  Fax:  (213) 633-6899

ROBERT D. BALIN (*pro hac vice*)
    robbalin@dwt.com
LACY H. KOONCE, III (*pro hac vice*)
    lancekoonce@dwt.com
SAMUEL BAYARD (*pro hac vice*)
    samuelbayard@dwt.com
GEORGE WUKOSON (*pro hac vice*)
    georgewukoson@dwt.com
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas
New York, New York  10020
Tel.:  (212) 489-8230  Fax:  (212) 489-8340Tel.:  (212) 489-8230  Fax:  (212) 489-8340
ATTORNEYS FOR PLAINTIFFS

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHINA CENTRAL TELEVISION, a China company; CHINA INTERNATIONAL COMMUNICATIONS CO., LTD., a China company; TVB HOLDINGS (USA), INC., a California corporation; and DISH NETWORK L.L.C., a Colorado corporation, Plaintiffs, vs. CREATE NEW TECHNOLOGY (HK) LIMITED, a Hong Kong company; HUA YANG INTERNATIONAL TECHNOLOGY LIMITED, a Hong Kong company; SHENZHEN GREATVISION NETWORK TECHNOLOGY CO. LTD., a China company; CLUB TVPAD, INC., a California corporation; BENNETT WONG, an individual, ASHA MEDIA GROUP INC. d/b/a TVPAD.COM, a Florida corporation; AMIT BHALLA, an individual; NEWTVPAD LTD. COMPANY d/b/a NEWTVPAD.COM a/k/a TVPAD USA, a Texas corporation; LIANGZHONG ZHOU, an individual; HONGHUI CHEN d/b/a E-DIGITAL, an individual; JOHN DOE 1 d/b/a BETV; JOHN DOE 2 d/b/a YUE HAI; JOHN DOE 3 d/b/a 516; JOHN DOE 4 d/b/a HITV; JOHN DOE 5 d/b/a GANG YUE; JOHN DOE 6 d/b/a SPORT ONLINE; JOHN DOE 7 d/b/a GANG TAI WU XIA; and JOHN DOES 8-10, | Case No. **CV 15-1869 MMM (AJWx)** **PLAINTIFFS' NOTICE OF LODGING OF PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** Hearing: October 13, 2015 Time: 10:00 a.m. Courtroom:  780 Judge:  Hon. Margaret M. Morrow Complaint Filed: March 13, 2015 |

In accordance with the Court's Order dated October 5, 2015, Document No. 133, Plaintiffs China Central Television, China International Communications Co., Ltd., TVB Holdings (USA), Inc., and DISH Network L.L.C. (collectively, "Plaintiffs") respectfully submit a [Proposed] Findings of Fact and Conclusions of Law in support of Plaintiffs' Motion to Hold Defendant Create New Technology (HK) Limited In Contempt.  The [Proposed] Findings of Fact and Conclusions of Law are attached hereto as **Exhibit 1**.

DATED: October 7, 2015

DAVIS WRIGHT TREMAINE LLP
CARLA A. McCAULEY
ROBERT D. BALIN (*pro hac vice*)
LACY H. KOONCE, III (*pro hac vice*)
SAMUEL BAYARD (*pro hac vice*)
GEORGE WUKOSON (*pro hac vice*)

By:    s/ Carla A. McCauley
       Carla A. McCauley

Attorneys for Plaintiffs
CHINA CENTRAL TELEVISION; CHINA INTERNATIONAL COMMUNICATIONS CO., LTD.; TVB HOLDINGS (USA), INC.; AND DISH NETWORK L.L.C.

