CARLA A. McCAULEY (State Bar No. 223910)
   carlamccauley@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Tel.: (213) 633-6800 Fax: (213) 633-6899

ROBERT D. BALIN (*pro hac vice*)
   robbalin@dwt.com
LACY H. KOONCE, III (*pro hac vice*)
   lancekoonce@dwt.com
SAMUEL BAYARD (*pro hac vice*)
   samuelbayard@dwt.com
GEORGE WUKOSON (*pro hac vice*)
   georgewukoson@dwt.com
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas
New York, New York 10020
Tel.: (212) 489-8230 Fax: (212) 489-8340
ATTORNEYS FOR PLAINTIFFS

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHINA CENTRAL TELEVISION, a China company; CHINA INTERNATIONAL COMMUNICATIONS CO., LTD., a China company; TVB HOLDINGS (USA), INC., a California corporation; and DISH NETWORK L.L.C., a Colorado corporation,<br><br>                               Plaintiffs,<br><br>                    vs.<br><br>CREATE NEW TECHNOLOGY (HK) LIMITED, a Hong Kong company; HUA YANG INTERNATIONAL TECHNOLOGY LIMITED, a Hong Kong company; SHENZHEN GREATVISION NETWORK TECHNOLOGY CO. LTD., a China company; CLUB TVPAD, INC., a California corporation; BENNETT WONG, an individual, ASHA MEDIA GROUP INC. d/b/a TVPAD.COM, a Florida corporation; AMIT BHALLA, an individual; NEWTVPAD LTD. COMPANY d/b/a NEWTVPAD.COM a/k/a TVPAD USA, a Texas corporation; LIANGZHONG ZHOU, an individual; HONGHUI CHEN d/b/a E-DIGITAL, an individual; JOHN DOE 1 d/b/a BETV; JOHN DOE 2 d/b/a YUE HAI; JOHN DOE 3 d/b/a 516; JOHN DOE 4 d/b/a HITV; JOHN DOE 5 d/b/a GANG YUE; JOHN DOE 6 d/b/a SPORT ONLINE; JOHN DOE 7 d/b/a GANG TAI WU XIA; and JOHN DOES 8-10,<br><br>                               Defendants. | Case No.<br>**CV 15-1869 MMM (AJWx)**<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO HOLD DEFENDANT CREATE NEW TECHNOLOGY (HK) IN CONTEMPT**<br><br>Hearing: October 13, 2015<br>Time: 10:00 a.m.<br>Courtroom:   780<br>Judge:         Hon. Margaret M. Morrow<br><br>Complaint Filed: March 13, 2015 |

This matter came on before the Court on October 13, 2015 on the motion of Plaintiffs China Central Television, China International Communications Co., Ltd., TVB Holdings (USA), Inc., and DISH Network L.L.C. (collectively, "Plaintiffs") to hold Defendant Create New Technology (HK) Limited ("CNT") in contempt. Pursuant to Local Rule 7-9, any opposition to Plaintiffs' motion was required to be filed and served not later than September 22, 2015.  No opposition was timely filed, nor has any been filed since that time.  Having considered Plaintiffs' Motion for Contempt, the Memorandum of Points and Authorities in Support of the Motion, and the declarations, exhibits, and reply papers in support thereof; having given CNT the opportunity to appear and be heard at a hearing on October 13, 2015 (an opportunity of which CNT did not avail itself); and good cause appearing, the Court makes the following findings of fact and conclusions of law:

## A.  **FINDINGS OF FACT**

1.  On March 16, 2015, Plaintiffs filed their Complaint and, contemporaneously, filed a Motion for Preliminary Injunction against CNT.  CNT did not oppose the motion, and subsequently defaulted; its default was entered on May 28, 2015.  (Doc. Nos. 87, 88.)  The Court entered a preliminary injunction ("PI Order") on June 11, 2015.  (Doc. No. 98). The Court also entered detailed findings of fact and conclusions of law on June 11, 2015, which are incorporated by reference herein as if fully set forth.  (Doc. No. 97.)

