FILED
CLERK U.S. DISTRICT COURT

APR − 4 2016

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CHINA CENTRAL TELEVISION, a China
company; CHINA INTERNATIONAL
COMMUNICATIONS CO., LTD., a China
company; TVB HOLDINGS (USA), INC., a
California corporation; and DISH
NETWORK L.L.C., a Colorado corporation,
Plaintiffs,

           Plaintiffs,

      vs.

CREATE NEW TECHNOLOGY (HK)
LIMITED, a Hong Kong company; HUA
YANG INTERNATIONAL
TECHNOLOGY LIMITED, a Hong Kong
company; SHENZHEN GREATVISION
NETWORK TECHNOLOGY CO. LTD., a
China company; CLUB TVpad, INC., a
California corporation; BENNETT WONG,
an individual, ASHA MEDIA GROUP INC.
d/b/a TVpad.COM, a Florida corporation;
AMIT BHALLA, an individual; NEWTVpad
LTD. COMPANY d/b/a NEWTVpad.COM
a/k/a TVpad USA, a Texas corporation;
LIANGZHONG ZHOU, an individual;
HONGHUI CHEN d/b/a E- DIGITAL, an
individual; JOHN DOE 1 d/b/a BETV;
JOHN DOE 2 d/b/a YUE HAI; JOHN DOE
3 d/b/a 516; JOHN DOE 4 d/b/a HITV;
JOHN DOE 5 d/b/a GANG YUE; JOHN
DOE 6 d/b/a SPORT ONLINE; JOHN DOE
7 d/b/a GANG TAI WU XIA; and JOHN
DOES 8-10,

           Defendants.

CASE NO. CV 15-01869 MMM (AJWx)

ORDER GRANTING PLAINTIFFS' MOTION
FOR DEFAULT JUDGMENT

# I. BACKGROUND

## A.    Procedural Background

On March 13, 2015, plaintiffs China Central Television ("CCTV"), China International Communications Co., Ltd. ("CICC"), TVB Holdings (USA), Inc. ("TVB USA"), and DISH Network L.L.C. ("DISH") (collectively "plaintiffs") filed this action against Create New Technology HK Limited ("CNT"), Hua Yang International Technology Limited ("HYIT"), Shenzhen GreatVision Network Technology Co., Ltd. ("GreatVision"), (collectively "the CNT defendants"), and various fictitious defendants (plaintiffs denominate the CNT defendants and fictitious defendants collectively as the "Retransmission defendants").[1]  Plaintiffs also name as defendants Club TVpad, Inc. ("Club TVpad"), Bennett Wong, Asha Media Group ("AMG"), Amit Bhalla, newTVpad Ltd. Company ("newTVpad"), Liangzhong Zhou, Honghui Chen.[2]  Plaintiffs filed a notice of voluntary dismissal as to GreatVision on November 9, 2015.[3]  Plaintiffs have now filed a motion seeking the entry of default judgment against the two remaining CNT defendants, CNT and HYIT (collectively "defendants").[4]

Plaintiffs requested that HYIT's default be entered on April 27, 2015;[5] they sought the entry of CNT's default on May 1, 2015.[6]  The court entered defaults against both defendants on May 28, 2015.[7]

---

[1]Complaint, Docket No. 1 (Mar. 13, 2015).

[2]*Id.*

[3]Notice of Voluntary Dismissal Without Prejudice of Defendant Shenzhen Greatvision Network Technology Co. Ltd., Docket No. 141 (Nov. 9, 2015).

[4]Motion for Default Judgment, Docket No. 123 (Sept. 14, 2015).  See also Reply in Support of Motion for Default Judgment against Defendants Create New Technology (HK) Limited; Hua Yang International Technology Limited, Docket No. 139 (Oct. 26. 2015).

[5]Request for Entry of Default Against Defendant Hua Yang International Technology Limited, Docket No. 64 (Apr. 27, 2015).

[6]Request for Entry of Default against Defendant Create New Technology HK Limited, Docket No. 67 (May 1, 2015).

[7]Minutes (In Chambers) Order Granting Plaintiffs' Requests for Entry of the Defaults of Defendants Hua Yang International Technology Ltd. and Create New Technolgoy HK Ltd. ("Default"), Docket No. 87 (May 28, 2015).