NOTICE OF LODGING
DWT 28089423v1 0094038-000021

1

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**EXHIBIT 1**

| | |
|---|---|
| 1 | CARLA A. McCAULEY (State Bar No. 223910) |
| | carlamccauley@dwt.com |
| 2 | DAVIS WRIGHT TREMAINE LLP |
| | 865 South Figueroa Street, 24th Floor |
| 3 | Los Angeles, California 90017-2566 |
| | Tel.: (213) 633-6800  Fax: (213) 633-6899 |
| 4 | |
| | ROBERT D. BALIN (*pro hac vice*) |
| 5 | robbalin@dwt.com |
| | LACY H. KOONCE, III (*pro hac vice*) |
| 6 | lancekoonce@dwt.com |
| | SAMUEL BAYARD (*pro hac vice*) |
| 7 | samuelbayard@dwt.com |
| | GEORGE WUKOSON (*pro hac vice*) |
| 8 | georgewukoson@dwt.com |
| | DAVIS WRIGHT TREMAINE LLP |
| 9 | 1251 Avenue of the Americas |
| | New York, New York 10020 |
| 10 | Tel.: (212) 489-8230  Fax: (212) 489-8340 |
| | ATTORNEYS FOR PLAINTIFFS |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHINA CENTRAL TELEVISION, a China company; CHINA INTERNATIONAL COMMUNICATIONS CO., LTD., a China company; TVB HOLDINGS (USA), INC., a California corporation; and DISH NETWORK L.L.C., a Colorado corporation, <br><br>Plaintiffs, <br><br>vs. <br><br>CREATE NEW TECHNOLOGY (HK) LIMITED, a Hong Kong company; HUA YANG INTERNATIONAL TECHNOLOGY LIMITED, a Hong Kong company; SHENZHEN GREATVISION NETWORK TECHNOLOGY CO. LTD., a China company; CLUB TVPAD, INC., a California corporation; BENNETT WONG, an individual, ASHA MEDIA GROUP INC. d/b/a TVPAD.COM, a Florida corporation; AMIT BHALLA, an individual; NEWTVPAD LTD. COMPANY d/b/a NEWTVPAD.COM a/k/a TVPAD USA, a Texas corporation; LIANGZHONG ZHOU, an individual; HONGHUI CHEN d/b/a E-DIGITAL, an individual; JOHN DOE 1 d/b/a BETV; JOHN DOE 2 d/b/a YUE HAI; JOHN DOE 3 d/b/a 516; JOHN DOE 4 d/b/a HITV; JOHN DOE 5 d/b/a GANG YUE; JOHN DOE 6 d/b/a SPORT ONLINE; JOHN DOE 7 d/b/a GANG TAI WU XIA; and JOHN DOES 8-10, <br><br>Defendants. | Case No. <br>**CV 15-1869 MMM (AJWx)** <br><br>**[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO HOLD DEFENDANT CREATE NEW TECHNOLOGY (HK) IN CONTEMPT** <br><br>Hearing: October 13, 2015 <br>Time: 10:00 a.m. <br>Courtroom: 780 <br>Judge: Hon. Margaret M. Morrow <br><br>Complaint Filed: March 13, 2015 |

This matter came on before the Court on October 13, 2015 on the motion of Plaintiffs China Central Television, China International Communications Co., Ltd., TVB Holdings (USA), Inc., and DISH Network L.L.C. (collectively, "Plaintiffs") to hold Defendant Create New Technology (HK) Limited ("CNT") in contempt. Pursuant to Local Rule 7-9, any opposition to Plaintiffs' motion was required to be filed and served not later than September 22, 2015. No opposition was timely filed, nor has any been filed since that time. Having considered Plaintiffs' Motion for Contempt, the Memorandum of Points and Authorities in Support of the Motion, and the declarations, exhibits, and reply papers in support thereof, and good cause appearing, the Court makes the following findings of fact and conclusions of law:

**A.  FINDINGS OF FACT**

1. On March 16, 2015, Plaintiffs filed their Complaint and, contemporaneously, a Motion for Preliminary Injunction against CNT. CNT did not oppose the motion, and subsequently defaulted in this action on May 28, 2015. (Doc. Nos. 87, 88.) The Court entered an Order Granting Plaintiffs' Preliminary Injunction ("PI Order") on June 11, 2015. (Doc. No. 98). The Court also entered detailed Findings of Fact and Conclusions of Law on June 11, 2015, which Findings of Fact and Conclusions of Law are incorporated by reference as if fully set forth herein. (Doc. No. 97.)