2.  The Court's PI Order preliminarily enjoined CNT from:

    a.  Transmitting, retransmitting, streaming, or otherwise publicly performing, directly or indirectly, by means of any device or process, Plaintiffs' Copyrighted Programming;

    b.  Authorizing, hosting, reproducing, downloading or otherwise distributing Infringing TVpad Apps, including, without limitation, offering them in the TVpad Store, loading them onto

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

TVpad devices, or providing them to consumers on separate media;

 c. Advertising, displaying, marketing or otherwise promoting any of the Infringing TVpad Apps, including, without limitation, publicly displaying any of the Plaintiffs' Copyrighted Programming in connection therewith or in connection with the TVpad Device;

 d. Distributing, advertising, marketing or promoting any TVpad device that contains, connects to, or offers for download any Infringing TVpad App, or promotes any Infringing TVpad App through the inclusion of icons for said Infringing TVpad App; and

 e. Otherwise infringing Plaintiffs' rights in their Copyrighted Programming, whether directly, contributorily, vicariously or in any other manner.

(Doc. 98 at 3-4.)

 3. CNT has received repeated notices of the PI Order through multiple methods.  First, the June 11 entry of the PI Order on the electronic docket constituted service of the PI Order on CNT through its counsel of record (who had not yet been granted leave to withdraw).

 4. Second, on June 17, 2015, Plaintiffs' counsel emailed notice of the PI Order to CNT.  (Declaration of Lacy H. Koonce III ("Koonce Decl.") ¶3, Exh. 19. )

 5. Third, on June 17, 2015, Plaintiffs' solicitor personally served copies of the PI Order at CNT's registered Hong Kong address.  (Koonce Decl. ¶4, Exh. 20.)

 6. Fourth, on June 18, 2015, Plaintiffs received confirmation that CNT's U.S. counsel of record had sent copies of the PI Order via Federal Express to CNT's last known address, prior to the date the court granted his motion to withdraw.  (Koonce Decl. ¶2, Ex. 18.)

FINDINGS OF FACT AND CONCLUSIONS OF LAW
DWT 28070525v1 0094038-000021

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

7.    Finally, on June 17, 2015, CNT was personally served with copies of the court's findings of fact and conclusions of law by Plaintiffs' solicitor at CNT's registered Hong Kong address.  (Koonce Decl. ¶4, Ex. 20.)  The findings and conclusions cite the evidence Plaintiffs filed in support of their motion for preliminary injunction, which not only identified the specific Infringing TVpad Apps the court ordered CNT to cease offering on the TVpad, but also identified the specific CNT website pages, Facebook pages and fan forums that CNT has been using to market and advertise the Infringing TVpad Apps.  (Doc. No. 97.)

8.    Despite receiving repeated  notice of the Court's PI Order, CNT consistently has ignored and violated the PI Order as set forth more fully below.

9.    From June 18 to 22, 2015, Plaintiff TVB tested the availability of its programs through the video-on-demand ("VOD") features of three of the fifteen Infringing TVpad Apps – specifically, the Gang Yue Kuai Kan app, the Gang Yue Wang Luo Dian Shi app, and the Gang Tai Wu Xia app – to determine whether CNT was transmitting TVB's copyrighted programming through any of the fifteen Infringing TVpad Apps in violation of the PI Order.  (Declaration of Samuel P. Tsang ("Tsang Decl."), Docket No. 23-1, p. 110-12, ¶¶ 8-10; see also Declaration of Christopher Weil ("Weil March Decl."), Docket No. 23-1, pp. 14-16, ¶ 26; PI Order at 2 and Exh. B.)

10.    During just this short test period, TVB confirmed that 2,388 separate episodes of TVB programs (1,781 of which are registered with the United States Copyright Office) were still being offered on TVpad devices through three Infringing TVpad Apps in violation of the PI Order.  (Tsang Decl., ¶ 10.)

11.    The 2,388 infringed programs include all but one of the copyrighted programs TVB had identified in its motion for preliminary injunction.  In a later test by TVB on August 24, 2015, the missing title reappeared on the VOD menu and was available for streaming.  (Tsang Decl., ¶ 9.)

3

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

12.     In further testing conducted by TVB between August 7 and 10, 2015, more than 1,700 TVB episodes continued to be streamed through three of the Infringing TVpad Applications on the TVpad device.  (Tsang Decl., ¶ 12.)

13.     The tested programming does not constitute all TVB programming that CNT is currently infringing through these apps, but only the limited content TVB confirmed was being streamed through the Infringing VOD apps over a short span of time. (Tsang Decl., ¶ 13.)