1  On June 11, 2015, the court entered a preliminary injunction against CNT.[8]  Because it did not comply

2  with the terms of the injunction, plaintiffs filed a motion for contempt on August 26, 2015.[9]  The court

3  issued a contempt order against CNT on November 4, 2015.[10]  In the interim, on September 14, 2015,

4  plaintiffs filed a motion for entry of default judgment.  The court entered default judgment against HYIT

5  and CNT on December 7, 2015, stating that it would enter a permanent injunction precluding further

6  copyright and trademark infringement by defendants.[11]

7      On February 12, 2016, plaintiffs filed an ex parte application for a permanent injunction.[12]

8  Defendants have not filed an opposition.

9      **B.    Factual Background**

10     CCTV and Television Broadcasts Limited ("TVB") are television broadcasters in mainland

11  China and Hong Kong, respectively.[13]  Through affiliates, CCTV and TVB license copyrighted television

12  programming for retransmission in the United States via authorized satellite, cable, and other television

13  service providers ("Authorized U.S. Providers").[14]

14     CICC is a CCTV affiliate that licenses Authorized U.S. Providers to broadcast CCTV's "Great

15  Wall" package of channels to paying U.S. subscribers.  Although CICC licenses certain satellite and

16  cable retransmission rights, CCTV retains and owns the exclusive right to transmit CCTV programming

17

18     _____

    [8]Preliminary Injunction, Docket No. 98 (June 11, 2015).

19
    [9]Plaintiffs' Motion for Contempt, Docket No. 109 (Aug. 26, 2015).

20
21     [10]Findings of Fact and Conclusions of Law in Support of Contempt Order, Docket No. 140 (Nov. 4, 2015).

22
    [11]Amended Order Granting Plaintiff's Motion for Default Judgment ("Default Judgment Order"),
23  Docket No. 158 (Dec. 7, 2015).

24     [12]Ex Parte Application ("Application"), Docket No. 176 (Feb. 12, 2016).

25     [13]Complaint, ¶¶ 1-3, 5.

26     [14]Compendium of Evidence in Support of Motion for Preliminary Injunction ("Injunction
27  Compendium"), Volume I, Docket No. 23-1 (Mar. 16, 2015), Declaration of Samuel P. Tsang
    ("Tsang PI Decl."), ¶¶ 3-4, 11; Compendium, Volume I, Declaration of Chunguang Lu ("Lu Decl."),
28  ¶¶ 3-5, 9.

in the United States over the internet.[15]  TVB USA is a wholly owned indirect subsidiary of TVB and distributes and licenses TVB programming in the United States.  TVB owns and maintains the right to transmit TVB programming in the United States.  DISH is a television service provider that delivers television services to subscribers through satellite and internet platforms.  DISH is a licensee of both CCTV and TVB; pursuant to licensing agreements, DISH owns the exclusive right to transmit certain CCTV and TVB programming in the United States.[16]

CNT is a Hong Kong company that manufactures the "TVpad" device – a set-top box that delivers streaming television programming from Asia to customers in the United States over the internet without requiring customers to pay subscription fees to an authorized provider.[17]  HYIT is a Hong Kong company that has its principal place of business in Hong Kong.[18]  Plaintiffs assert that the CNT defendants are commonly owned, operated, and controlled for the purpose of distributing and profiting from the Tvpad Retransmission Service in the United States and around the world.[19]

CNT and HYIT offer TVpads for sale to consumers throughout the United States – including within the Central District of California – via their joint website, www.iTVpad.com, and U.S. distributors.[20]  Until approximately September 2014, HYIT, on behalf of the CNT defendants, operated the Tvpad website, as well as another website at tvpad.hk, both of which sold Tvpad devices to

---

[15]Lu Decl., ¶¶ 5, 10-11.

[16]Compendium of Evidence in Support of Plaintiffs' Motion for Default Judgment ("Compendium"), Volume I, Docket No. 125-1 (Sept. 14, 2015), Declaration of Christopher Kuelling ("Kuelling DJ Decl."), ¶¶ 5-7; Lu Decl., ¶¶ 12-13; Tsang Decl., ¶ 26.  "OTT" is the delivery of video programming using an internet connection that is not owned, managed, or operated by the party delivering the programming – i.e., Netflix.  (Kuelling DJ Decl., ¶ 4, n.1.)

[17]Complaint, ¶¶ 3-4; Injunction Compendium, Volume I, Declaration of Christopher Weil ("Weil PI Decl."), ¶¶ 9, 16.

[18]Complaint, ¶ 20.

[19]*Id.*, ¶ 81.

[20]*Id.*, ¶ 74.