2. The Court's PI Order preliminarily enjoined CNT from:
   a. Transmitting, retransmitting, streaming, or otherwise publicly performing, directly or indirectly, by means of any device or process, Plaintiffs' Copyrighted Programming;
   b. Authorizing, hosting, reproducing, downloading or otherwise distributing the Infringing TVpad Apps, including without limitation offering them in the TVpad Store, loading them onto TVpad devices, or providing them to consumers on separate media;

FINDINGS OF FACT AND CONCLUSIONS OF LAW
DWT 28070525v1 0094038-000021

1

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

    c. Advertising, displaying, marketing or otherwise promoting any of the Infringing TVpad Apps, including without limitation publicly displaying any of the Plaintiffs' Copyrighted Programming in connection therewith or in connection with the TVpad Device;

    d. Distributing, advertising, marketing or promoting any TVpad device that contains, connects to, or offers for download any Infringing TVpad App, or promotes any Infringing TVpad App through the inclusion of icons for said Infringing TVpad App;

    e. Otherwise infringing Plaintiffs' rights in their Copyrighted Programming, whether directly, contributorily, vicariously or in any other manner.

(Doc. 98 at 3-4.)

    3. CNT has received repeated notices of this Court's PI Order through multiple methods. First, the June 11 entry of the PI Order on the electronic docket constituted service of the PI Order on CNT through its counsel of record (who had not yet been granted leave to withdraw).

    4. Second, on June 17, 2015, CNT was provided email notice of the PI Order by Plaintiffs' counsel. Declaration of Lacy H. Koonce III ("Koonce Decl.") ¶3, Ex. 19.

    5. Third, on June 17, 2015, CNT was personally served with copies of the PI Order by Plaintiffs' solicitor at CNT's registered Hong Kong address. Koonce Decl. ¶4, Ex. 20.

    6. Fourth, on June 18, 2015, Plaintiffs received confirmation that CNT's U.S. counsel of record sent copies of the PI Order via Federal Express to CNT's last known address, prior to this Court's order granting counsel's withdrawal. Koonce Decl. ¶2, Ex. 18.

2
FINDINGS OF FACT AND CONCLUSIONS OF LAW
DWT 28070525v1 0094038-000021

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

7. Finally, CNT was also personally served on June 17, 2015 with copies of this Court's Findings of Fact and Conclusions of law by Plaintiffs' solicitor at CNT's registered Hong Kong address. Koonce Decl. ¶4, Ex. 20. The Court's Findings of Fact and Conclusions of Law, in turn, cite to the volumes of evidence that Plaintiffs filed in support of their motion for preliminary injunction, which not only identified the specific Infringing TVpad Apps that the Court ultimately ordered CNT to cease offering on the TVpad, but also identified the specific CNT website pages, Facebook pages and fan forums that CNT has been using to market and advertise the Infringing TVpad Apps. (Doc. No. 97.)

8. Despite receiving repeated notice of the Court's PI Order, CNT consistently has ignored and violated the Court's PI Order as set forth more fully below.

9. From June 18, 2015 through June 22, 2015, Plaintiff TVB tested the availability of its programs through the video-on-demand ("VOD") features of three of the fifteen Infringing TVpad Apps—specifically the Gang Yue Kuai Kan app, the Gang Yue Wang Luo Dian Shi app, and the Gang Tai Wu Xia app—to determine whether CNT was still transmitting TVB's copyrighted programming through any of the fifteen Infringing TVpad Apps in violation of the Court's PI Order. Declaration of Samuel P. Tsang ("Tsang Decl.") ¶¶8-10; *see also* Doc. No. 23-1 at pp. 14-16, Weil Declaration filed in support of Motion for Preliminary Injunction ("March Weil Decl.") at ¶ 26; Doc. No. 98, PI Order at 2 and Ex. B.

10. During just this short test period, TVB confirmed that <u>2,388</u> separate episodes of TVB programs (of which 1,781 episodes are registered with the United States Copyright Office) were still being offered on TVpad devices through three Infringing TVpad Apps in violation of the PI Order. Tsang Decl. ¶10.

11. These 2,388 infringed programs include all but one of the copyrighted programs TVB had identified in support of the motion for preliminary injunction,

3

FINDINGS OF FACT AND CONCLUSIONS OF LAW
DWT 28070525v1 0094038-000021

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

and, in a later test by TVB on August 24, 2015, the one missing title reappeared on the VOD menu and could be streamed. Tsang Decl. ¶9.

12. In further testing conducted by TVB from August 7 through August 10, 2015, over 1,700 of these TVB episodes continued to be streamed through three of the Infringing TVpad Applications on the TVpad device. Tsang Decl. ¶12.