14.     During an August 20, 2015 test, TVB confirmed that 510 <u>additional</u> episodes of 24 TVB television programs that it had not previously checked were now available through the TVpad device.  As some of these episodes had only recently aired on TVB channels in Hong Kong and the United States, their appearance on the TVpad device confirms that CNT continues to convert TVB programming to VOD content immediately after it is aired in China.  (*Id.*)

15.     After the court entered the PI Order, Plaintiffs' investigators ran tests on the TVpad3 and TVpad4 devices they had purchased during their investigation for several months and confirmed constant streaming, 24 hours a day, 7 days a week, of CCTV and TVB programming.  (Declaration of Nicholas Braak ("Braak Decl."), Docket No. 23-1, pp. 49-51, ¶¶ 7-13.)

16.     Specifically, Plaintiffs' investigators determined that 14 of 15 of the Infringing TVpad Apps continued to be available in the TVpad Store for download. Moreover, all previously downloaded versions of the 15 Infringing TVpad Apps continued to function on one or more TVpad device models.  (Braak Decl., ¶ 6.) Access to the Infringing TVpad Apps and concurrent streaming of Plaintiffs' copyrighted programs continued unabated.  (Braak Decl., ¶ 6.)

17.     In the same manner that they did prior to entry of the PI Order, the TVpad3 and TVpad4 devices continued to operate as peers in a peer-to-peer network – allowing TVpad users to retransmit CCTV and TVB programs to other TVpad users.  (Braak Decl., ¶ 9.)

FINDINGS OF FACT AND CONCLUSIONS OF LAW
DWT 28070525v1 0094038-000021

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

18.     In addition, following entry of the PI Order, Plaintiffs' investigators purchased a new TVpad4 device from the official TVpad Store that CNT runs on the website www.mtvpad.com.  They subsequently tested the new TVpad4 device and confirmed that the terms and conditions accessible on first use of the TVpad4 device continue to identify Create New Technology (HK) Limited as the manufacturer of the device.  (Declaration of Christopher Weil ("Weil August Decl."), Docket No. 109-1, pp. 17-18, ¶¶ 4-6 and Exhs. 24-25; Braak Decl., ¶ 15, Exh. 26.)

19.     Plaintiffs' investigators also confirmed that the opening screens and TVpad Store on the new TVpad4 device continue to market and advertise several of the Infringing TVpad Apps.  (Compare Braak Decl. ¶ 26 with Declaration of Nicholas Braak ("March Braak Decl."), Docket No. 23-1, ¶ 29.)

20.     Plaintiffs' investigators determined that all nine of the Infringing TVpad Apps they previously concluded were available for download on the TVpad4 device continue to be listed on the TVpad Store, and are available for download.  (Compare Braak Decl., ¶ 16 with March Braak Decl., ¶ 16.)  All of the Infringing TVpad Apps continue to provide CCTV and TVB programs via VOD, Time-Shift, Live TV and Replay Live modes in the same manner as before the injunction was issued.  (Braak Decl., ¶ 16.)

21.     Finally, Plaintiffs' investigators determined that the Infringing TVpad Apps that they downloaded to the new TVpad4 device continue to stream CCTV and TVB programming 24 hours a day, each day of the week.  (*Id.*)

22.     Nor have there been any material changes in CNT's advertising and marketing practices following entry of the injunction.  Not only has CNT taken no steps to remove the marketing content barred under the PI Order from its websites; it has exacerbated its infringement by displaying barred advertising from its former website (located at itvpad.com) on a a new website (located at mtvpad.com). (Compare March Weil Decl., ¶¶ 18, 25(d), 32 and 65-66 and Exhs. 7, 14 and 15 with

FINDINGS OF FACT AND CONCLUSIONS OF LAW
DWT 28070525v1 0094038-000021

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Declaration of George P. Wukoson ("Wukoson Decl."), Docket No. 109-1, pp. 4-8, ¶¶ 5-8, 13 and Exhs. 2-4 and 9.)

23.     In addition, when migrating its itvpad.com blog over to its new mtvpad.com blog, CNT retained blog entries in which it recommended certain Infringing TVpad Apps (compare March Weil Decl., ¶¶ 34, 37 and Exhs. 16, 19 with Wukoson Decl., ¶¶ 9, 12 and Exhs. 5, 8). These entries tout the availability of TVB content on various Infringing TVpad Apps (compare March Weil Decl., ¶ 35 and Exh. 17 with Wukoson Decl., ¶¶ 10-11 and Exhs. 6-7).