1    consumers in the Central District of California.[21]  In approximately September 2014, the CNT defendants

2    merged CNT's previous website (www.creatent.net) with the TV pad website.[22]  CNT's latest model of

3    the TVpad, the TVpad4, sells at retail for $299.00.[23]

4        Before a TVpad user can access television programming, he or she must download

5    applications from the "TVpad Store." The store is a primary feature of every TVpad device.  Thus,

6    before TVpad users in the United States can access unauthorized CCTV and TVB programming,

7    they must download free apps from the TVpad Store for their devices.[24]  Plaintiffs' investigators have

8    identified 15 TVpad apps available in the TVpad Store that permit TVpad users in the United States to

9    access unauthorized CCTV and TVB programming ("Infringing TVpad Apps").[25]  The CNT defendants

10   purportedly are deeply involved in, and are directly or indirectly responsible for (a) capturing CCTV's

11   and TVB's broadcasts in Asia and infringing retransmission of that programming over the Internet to

12   TVpad users in the United States; and (b) developing, maintaining, and disseminating the Infringing

13   TVpad Apps.[26]

14       In late 2014, plaintiffs' investigator observed and recorded 30 CCTV television episodes and 23

15   TVB television episodes streamed through Infringing TVpad Apps on a TVpad device.  A TVB USA

16   executive observed and recorded portions of an additional 406 TVB episodes streamed through

17   Infringing TVpad Apps in video-on-demand mode.  Each episode recorded by plaintiffs' investigator

18   and the TVB USA executive ("Registered Programs") are registered with the United States Copyright

19   Office.  Plaintiffs have not granted anyone a license to stream the Registered Programs over the internet

20

21   [21]Id., ¶ 75.

22   [22]Id.

23   [23]Compendium, Volume I, Declaration of Christopher Weil ("Weil DJ Decl."), ¶¶19-21;
Compendium, Volume IV, Exh. 56, Docket No. 125-3 (Sept. 14, 2015); Compendium, Volume V,

24   Exh. 57-58, Docket No. 125-4 (Sept. 14, 2015).

25   [24]Injunction Compendium, Volume I, Declaration of Nicholas Braak ("Braak PI Decl."), ¶¶

26   8, 14-16; Weil PI Decl., ¶ 26; Kuelling DJ Decl. ¶¶ 9-10.

27   [25]Complaint, ¶ 8.

28   [26]Id.

1    into the United States through the Infringing TVpad Apps.[27]

2        Before accessing the TVpad Store, users must accept CNT's mandatory terms of service. These

3 terms state, *inter alia*, that CNT reserves the right to "filter, modify, refuse or delete any or all software

4 applications in the TVpad Store," and to "suspend, remove, or disable access to any Products, content,

5 or other materials accessible through the TVpad Store."[28] CNT solicits new applications for the TVpad

6 Store, announces the release of new applications, and sells different "editions" of its TVpad4 device with

7 unique application collections. CNT has stated that it "has strictly controlled and managed the way to

8 upload apps on TVpad Store[.]"[29]

9        Plaintiffs' investigator performed forensic analysis of the TVpad device and determined that

10 Infringing TVpad Apps in "live" mode stream CCTV and TVB programming through a peer-to-peer

11 network, in which each TVpad user streams video content to large numbers of other users worldwide.

12 Stated differently, each TVpad user not only receives live CCTV and TVB broadcasts, but also

13 simultaneously retransmits those broadcasts to other TVpad users throughout the United States and

14 around the world. CNT is aware of the peer-to-peer streaming feature of the TVpad and has publicly

15 advertised the feature.[30]

16        Plaintiffs' investigator reports that peer-to-peer streaming can only function if an individual

17 initially captures CCTV and TVB broadcast signals in Asia. After the signal is captured, the individual

18 converts the signal into digital data and then streams the data to TVpad users through the peer-to-peer

19

20

---

21      [27]Braak PI Decl., ¶¶ 74-76; Tsang PI Decl., ¶¶ 23, 25-27; Injunction Compendium, Volume
VI, Exh. 92; Lu Decl., ¶¶ 23-25; *id.*, Volume VI, Exh. 94; *id.*, Declaration of Christopher Kuelling
22 ("Kuelling PI Decl."), ¶ 14.

23      [28]Braak PI Decl., ¶¶ 29-30; Injunction Compendium, Volume IV, Exh. 47, Docket No. 23-4
24 (March 16, 2015), ¶¶ 3.8, 3.10.

25      [29]Weil PI Decl., ¶¶ 18, 25, 36; Injunction Compendium, Volume II, Exhs. 7, 9-12, 18, Docket
26 No. 23-2 (March 16, 2015); Injunction Compendium, Volume I, Declaration of George P. Wukoson
("Wukoson PI Decl."), ¶ 2; *id.*, Volume VII, Exh. 104, Docket No. 23-7 (March 16, 2015) at 4.