13. The tested programming does not constitute all of the TVB programming that is currently being infringed by CNT through these apps, but only the limited content that TVB confirmed was being streamed through the Infringing VOD apps over a short period of time. Tsang Decl. ¶13.

14. During an August 20, 2015 test, TVB confirmed that 510 <u>additional</u> episodes from 24 TVB television programs that TVB had not previously tested for availability on VOD were now available through the TVpad device. As some of these program episodes had only recently aired on TVB channels in Hong Kong and the United States, their appearance on the TVpad device confirms that CNT continues to convert TVB programming to VOD content immediately after it is aired in China. *Id*.

15. After the Court entered its PI Order, Plaintiffs' investigators ran tests on the TVpad3 and TVpad4 devices they purchased during the course of their investigation for several months and confirmed constant streaming, 24 hours a day, 7 days a week, of CCTV and TVB programming. Declaration of Nicholas Braak, dated August 21, 2015, ("Braak Decl.") ¶¶7-13.

16. During this testing period, Plaintiffs' investigators determined that 14 of 15 of the Infringing TVpad Apps continued to be available in the TVpad Store for download. Moreover, all previously downloaded versions of the 15 Infringing TVpad Apps continued to function on one or more TVpad device models. Braak Decl. ¶6. Access to the Infringing TVpad Apps and concurrent streaming of Plaintiffs' copyrighted programs continued unabated. Braak Decl. ¶6.

4

FINDINGS OF FACT AND CONCLUSIONS OF LAW
DWT 28070525v1 0094038-000021

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

17. In the same manner as they did before imposition of this Court's PI Order, the TVpad3 and TVpad4 devices continued to operate as peers in a peer-to-peer network—allowing TVpad users to retransmit CCTV and TVB programs to other TVpad users. Braak Decl. ¶9.

18. In addition, following entry of the PI Order, Plaintiffs' investigators purchased a new TVpad4 device from the official TVpad Store that CNT runs from the domain www.mtvpad.com. Plaintiffs' investigators subsequently tested the new TVpad4 device and confirmed that the terms and conditions accessible upon start-up of the TVpad4 device continue to identify Create New Technology (HK) Limited as the manufacturer of the device. Declaration of Christopher Weil ("Weil Decl.") ¶¶4-6 and Exs. 24-25; Braak Decl. ¶15, Ex. 26.

19. Plaintiffs' investigators also confirmed that the opening screens and TVpad Store on the new TVpad4 device continue to market and advertise several of the Infringing TVpad Apps. *Compare* Braak Decl. ¶26, *with* Doc. No. 23-1, Declaration of Nicholas Braak filed in support of Motion for Preliminary Injunction ("March Braak Decl.") ¶29.

20. Plaintiffs' investigators determined that all nine of the Infringing TVpad Apps that they previously concluded were available for download on the TVpad4 device continue to be listed on the TVpad Store, and could be downloaded. *Compare* Braak Decl. ¶16, *with* March Braak Decl. ¶16. All nine of the Infringing TVpad Apps continue to provide CCTV and TVB programs via VOD, Time-Shift, Live TV and Replay Live modes in the same manner as pre-injunction. Braak Decl. ¶16.

21. Finally, Plaintiffs' investigators determined that the Infringing TVpad Apps that were downloaded by Plaintiffs' investigators to the new TVpad4 device continue to stream CCTV and TVB programming 24 hours a day, each day of the week. *Id.*

22. Nor has anything materially changed with respect to CNT's advertising and marketing practices post-injunction. Not only has CNT taken no steps to remove

5
FINDINGS OF FACT AND CONCLUSIONS OF LAW
DWT 28070525v1 0094038-000021

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

from its websites the marketing content barred under the Court's PI Order, it has exacerbated its violation by replicating the barred advertising from its former website (located at itvpad.com) to a new website (located at mtvpad.com). *Compare* March Weil Decl. ¶¶18, 25(d), 32 and 65-66 and Exs. 7, 14 and 15 *with* Declaration of George P. Wukoson ("Wukoson Decl.") ¶¶5-8, 13 and Exs. 2-4 and 9.