24.     Similarly, CNT continues to operate and promote its official fan forum, where posts about the availability of Plaintiffs' copyrighted programs and how to access them through the Infringing TVpad Apps remain; there are also <u>new</u> posts added since entry of the PI Order. (Wukoson Decl., ¶¶ 20-22.)

25.     Finally, CNT's Facebook page remains materially unchanged, in that it retains posts that advertise and encourage the use of the Infringing TVpad Apps to watch TVB and CCTV programs, and provide assurances that viewing the programming is legal. (Wukoson Decl., ¶¶ 14-18 and Exhs. 10-13.) Further, in recent posts following entry of the injunction, CNT has continued to promote the same Infringing TVpad Apps the court enjoined it from marketing and advertising, and to encourage their use to watch TVB and CCTV programs. (Wukoson Decl., ¶ 19 and Exh. 14.)

26.     The TVpad Fan Forum, which CNT operates and moderates, also continues to display new posts that tout the availability of Plaintiffs' copyrighted programming in violation of the PI Order. In a recent post dated July 2015, for example, a user commented on the availability of Wimbledon tennis on the CCTV sports channel on TVpad. (Wukoson Decl., ¶ 21 and Exh. 16.) In another July 2015 post, a user commented on the availability of the World Swimming Championships on a CCTV channel through the TVpad. (*Id.*)

FINDINGS OF FACT AND CONCLUSIONS OF LAW
DWT 28070525v1 0094038-000021

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

27.     Elsewhere on the TVpad Fan Forum, CNT encouraged a user to post a detailed review of the TVpad4 device, and to compare it to competitors.  After the user touted the fact that he or she began to use the TVpad to avoid paying $40 a month for a Jade subscription – the DISH subscription package that offers authorized TVB content – the user explained why the TVpad4 is a better device than alternatives, including the fact that it does not require a payment of a subscription fee and offers better quality streaming than other competing "free" devices.  The TVpad moderator marked this thread a favorite, allowing more TVpad users to identify the post easily on the Fan Forum.  (*Id.*, ¶ 22 and Exh. 17.)

28.     Finally, since entry of the PI Order, CNT has continued to use Plaintiffs' copyrighted programming in direct marketing pitches to customers, including through emails touting the availability of Plaintiffs' copyrighted programming.  TVB's former Director of Programming, for example, received two direct advertising emails from CNT offering specials on the TVpad device.  One of those emails displayed an image from one of TVB's copyrighted TV programs to solicit sales of the TVpad.  (Tsang Decl., ¶¶ 14-15 and Ehxs. 22-23.)

29.     Plaintiffs have expended in excess of $34,680.60 in attorneys' fees preparing a contempt motion, including time spent researching, drafting and compiling evidence in support of the motion.  (Declaration of Carla A. McCauley ("McCauley Decl."), Docket No. 109-1, pp. 39-40, ¶¶3-4; Wukoson Decl., ¶ 23.)

**B.      CONCLUSIONS OF LAW**

1.      "A court has wide latitude in determining whether there has been contemptuous defiance of its order."  *Gifford v. Heckler*, 741 F.2d 263, 266 (9th Cir. 1984).  The Ninth Circuit's standard regarding the propriety of contempt sanctions "has long been whether the defendants have performed all reasonable steps within their power to insure compliance with the court's orders."  *Stone v. City & Cnty. of San Francisco*, 968 F.2d 850, 856 (9th Cir. 1992) (internal citations omitted).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

2.      "The party moving for contempt bears the burden of establishing by clear and convincing evidence that the contemnor has violated a specific and definite order of the court." *Bademyan v. Receivable Management Services Corp.*, Case No. CV 08-00519 MMM (RZx), 2009 WL 605789, *2 (C.D. Cal. Mar. 9, 2009) (citing *Wolfard Glassblowing Co. v. Vanbragt*, 118 F.3d 1320, 1322 (9th Cir. 1997); *Balla v. Idaho State Bd. of Corrections*, 869 F2d 461, 466 (9th Cir. 1989)).

3.      Plaintiffs have established that the PI Order is clear and is not susceptible of any reasonable interpretation that would explain CNT's failure to take steps to comply with the order.  Specifically, Plaintiffs have met their burden of showing that under the PI Order, CNT was required to cease transmitting or retransmitting Plaintiffs' Copyrighted Programming, as that term is defined in the PI Order, including by reference to numerous specific examples of infringed content.