27      [30]Braak PI Decl., ¶¶ 10(a), 53-56; Injunction Compendium, Volume IV, Exh. 45; Weil PI
28 Decl., ¶ 19; Injunction Compendium, Volume II, Exh. 9 at 1.

network.[31]  The investigator has also determined that Infringing TVpad Apps in "video-on-demand" mode stream CCTV and TVB programs to TVpad users directly from servers in the United States, including servers in Los Angeles.[32]  Data packets received from the servers indicate that recorded video files reside on the servers. Thus, individuals or entities that pirate CCTV and TVB programs from Asia make copies of the programs and stream those copies from servers located in the United States.[33] Forensic analysis has demonstrated that Infringing TVpad Apps in time-shift mode stream CCTV and TVB programming both through the peer-to-peer network and directly from servers in China.[34]

CNT promotes its television service, the Infringing TVpad Apps, and the availability of CCTV and TVB programming on the TVpad devices. In some cases, it has falsely represented that the content it delivers has been authorized by CCTV and TVB.  CNT solicits new distributors by stating that it provides "[e]xclusive & authorized live content from mainland China/HK/Taiwan"; this statement is displayed next to CCTV's and TVB's logos.  CNT has also advertised on its website that the TVpad delivers "massive content from China, Taiwan, and HK."[35]

CNT places banner advertisements for Infringing TVpad Apps that stream CCTV and TVB programs on the user interface of the TVpad device.  It also utilizes categories such as "Live TV," "VOD," and "TV Dramas" in the TVpad Store to make it easy for users to locate and download Infringing TVpad Apps.[36]

CNT's blog actively promotes the Infringing TVpad Apps.  For example, on January 8, 2014, CNT stated that the Gang Yue Wang Luo Dian Shi app provides live channels in high definition, and

---

[31]Braak PI Decl., ¶¶ 17, 56.  Plaintiffs denominate individuals responsible for capturing broadcast signals and converting them into data streamed through peer-to-peer networks as "App Infringers."

[32]*Id.*, ¶¶ 10(b), (d), 60-62; Injunction Compendium, Volume IV, Exh. 45.

[33]Braak PI Decl., ¶ 62; Injunction Compendium, Volume IV, Exh. 45.

[34]Braak PI Decl., ¶¶ 10(c), 63.

[35]Weil PI Decl., ¶¶ 28-50; Injunction Compendium, Volume II, Exhs. 8, 13-29, 33.

[36]Braak PI Decl., ¶¶ 31-36, 38-41, 46-50; Injunction Compendium, Volume IV, Exhs. 46, 48.

1    noted that it is "definitely the favorite of those who love to watch TVB." CNT's blog post included a

2    screenshot of a TVB program.[37]

3          CNT's Facebook page also regularly promotes the availability of CCTV and TVB television

4    programs through the Infringing TVpad Apps.  One post by the TVpad administrator on CNT's

5    Facebook page encourages users to watch a CCTV documentary and places the CNT logo directly next

6    to programming information for CCTV channels.[38] CNT's Facebook page includes a promotional video

7    that features icons of the Infringing TVpad Apps and a CCTV broadcast.[39]

8          CNT also actively collaborates with third-party App Infringers to develop and improve infringing

9    content by providing customer support and technical assistance to help TVpad users access and share

10   infringing streams of CCTV and TVB programming, and by conveying messages between TVpad users

11   and App Infringers.  For example, a CNT blog post instructs users how to install the infringing BETV

12   app from the TVpad Store, providing step-by-step screenshots.[40]

13         Administrators on CNT's Facebook page instruct users how to download and use Infringing

14   TVpad Apps to access CCTV and TVB programming.  Administrators provide similar assistance to help

15   TVpad users locate CCTV and TVB programming on CNT's official fan forum at TVpadfans.com.[41]

16   Administrators on CNT's Facebook page and fan forum also provide technical assistance and updates

17   to customers regarding server problems impacting their ability to stream infringing television content.[42]

18         CNT has also made statements that suggest it collaborates with third party app developers to

19

_____

20         [37]Weil PI Decl., ¶ 36; Injunction Compendium, Volume III, Exh. 18, Docket No. 23-3 (Mar.
21   16, 2015).

22         [38]Weil PI Decl., ¶¶ 39-42; Injunction Compendium, Volume III, Exh. 20 at 3-6; *id.*, Exh. 21.

23         [39]Weil PI Decl., ¶¶ 42, 50; Injunction Compendium, Volume III, Exh. 21; *id.*, Exh. 29 at 1-53,
24   61-71.

25         [40]Weil PI Decl., ¶¶ 37, 54-56; Injunction Compendium, Volume III, Exhs. 19, 30; *id.*, Volume
     IV, Exhs. 31-32.