23. In addition, when migrating its itvpad.com blog over to its new mtvpad.com blog, CNT retained the blog entries in which it expressly recommended certain Infringing TVpad Apps (*compare* March Weil Decl. ¶¶ 34, 37 at Exs. 16, 19 *with* Wukoson Decl. ¶¶9, 12 and Exs. 5, 8) and that tout the availability of TVB content on various Infringing TVpad Apps (*compare* March Weil Decl. ¶ 35 at Ex. 17 *with* Wukoson Decl. ¶¶10-11 and Exs. 6-7).

24. Similarly, CNT continues to operate and promote its official fan forum, where posts about the availability of Plaintiffs' copyrighted programs and how to access them through the Infringing TVpad Apps remain, with <u>new</u> posts added since the PI Order. Wukoson Decl. ¶¶20-22.

25. Finally, CNT's Facebook page also remains materially unaltered, continuing to retain posts advertising and encouraging the use of the Infringing TVpad Apps to watch TVB and CCTV programs, and providing assurances that this is legal. Wukoson Declaration ¶¶ 14-18 and Exs. 10-13. Further, in recent post-injunction posts, CNT continues to promote the same Infringing TVpad Apps this Court ordered it to stop marketing and advertising and encouraging their use to watch TVB and CCTV programs. Wukoson Decl. ¶19 and Ex. 14.

26. In addition, the TVpad Fan Forum, which CNT operates and moderates, continues to include new posts that tout the availability of Plaintiffs' copyrighted programming in violation of the PI Order. For example, in a recent post in July 2015, a user commented on the availability of Wimbledon tennis on the CCTV sports channel on TVpad. Wukoson Decl. ¶21 and Ex. 16. In another July 2015 post, a

6

FINDINGS OF FACT AND CONCLUSIONS OF LAW
DWT 28070525v1 0094038-000021

user commented on the availability of the World Swimming Championships on a CCTV channel through the TVpad. *Id*.

27. Elsewhere on the TVpad Fan Forum, CNT encouraged a user to post a detailed review of the TVpad4 device, compared to competitors. After the user touted the fact that he or she began to use the TVpad to avoid paying $40 a month for a Jade subscription—the DISH subscription package that offers authorized TVB content—the user went on to explain why the TVpad4 is a better device than alternatives, including the fact that it does not require a subscription and offers better quality streaming than other competing "free" devices. The TVpad moderator then marked this thread as a favorite, allowing more TVpad users to easily identify the post on the fan forum. *Id*. ¶22 and Ex. 17.

28. Finally, since entry of the PI Order, CNT also has continued to use Plaintiffs' copyrighted programming in direct marketing pitches to customers, including through emails touting the availability of Plaintiffs' copyrighted programming. For example, TVB's former Director of Programming received two direct advertising emails from CNT offering specials on the TVpad device. One of those emails used an image from one of TVB's copyrighted TV programs to solicit sales of the TVpad. Tsang Decl. ¶¶14-15 and Exs. 22-23.

29. Plaintiffs have expended in excess of $34,680.60 in attorneys' fees in preparing their motion to hold CNT in contempt, including time spent researching, drafting and compiling evidence in support of the motion. McCauley Decl. ¶¶3-4; Wukoson Decl. ¶23.

**B. <u>CONCLUSIONS OF LAW</u>**

1. "A court has wide latitude in determining whether there has been contemptuous defiance of its order." *Gifford v. Heckler*, 741 F.2d 263, 266 (9th Cir. 1984). The Ninth Circuit's rule with regard to contempt "has long been whether the defendants have performed all reasonable steps within their power to insure

7

FINDINGS OF FACT AND CONCLUSIONS OF LAW
DWT 28070525v1 0094038-000021

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

compliance with the court's orders." *Stone v. City & Cnty. of San Francisco*, 968 F.2d 850, 856 (9th Cir. 1992) (internal citations omitted).

2. "The party moving for contempt bears the burden of establishing by clear and convincing evidence that the contemnor has violated a specific and definite order of the court." *Bademyan v. Receivable Management Services Corp.*, Case No. CV 08-00519 MMM (RZx), 2009 WL 605789, at *2 (C.D. Cal. Mar. 9, 2009) (citing *Wolfard Glassblowing Co. v. Vanbragt*, 118 F.3d 1320, 1322 (9th Cir. 1997); *Balla v. Idaho State Bd. of Corrections*, 869 F2d 461, 466 (9th Cir. 1989)).