4.      Plaintiffs have also established that the PI Order clearly states that CNT must cease providing access to or distributing specifically identified Infringing TVpad Apps that stream Plaintiffs' Copyrighted Programming, including by reference to a precise list of Infringing TVpad Apps.  (Doc. No. 98, Exh. B.) Finally, Plaintiffs have established that the PI Order clearly directs that CNT not advertise, display or market the Infringing TVpad Apps, nor take steps to market the TVpad by referencing the Infringing TVpad Apps.  In support of their motion for contempt, Plaintiffs have proffered clear and convincing evidence that CNT has violated, and continues to violate, the provisions of the PI Order.

5.      Plaintiffs have also established that CNT received notice of the PI Order and the findings of fact and conclusions of law supporting it as early as June 17, 2015, when they were emailed to CNT and personally served at its Hong Kong address.

6.      "Once the moving party shows by clear and convincing evidence that the contemnor has violated a specific and definite order of court, the burden shifts to the contemnor to demonstrate that he or she took every reasonable step to comply,

FINDINGS OF FACT AND CONCLUSIONS OF LAW
DWT 28070525v1 0094038-000021

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

and to articulate reasons why compliance was not possible." *Bademyan*, 2009 WL 605789, at *2 (citing *Donovan v. Mazzola,* 716 F.2d 1226, 1240 (9th Cir. 1983)).

7.   "Intent is not an issue in civil contempt proceedings. The sole question is whether a party complied with the district court's order." *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983) (internal citations omitted).

8.   By failing to file any response to Plaintiffs' motion for contempt, CNT has failed to meet its burden of showing that it took reasonable steps to comply with the PI Order.  Nor has it articulated any reason why compliance was not possible.

9.   Through the Tsang and Braak Declarations, Plaintiffs have demonstrated that CNT has failed to take any steps to remove or disable the availability of Plaintiffs' copyrighted programming from its TVpad device; to remove or disable the 15 Infringing TVpad Apps identified in the PI Order; or to take any steps to remove marketing materials from its websites that encourage infringement of Plaintiffs' copyrighted programming.  Indeed, CNT has expanded its infringement, by displaying content that was the subject of the PI Order on a new website and adding new Facebook and blog entries that continue to encourage infringement, in direct violation of the order.   Finally, CNT has continued to sell the TVpad device into the United States, which affords purchasers full access to the Infringing TVpad Apps and Plaintiffs' copyrighted programming in violation of the PI Order.

10.   Plaintiffs have therefore established that CNT has acted in contempt of all aspects of the PI Order.

11.   Once a violation of a court order has been shown, civil contempt sanctions may be imposed.  Civil contempt sanctions are employed "to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Whittaker Corp. v. Execuair Corp*., 953 F.2d 510, 517 (9th Cir. 1992); see also *Citizens for Lawful and Effective Attendance Policies v. Sequoia Union High School District*, No. C 87-3204 MMC, 1998 WL 305513, *4 (N.D. Cal.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
DWT 28070525v1 0094038-000021

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

June 4, 1998) ("Such remedial sanctions may take two forms – sanctions designed to coerce future compliance with the underlying order, or sanctions designed to compensate for actual losses caused by noncompliance with the underlying order").

12.     Civil coercive sanctions by their very nature are "conditional" – meaning that  "they only operate if and when the person found in contempt violates the order in the future." *Id*. (internal citation omitted).  Civil contempt sanctions that are coercive in nature are paid to the district court.  See *General Signal Corporation v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986).

13.     "A court, in determining the size and duration of a coercive fine, must 'consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired.'" *Whittaker Corp.*, 953 F.2d at 516 (citing *United States v. United Mine Workers of America*, 330 U.S. 258, 304 (1947)).

14.     Compensatory sanctions, in contrast, are paid to the party bringing the civil contempt motion and are intended to compensate for losses suffered as a result of the contemptuous conduct.  *Portland Feminist Women's Health Center v. Advocates for Life, Inc.*, 877 F2d 787, 790 (9th Cir. 1989).  Such compensatory sanctions may include the costs incurred in filing a motion for contempt, including reasonable attorneys' fees. *Id.*

15.     Given CNT's obvious and extensive acts of copyright infringement, complete disregard of the PI Order and the likely harm being suffered by Plaintiffs on a daily basis, a significant coercive sanction of $5,000 per day for every day that CNT fails to comply with the PI Order is merited.