26
           [41]Weil PI Decl., ¶ 50; Injunction Compendium, Volume III, Exh. 29 at 81-87.
27
           [42]Weil PI Decl., ¶¶ 37, 39; Injunction Compendium, Volume IV, Exhs. 34, 36; Braak PI Decl.,
28   ¶ 59; Injunction Compendium, Volume V, Exh. 51.

1  develop and improve infringing content. By way of example, on August 18, 2013, CNT published a post

2  on its Facebook page soliciting suggestions as to how it could "better serve [its] overseas customers and

3  allow overseas TVpad users to enjoy better Chinese TV services." In response, one user suggested

4  adding a TVB football channel; the administrator said he would "communicate with third-party

5  application developers" regarding the suggestion.[43] In response to another user's suggestion that CNT

6  "improve all streaming sound bit rates and enable stereo," the administrator reported that "the

7  application providers are working on this issue."[44]

8        In addition to responding to user suggestions and questions, CNT also communicates information

9  regarding the Infringing TVpad Apps to users. In October 2013, for example, a CNT administrator

10  posted a notification on CNT's official Facebook page advising TVpad users that maintenance required

11  on the infringing 516 app might cause service disruptions.[45]

12        Despite its internet-based streaming business model, CNT has not (a) posted a policy instructing

13  users how to report infringing activity, (b) appointed an agent to receive notifications of claimed

14  infringement under the Digital Millennium Copyright Act, 17 U.S.C. § 512 (c)(2), or (c) adopted any

15  notice-and-takedown procedures in the TVpad Store.[46]

16        CNT employs a business model that requires TVpad users to pay an up-front, one-time fee for

17  unlimited access to unauthorized, infringing programming. Consumers who wish to access the content

18  from an Authorized U.S. Provider must pay regular subscription fees to receive programming.[47]

19        Both CCTV and TVB allege that they have registered or applied for trademarks and service

20

21

22        [43]Weil PI Decl., ¶ 54.

23        [44]*Id.*, ¶¶ 54-55; Injunction Compendium, Volume IV, Exhs. 30-31.

24

25        [45]Weil PI Decl., ¶ 56; Injunction Compendium, Volume IV, Exh. 32.

26        [46]Braak PI Decl., ¶ 51.

27        [47]Weil PI Decl., ¶¶ 4, 28, 35, 38, 62; Injunction Compendium, Volume II, Exhs. 6, 13, 17; *id.*, Volume IV, Exh. 38; Lau Decl., ¶¶ 26, 30, 34; *id.*, Volume VI, Exh. 80; Tsang Decl., ¶ 14; Lu

28  Decl., ¶ 15; Kuelling Decl., ¶¶ 7-8, 11.

marks.[48]   They have shown that they own numerous U.S. copyright registrations for television programming.[49]  Plaintiffs have also shown that the Infringing TVpad Apps on the TVpad have streamed 2,006 of the copyrighted programs and streamed entire programming schedules all day, every day for at least four years.[50]

Plaintiffs' trademarks are streamed through defendants' TVpads along with plaintiffs' programming.[51]  Not only do defendants stream plaintiffs' copyrighted programming and trademarks, but they use plaintiffs' trademarks in advertising and promotional materials such as posts to their Facebook page and blog.[52]  They display plaintiffs' trademarks and assert that they have "exclusive & authorized live content[ ]" to solicit investors.[53]

## C.   Requested Injunctive Relief

Plaintiff's requested injunctive relief is summarized as follows.  Plaintiffs seek the court's injunction of "[d]efendants, and all of their parents, subsidiaries, affiliates, officers, agents, servants and employees, and all those persons or entities acting in active concert or participation with Defendants" from:

"a.   Distributing, selling, advertising, marketing or promoting any TVpad device;

b.   Transmitting, retransmitting, assisting in the transmission of . . . hosting or providing unauthorized access to . . . Plaintiffs' Copyrighted Programming;

c.   Authorizing, hosting, reproducing, downloading, selling or otherwise distributing the Infringing Tvpad Apps . . . ;

---

[48]Complaint, ¶ 52, 64.

[49]See *id.*, Exh. A-Exh. D (table listing numerous registered works and their accompanying copyright registrations).

[50]Braak DJ Decl., ¶¶ 12-14; Tsang DJ Decl. ¶¶ 5-15.

[51]Weil PI Decl., ¶¶ 14-40, 41; Injunction Compendium, Volume III, Exh. 20.

[52]*Id.*; Complaint, ¶¶ 6–8, 47–49, 50–53, 138-39.