3. Plaintiffs have established that the Court's PI Order in this matter is clear and not susceptible to any reasonable interpretation that would explain CNT's failure to take any steps to comply with the PI Order. Specifically, Plaintiffs have met their burden of establishing that the PI Order spells out that CNT must cease transmitting or retransmitting Plaintiffs' Copyrighted Programming, as that term is defined precisely in the PI Order, including with reference to numerous specific examples of infringed content.

4. Plaintiffs have also established that the PI Order clearly states that CNT must cease providing access to or distributing the specifically identified Infringing TVpad Apps that stream Plaintiffs' Copyrighted Programming, including by providing a precise list of the Infringing TVpad Apps that must be taken down. Doc. No. 98 Ex. B. Finally, Plaintiffs have also established that the PI Order provides that CNT may not advertise, display or market the Infringing TVpad Apps, nor take steps to market the TVpad by referencing the Infringing TVpad Apps.

5. In addition, Plaintiffs have established that CNT was provided notice of the Court's PI Order and the Court's Findings of Fact and Conclusions of Law in support of the PI Order as early as June 17, 2015, when CNT was emailed and personally served with the PI Order and supporting Findings of Fact and Conclusions of Law.

8

FINDINGS OF FACT AND CONCLUSIONS OF LAW
DWT 28070525v1 0094038-000021

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

6. Moreover, Plaintiffs' motion for preliminary injunction, which was filed in March 17, 2015, included volumes of evidence identifying the specific CNT website pages, Facebook pages and fan forums that CNT has been using to market and advertise the Infringing TVpad Apps and which were subject to this Court's PI Order and cited in the Findings of Fact and Conclusions of Law served on CNT.

7. "Once the moving party shows by clear and convincing evidence that the contemnor has violated a specific and definite order of court, the burden shifts to the contemnor to demonstrate that he or she took every reasonable step to comply, and to articulate reasons why compliance was not possible." *Bademyan*, 2009 WL 605789, at *2 (citing *Donovan v. Mazzola,* 716 F.2d 1226, 1240 (9th Cir. 1983)).

8. "Intent is not an issue in civil contempt proceedings. The sole question is whether a party complied with the district court's order." *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983) (internal citations omitted).

9. By failing to file any response to Plaintiffs' motion for contempt, CNT has failed to meet its burden of showing that it took reasonable steps to comply with this Court's PI Order or otherwise articulate any reasons why compliance was not possible.

10. In addition, Plaintiffs have established through the Tsang and Braak Declarations that CNT has failed to take any steps to remove or disable the availability of Plaintiffs' copyrighted programming from its TVpad device; to remove or disable the 15 Infringing TVpad Apps identified in the Court's PI Order; or otherwise take any steps to remove any of the marketing materials from the websites that encourage infringement of Plaintiffs' copyrighted programming. Indeed, CNT has expanded its infringement with a new website and new Facebook and blog entries that continue to encourage infringement, in direct violation of this Court's PI Order. Finally, CNT has continued to sell the TVpad device into the United States with full access to the Infringing TVpad Apps and Plaintiffs' copyrighted programming in violation of this Court's PI Order.

9
FINDINGS OF FACT AND CONCLUSIONS OF LAW
DWT 28070525v1 0094038-000021

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

11. Plaintiffs have therefore established that CNT has acted in contempt of each and every aspect of this Court's PI Order.

12. Once a violation of a court order has been shown, civil contempt sanctions may be imposed. Civil contempt sanctions are employed "to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992); *see also Citizens for Lawful and Effective Attendance Policies v. Sequoia Union High School District*, No. C 87-3204 MMC, 1998 WL 305513, at *4 (N.D. Cal. June 4, 1998) ("Such remedial sanctions may take two forms—sanctions designed to coerce future compliance with the underlying order, or sanctions designed to compensate for actual losses caused by noncompliance with the underlying order.").

13. Civil coercive sanctions by their very nature are "conditional"— meaning "they only operate if and when the person found in contempt violates the order in the future." *Id.* (internal citation omitted). Civil contempt sanctions that are coercive in nature are paid to the district court. *See General Signal Corporation v. Donallco, Inc.,* 787 F.2d 1376, 1380 (9th Cir. 1986)).

14. "A court, in determining the size and duration of a coercive fine, must 'consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired.'" *Whittaker,* 953 F.2d at 516 (citing *United States v. United Mine Workers of America*, 330 U.S. 258, 304 (1947)).