16.     A $5,000 per day fine is consistent with the coercive sanctions imposed by other courts in this Circuit under similar factual circumstances. See, e.g., *NuScience Corp. v. Henkel*, No. CV 08-2661 R (FFMx), 2015 WL 103378, *1 (C.D. Cal. Jan. 5, 2015) (ordering "payment of a fine to the Court of $5,000 per diem, until such time as (a) all offending websites, Facebook posts, and other Internet material

FINDINGS OF FACT AND CONCLUSIONS OF LAW
DWT 28070525v1 0094038-000021

**DAVIS WRIGHT TREMAINE LLP**
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

are taken down; and (b) the Court is provided with satisfactory sworn evidence of the removal of the offending material and the steps taken to prevent its reappearance. Such per diem fine should not commence until 14 days after entry of the Court's order finding Joseph and Sharon Henkel in contempt"); *Fed. Trade Comm'n v. Productive Mktg., Inc.*, 136 F.Supp.2d 1096, 1113 (C.D. Cal. 2001) ("the court imposes a per diem fine of $50 for the first day of noncompliance," with the amount doubling for every additional day of noncompliance," with the result that sanctions would be more than $5,000 per day within 7 days).

17.     Since CNT has completely disregarded the PI Order, resulting in ongoing infringement of thousands of copyrighted works on a daily basis, a $5,000 per day fine pending CNT's compliance with the order is entirely appropriate.[1]

18.     "The Ninth Circuit has [also] held that a court may sanction a contemnor by ordering that she pay a party's attorneys' fees and costs." *Bademyan*, 2009 WL 605789 at *4.

19.     Where the moving party has incurred time and expense filing in a motion to enforce compliance with a court order, and the contemnor has taken no steps to comply with the order, an attorneys' fees award is particularly appropriate. *Id.*

20.     Once a party establishes its entitlement to an attorneys' fees award, the court must determine whether the award is reasonable, including with reference to

---

[1] At the hearing, plaintiffs argued that the daily sanction should be $10,000, citing, *inter alia*, the fact that CNT was generating $14,582.30 in revenue a day from sales of TVPads in the United States (($25,460,691.00/(1,746 days since 1/1/11). Plaintiffs do not identify (or even provide a reasonable estimate) as to what portion of this revenue is profit, which in the court's view is the more relevant figure. Plaintiffs also asserted that, had CNT streamed content legally, it would by now have had to pay $191,414,470 in licensing fees per day ($279,465,120/(1,460 days in four years). The court finds this calculation less relevant, as the issue is coercing compliance with the court's order rather than with compelling it to pay license fees. In light of the fact that CNT's daily gross revenue is approximately $14,500, and it undoubtedly has costs associated with generating that revenue, the court concludes a $5,000 a day sanction is appropriate.

---

11

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

the court's own "experience with similar cases and its knowledge of prevailing rates in the community." *Id*. at *5.

21.     Plaintiffs' requested attorneys' fees of $34,680.60, representing only a portion of the fees incurred in connection with this proceeding to hold CNT in contempt, are consistent with other attorneys' fees awards in this Circuit for similar motions and are reasonable based on the court's knowledge of prevailing rates in the community.  See, e.g., *Honor Plastic Indus. Co. Ltd. v. Lollicup USA, Inc*., No. CIV-F-06-0707 AWI DLB, 2007 WL 1655786 (E.D. Cal. June 7, 2007) (awarding $90,648.40 in attorneys' fees and costs following a contempt motion in trademark action); see also *Koninklijke Philips Electronics N.V. v. KXD Technology, Inc*., 539 F.3d 1039, 1041 (9th Cir. 2008) (detailing an award of $353,611.70 for attorneys' fees as part of contempt sanctions).

Based on these findings of fact and conclusions of law, the court holds Defendant Create New Technology (HK) Limited in contempt.  It orders that CNT pay a fine to the court of $5,000 per day until such time as it complies with the terms of the June 11, 2015 PI Order.  The per diem fine will commence 14 days after entry of this order finding Defendant Create New Technology (HK) Limited in contempt. The court further awards attorneys' fees in the amount of $34,680.60.

DATED: November 4, 2015.

_____
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE

FINDINGS OF FACT AND CONCLUSIONS OF LAW
DWT 28070525v1 0094038-000021

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899