[53]Weil PI Decl., ¶¶ 28-50; Injunction Compendium, Volume II, Exhs. 8, 13-17; *id.*, Volume III, Exhs. 18-29; *id.*, Volume IV, Exh. 33.

d.    Creating or providing assistance to others who wish to create an Infringing Tvpad App;

e.    Advertising, displaying, marketing or otherwise promoting any of the Infringing Tvpad Apps . . .

[f].    Distributing, selling, advertising, marketing or promoting any Comparable System that contains, connects to, offers for download, transmits, assists in the transmission of . . . Plaintiffs' Copyrighted Programming without permission;

[g].    Providing or controlling servers which contain any of Plaintiffs' Copyrighted Programming; and

[h].    Assisting with end-user reproductions or transmissions of any of Plaintiffs' Copyrighted Programing through a tracker server, or any other server or software that assists users or devices in locating, identifying or obtaining reproductions or transmission of any of Plaintiffs' Copyrighted Programming . . . \

[I].    Advertising or promoting unauthorized access to or the availability of Plaintiffs' Copyrighted Programming;

[j].    Encouraging or soliciting others to transmit or reproduce Plaintiffs' Copyrighted Programming."[54]

Plaintiffs also wish the court to enjoin HYIT and CNT from entering "into any agreement or transaction whatsoever to sell, lease, license, assign, convey, distribute, loan, encumber, pledge or otherwise transfer . . . any part of the system, software, source code, data file, other technology, domain names, trademarks, brands, or files used in connection with the Tvpad Device, Infringing Tvpad Apps or any Comparable System."[55]  They seek the court to require HYIT and CNT to "identify to Plaintiffs all domain names and IP addresses and the physical locations of all servers owned, leased or operated by any of the Enjoined Parties that are used in connection with the [enjoined] activities."[56]  They also

---

[54][Proposed] Order Granting Default Judgment and Permanent Injunction ("Proposed Order"), Docket No. 176-1 (Feb. 12, 2016) at 3-7.

[55]*Id.* at 7-8.

[56]*Id.* at 8.

11

move for permanent in junction of HYIT and CNT engaging in any of the following activities:

     "a.    Using the CCTV or TVB Marks . . . in connection with broadcasting or entertainment services, or related goods or services, not originating from or authorized by Plaintiffs;

     b.    Using the CCTV or TVB Marks . . . in any manner likely to cause confusion . . . ;

     c.    Representing in any manner . . . that goods and services provided by the Enjoined Parties are licensed, sponsored, approved, authorized by, or originate from Plaintiffs . . . ."[57]

Plaintiffs further wish the court to enjoin certain activities of third parties, as they relate to CNT and HYIT's infringement. They wish the court to prevent "[t]hird parties who provide sales, distribution, shipping or logistics services for the Tvpad Device, including but not limited to the third party distributors identified in [Plaintiffs'] Exhibit D hereto, and who receive actual notice of this Order . . . from distributing, selling, advertising, marketing or promoting any Tvpad Device. They seek injunction of "[t]hird parties providing web, server and file hosting services, data center and colocation services, and primary and backup storage services . . . used in connection with [HYIT and CNT's enjoined activities] . . . from providing such hosting services to (I) any Enjoined Parties in connection with the [enjoined activities]; (ii) any servicer, IP address, domain name or website used in conjunction with the Tvpad Device, Infringing Tvpad Apps or any Comparable System; and (iii) the Tvpad Websites."[58]

Plaintiffs request that the court permanently enjoin "[t]hird parties providing services used in connection with the [enjoined activities], including but not limited to back-end service providers, service providers routing traffic or providing bandwidth, content delivery networks and domain name server systems . . ., search-based online advertising services . . ., domain name registration privacy protection services, providers of social media services . . ., user generated and online content services . . . and data security services . . . ., who receive actual notice of this Order . . . from providing such services to (I) any Enjoined Parties in conjunction with any of the [enjoined activities]; (ii) any server, IP address, domain name or website used in conjunction with the Tvpad Device, Infringing Tvpad Apps or any Comparable

---

[57] *Id.* at 9.

[58] *Id.*

12

1  System; and (iii) the Tvpad Websites."[59]

2      Finally, plaintiffs wish the court to enjoin domain name registries listing the domain names

3  itvpad.com, mtvpad.com or tvpadfans.com, or any domain names used in connection with the enjoined

4  activities, requiring them to (1) temporarily disable these domain names and make them inactive and

5  non-transferable; and (2) transfer these domain names to Plaintiffs' ownership and control.[60]

## II. DISCUSSION

### A.   Standard Governing Motions for Entry of Permanent Injunction

8      It is well established that "[c]ourts . . . issue injunctions as part of default judgments." *Sony*

9  *Music Entertainment, Inc. v. Elias*, No. CV03-6387DT(RCX), 2004 WL 141959, *4 (C.D. Cal. Jan. 20,

10  2004); see *Priority Records, LLC v. Tabora*, No. C 07-1023 PJH, 2007 WL 2517312, *2 (N.D. Cal. Aug.