15. Compensatory sanctions, in contrast, are paid to the party bringing the civil contempt motion and are intended to compensate for losses suffered as a result of the contemptuous conduct. *Portland Feminist Women's Health Center v. Advocates for Life, Inc.*, 877 F2d 787, 790 (9th Cir. 1989). Such compensatory sanctions may include plaintiffs' costs to bring the contempt proceeding, including reasonable attorney's fees. *Id.*

10

FINDINGS OF FACT AND CONCLUSIONS OF LAW
DWT 28070525v1 0094038-000021

16. Given CNT's egregious acts of copyright infringement on an enormous scale, disdain for this Court's PI Order—including taking <u>no</u> steps to comply with the PI Order—and the scope of the irreparable harm suffered by Plaintiffs on a daily and hourly basis as their copyrighted works are infringed, a significant coercive sanction of $10,000 per day for every day that CNT fails to comply with this Court's PI Order is merited.

17. A $10,000 per day fine is consistent with coercive sanctions ordered by other courts in this Circuit under similar factual circumstances. *See Koninklijke Philips Electronics, N.V. v. KXD Technology, Inc.*, 539 F.3d 1039, 1041, 1043, 1046 (9th Cir. 2008) (dismissing interlocutory appeal challenging $10,000 per day coercive fine in a trademark counterfeiting action after the defendants in that action failed to take any steps to comply with the Court's preliminary injunction order); *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1471, 1482 (9th Cir. 1992) (affirming $10,000 per day contempt fine against a defendant who refused to comply with a discovery order requiring the defendant to disclose its assets after plaintiff had secured a default judgment against it).

18. In addition, imposition of a $10,000 per day coercive fine is also appropriate as judged by the amount of statutory damages that could be imposed for copyright infringement in this case, with can equal as much as $150,000 per infringed work for willful infringement. 17 U.S.C. § 504(c)(2); *see also BMG Music v. Perez*, 952 F.2d 318, 320 (9th Cir. 1991) ("Because the district court imposed a sanction of $10,000 for each violation of the preliminary injunction, an amount no greater than statutory damages for the resulting copyright infringement, the district court did not abuse its discretion in setting the amount of sanctions.").

19. Since CNT has completely ignored this Court's PI Order, resulting in the infringement of literally thousands of copyrighted works on a daily basis, a $10,000 per day fine pending CNT's compliance with this Court's PI Order is entirely appropriate.

11

FINDINGS OF FACT AND CONCLUSIONS OF LAW
DWT 28070525v1 0094038-000021

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

20. "The Ninth Circuit has held that a court may sanction a contemnor by ordering that she pay a party's attorneys' fees and costs." *Bademyan,* 2009 WL 605789 at *4.

21. Where the moving party has incurred time and expense in bringing a motion to enforce compliance with a court order, and the contemnor has taken no steps to comply with the terms of the court's order, an attorneys' fees award is particularly appropriate. *Id.*

22. Once a party establishes its entitlement to an attorneys' fees award, the court must determine whether the award is reasonable, including with reference to the court's own "experience with similar cases and its knowledge of prevailing rates in the community." *Id.* at *5.

23. Plaintiffs' requested attorneys' fees of $34,680.60, representing only a portion of the attorneys' fees incurred to bring Plaintiffs' motion to hold CNT in contempt, are consistent with other attorneys' fees awards in this Circuit for similar motions and are reasonable based on this Court's knowledge of prevailing rates in the community. *See, e.g., Honor Plastic Indus. Co. Ltd. v. Lollicup USA, Inc.*, No. CIV-F-06-0707 AWI DLB, 2007 WL 1655786 (E.D. Cal. June 7, 2007) (awarding $90,648.40 for attorneys' fees and costs following contempt motion in trademark action); *Koninklijke Philips Electronics N.V.*, 539 F.3d at 1041 (detailing award of $353,611.70 for attorneys' fees as part of contempt sanctions).

Based on these findings of fact and conclusions of law, the Court grants Plaintiffs' motion for preliminary injunction.

Entered this _____ day of October, 2015.

_____
Hon. Margaret M. Morrow
Judge of the United States District Court

12
FINDINGS OF FACT AND CONCLUSIONS OF LAW
DWT 28070525v1 0094038-000021

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899