11  31, 2007) (granting permanent injunctive relief in a copyright case as part of a default judgment); *Elektra*

12  *Entertainment Group v. Bryant*, No. CV 03-6381GAF(JTLX), 2004 WL 783123, *6 (C.D. Cal. Feb. 13,

13  2004) (granting a permanent injunction as part of a default judgment in a copyright infringement case,

14  and stating that "[p]laintiffs in this case need not show irreparable harm, as the default against

15  [d]efendants satisfies the element of success on the merits"). See also 15 U.S.C. § 1116(a) (vesting the

16  district court with the "power to grant injunctions, according to principles of equity and upon such terms

17  as the court may deem reasonable, to prevent the violation of any right" of a trademark owner).

18      A plaintiff seeking a permanent injunction must satisfy a four-factor test before the court can

19  grant relief. See *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392-93 (2006) (explaining that the

20  Supreme Court has "consistently rejected invitations to replace traditional equitable considerations with

21  a rule that an injunction automatically follows a determination that a copyright has been infringed"); see

22  also *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1137-38 (9th Cir. 2006) (applying

23  "traditional equitable principles" under *eBay* in deciding whether entry of a permanent injunction in a

24  trademark case was appropriate).   Specifically, a plaintiff seeking a permanent injunction must

25  demonstrate (1) that it has suffered irreparable injury; (2) that there is no adequate remedy at law; (3)

---

27  [59]*Id.* at 9-10.

28  [60]*Id.* at 10.

13

1  "that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is

2  warranted"; and (4) that it is the public's interest to issue the injunction. *eBay*, 547 U.S. at 391.

3        "[T]he decision whether to grant or deny injunctive relief rests within the equitable discretion

4  of the district courts." *eBay*, 547 U.S. at 394. Any injunction entered "must be narrowly tailored

5  . . . to remedy only the specific harms shown by the plaintiffs rather than to enjoin all possible

6  breaches of the law." *Inconix, Inc. v. Tokuda* , 457 F.Supp.2d 969, 998 (N.D. Cal. 2006) (quoting

7  *Price v. City of Stockton* , 390 F.3d 1105, 1117 (9th Cir. 2004)).

8        **B.**    **Whether Plaintiffs are Entitled to an Injunction against CNT and HYIT**

9            **1.**    **Whether Plaintiffs Have Established Irreparable Injury and the Absence of**

10                  **an Adequate Remedy at Law**

11        Irreparable harm is "that for which compensatory damages are unsuitable."

12  *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F.Supp.2d 1197, 1210 (C.D. Cal. 2007)

13  (quoting *Wildmon v. Berwick Universal Pictures*, 983 F.2d 21, 24 (5th Cir. 1992)).

14        The injury caused by the presence of trademark or copyright infringing products in the market

15  – such as lost profits and customers, as well as damage to goodwill and business reputation – will often

16  constitute irreparable injury. See, e.g., *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180-81

17  (9th Cir. 1088)("Injunctive relief is the remedy of choice for trademark and unfair competition cases,

18  since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement.

19  It is the remedy provided by federal and state trademark infringement statutes").; Microsoft Corp. v.

20  Atek 3000 Computer Inc., No. 06 CV 6403(SLT)(SMG), 2008 WL 2884761, *5 (E.D.N.Y. July 23,

21  2008) (concluding that plaintiff had shown irreparable injury where it had "established that defendant

22  committed copyright and trademark infringement, and . . . there [was] no reason to conclude that

23  defendant ha[d] or [would] cease its infringing acts because it continued infringing plaintiff's copyrights

24  and trademarks despite being notified of its infringement").

25        Plaintiffs have adequately shown that they would suffer irreparable harm absent an injunction.

26  Despite the preliminary injunction and contempt order issued by this court, CNT and HYIT have

27  continued to infringe on plaintiffs' copyrights and use plaintiffs' marks in connection with their

28  products. Such conduct stymies plaintiffs' rights as copyright and trademark owners, and damages the

1   value of their marks. Plaintiffs have therefore established that they will suffer irreparable injury absent

2   the entry of an injunction barring future infringement. See, e.g., *MAI Sys. Corp. v. Peak Computer,*

3   *Inc.*, 991 F.2d 511, 520 (9th Cir. 1993) ("As a general rule, a permanent injunction will be granted

4   when liability has been established and there is a threat of continuing violations"), overruled on other

5   grounds in *eBay* as discussed in *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 616 F.Supp.2d 958, 973

6   (D. Ariz. 2009); *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F.Supp.2d 1072, 1084 (C.D. Cal. 2012) ("If

7   an injunction were not granted, Plaintiff would suffer irreparable injury from the ongoing damages to

8   its goodwill and diversion of customers to counterfeit services"); *Microsoft Corp. v. Atek 3000 Computer*

9   *Inc.*, No. 06 CV 6403(SLT)(SMG), 2008 WL 2884761, *5 (E.D.N.Y. July 23, 2008) ("[P]laintiff has

10   demonstrated that it has no adequate remedy at law since 'there is no assurance in the record against

11   defendant's continued violation of plaintiff's copyrights' and trademarks," quoting *Warner Brothers*

12   *Entertainment, Inc. v. Carsagno*, No. 06 CV 2676 NG (RLM), 2007 WL 1655666, *6 (E.D.N.Y. June

13   4, 2007)).

14           **2.        Whether the Balance of Hardships Favors Entry of a Permanent Injunction**

15           "In each case, a court must balance the competing claims of injury and must consider the

16   effect on each party of the granting or withholding of the requested relief." *Amoco Production Co.*

17   *v. Village of Gambell, Alaska*, 480 U.S. 531, 542 (1987).  Defendants have not responded to the

18   preliminary injunction, contempt order, entry of default judgment, nor the present application.  As

19   such, the court is unaware of any undue hardship CNT and HYIT will sustain as a result of the

20   proposed injunction order.  Plaintiffs should not be required to stand by as defendants continue

21   infringing their copyrights and trademarks in the absence of any evidence of undue hardship on the

22   part of defendants. See *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F.Supp.2d 1072, 1084 (C.D. Cal.

23   2012) ("[T]he balance of hardships favors Plaintiff because without an injunction, Plaintiff will lose

24   profits and goodwill, while an injunction will only proscribe Defendants' infringing activities");

25   *Grokster*, 518 F.Supp.2d at 1221 ("Because StreamCast is likely to induce further infringements

26   without an injunction, the balance of hardships necessarily shifts further in Plaintiffs' favor").

27   Accordingly, the balance of hardships favors entry of a permanent injunction.

28           **3.        Whether the Public Interest Favors Entry of a Permanent Injunction**

1  "In exercising their sound discretion, courts of equity should pay particular regard for the
2  public consequences in employing the extraordinary remedy of injunction." *Weinberger v.*
3  *Romero-Barcelo*, 456 U.S. 305, 312 (1982). In trademark infringement cases, the public interest is
4  "the right of the public not to be deceived or confused." *AT&T Corp. v. Vision One Sec. Sys.*, No. 95-
5  0565-IEG (BTM), 1995 WL 476251, *7 (S.D. Cal. July 27, 1995) (citation omitted). "Where
6  defendant's concurrent use of plaintiff's trademark without authorization is likely to cause confusion,
7  the public interest is damaged by the defendant's use." *Id.*; see also *Internet Specialties West, Inc. v.*
8  *Milon–DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 n. 5 (9th Cir. 2009) ("The public has an interest in
9  avoiding confusion between two companies' products"); *Atek 3000 Computer Inc.*, 2008 WL 2884761
10  at *5-6 ("[T]he public interest lies in the enforcement of the principles recognized by Congress in
11  creating the [Copyright and Lanham] Acts, especially the prevention of consumer confusion"). This
12  factor, therefore, also favors entry of a permanent injunction.

13        **4.**   **Scope of the Proposed Injunction**

14  Finally, the court notes that "an injunction must be narrowly tailored . . . to remedy only the
15  specific harms shown by the plaintiffs rather than to enjoin all possible breaches of the law."
16  *Inconix, Inc.*, 457 F.Supp.2d at 998 (quoting *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir.
17  2004)). The terms of the injunction plaintiffs have proposed, as modified and attached to the present
18  order, are narrowly tailored to prevent defendants from continuing to infringe plaintiffs' copyrights
19  and trademarks. The court will therefore enter an injunction according to these terms.

20                                   **III. CONCLUSION**

21  For the reasons stated, the court grants plaintiffs' application for a permanent injunction. If
22  plaintiffs wish to recover attorneys' fees, the court directs plaintiffs to file a declaration stating the hourly
23  rates of the attorneys who have worked on this matter and the number of hours expended litigating
24  matters related to the liability of CNT and HYIT. This declaration must be filed no later than **April 15,**
25  **2016.**

26
27  DATED: March 31, 2016

                                     STEPHEN V. WILSON
28                                UNITED STATES DISTRICT JUDGE