CARLA A. McCAULEY (State Bar No. 223910)
    carlamccauley@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California  90017-2566
Tel.: (213) 633-6800  Fax: (213) 633-6899

ROBERT D. BALIN (*pro hac vice*)
    robbalin@dwt.com
LACY H. KOONCE, III (*pro hac vice*)
    lancekoonce@dwt.com
SAMUEL BAYARD (*pro hac vice*)
    samuelbayard@dwt.com
GEORGE WUKOSON (*pro hac vice*)
    georgewukoson@dwt.com
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas
New York, New York  10020
Tel.: (212) 489-8230  Fax: (212) 489-8340
ATTORNEYS FOR PLAINTIFFS

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

CHINA CENTRAL TELEVISION, a China company; CHINA INTERNATIONAL COMMUNICATIONS CO., LTD., a China company; TVB HOLDINGS (USA), INC., a California corporation; and DISH NETWORK L.L.C., a Colorado corporation,

    Plaintiffs,

    vs.

CREATE NEW TECHNOLOGY (HK) LIMITED, a Hong Kong company; HUA YANG INTERNATIONAL TECHNOLOGY LIMITED, a Hong Kong company; SHENZHEN GREATVISION NETWORK TECHNOLOGY CO. LTD., a China company; CLUB TVPAD, INC., a California corporation; BENNETT WONG, an individual, ASHA MEDIA GROUP INC. d/b/a TVPAD.COM, a Florida corporation; AMIT BHALLA, an individual; NEWTVPAD LTD. COMPANY d/b/a NEWTVPAD.COM a/k/a TVPAD USA, a Texas corporation; LIANGZHONG ZHOU, an individual; HONGHUI CHEN d/b/a E-DIGITAL, an individual; JOHN DOE 1 d/b/a BETV; JOHN DOE 2 d/b/a YUE HAI; JOHN DOE 3 d/b/a 516; JOHN DOE 4 d/b/a HITV; JOHN DOE 5 d/b/a GANG YUE; JOHN DOE 6 d/b/a SPORT ONLINE; JOHN DOE 7 d/b/a GANG TAI WU XIA; and JOHN DOES 8-10,

    Defendants.

Case No.
**CV 15-1869 SVW (AJWx)**

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT ASHA MEDIA GROUP, INC.; MEMORANDUM OF POINTS AND AUTHORITIES**

[[Proposed] Order; Compendium of Evidence Vols. 1 through 4 concurrently submitted]

Date:  November 7, 2016
Time:  1:30 p.m.
Courtroom:   6
Judge:       Hon. Steven V. Wilson

Complaint Filed:  March 13, 2015

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................. 1

II.    ARGUMENT ...................................................................... 2

       A.    Legal Standard Governing Default Judgment Motions ...................... 2

       B.    Plaintiffs Have Satisfied All Procedural Requirements for Obtaining a Default Judgment Against Asha Media ........................... 2

       C.    The *Eitel* Factors Favor Entry of Default Judgment in This Case. ......................................................................... 4

             1.    Plaintiffs Will Be Prejudiced Without Entry of Default Judgment. ................................................... 4

             2.    Plaintiffs' Claims Are Meritorious and The Complaint Sufficiently Pled. ...................................... 5

                   a.    Asha Media Has Engaged in Secondary Copyright Infringement ........................................... 5

                   b.    Asha Media Violated the Lanham Act and Infringed the TVB and CCTV Trademarks. .................. 8

                   c.    Asha Media's Conduct Constitutes a Violation of Business & Professions Code § 17200. ............ 10

             3.    The Damages Sought by Plaintiffs Are Consistent with Asha Media's Willful Misconduct. ...................... 11

             4.    There Is No Possibility of Dispute Regarding Material Facts. ...................................................... 12

             5.    There Is No Possibility of Excusable Neglect. ......... 13

             6.    Policy For Deciding Case On the Merits. ............... 13

       D.    Plaintiffs Are Entitled To All of Their Requested Relief. ............... 14

             1.    Plaintiffs' Request for Statutory Damages For Willful Copyright Infringement Is Reasonable ............ 14

                   a.    Willfulness ........................................ 15

                   b.    Number of Registered Works Infringed ............ 16

                   c.    The Amount Requested Is Consistent with Precedent .. 17

                   d.    Plausible Relationship to Actual Damages ............ 18

                         (1)    Asha Media's TVpad Profits ............... 19

i

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

|  | (2) | Lost Subscription Revenue.................................. 20 |

2.   Plaintiffs' Request for Damages of $2,145,234 for Trademark Infringement Is Reasonable.................................. 21

3.   Plaintiffs Are Entitled to Injunctive Relief. ........................... 22

4.   Attorneys' Fees and Costs........................................................ 24

5.   Post-Judgment Interest ........................................................... 24

III.   CONCLUSION............................................................................................. 24

MOTION FOR DEFAULT JUDGMENT
DWT 29912059v4 0094038-000021

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

Page

**Cases**

*A & M Records, Inc. v. Napster, Inc.*,
 239 F.3d 1004 (9th Cir. 2001) ................................................................. 6

*ABC, Inc. v. Aereo, Inc.*,
 134 S. Ct. 2498 (2014) ........................................................................... 6

*Acad. of Motion Picture Arts & Scis. v. Creative House Prom's., Inc.*,
 944 F.2d 1446 (9th Cir. 1991) .............................................................. 10

*Apple Computer, Inc. v. Franklin Computer Corp.*,
 714 F.2d 1240 (3d Cir. 1983)............................................................... 23

*Broadcast Music, Inc. v. JMN Restaurant Management Corp.*,
 Case 14-cv-01190 JD, 2014 WL 5106421 (N.D. Cal. Oct. 10, 2014)................... 18

*Broadcast Music, Inc. v. R Bar of Manhattan*,
 919 F. Supp. 656 (S.D.N.Y. 1996) ....................................................... 18

*Century 21 Real Estate Corp. v. Sandlin*,
 846 F.2d 1175 (9th Cir. 1988) .............................................................. 22

*Chi-Boy Music v. Charlie Club, Inc.*,
 930 F.2d 1224 (7th Cir. 1991) .............................................................. 14

*Columbia Pictures Indus., Inc. v. Fung*,
 710 F.3d 1020 (9th Cir. 2013) ................................................................ 7

*Columbia Pictures Television, Inc. v. Krypton Broad.*,
 259 F.3d 1186 (9th Cir. 2001) ......................................................... 14, 17

*Controversy Music v. Shiferaw*,
 No. C03-5254 MJJ, 2003 WL 22048519 (N.D. Cal. July 7, 2003)............... 14, 18

*Craigslist, Inc. v. Kerbel*,
 2012 U.S. Dist. LEXIS 108573 (N.D. Cal. Aug. 2, 2012) .................................. 21

*Derek Andrew, Inc. v. Poof Apparel Corp.*,
 528 F.3d 696 (9th Cir. 2008) ................................................................ 15

iii

MOTION FOR DEFAULT JUDGMENT
DWT 29912059v4 0094038-000021

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*DFSB Kollective Co. v. Tran*,
  11CV1049 LHK, 2011 WL 6730678 (N.D. Cal. Dec. 21, 2011) ......................... 18

*DISH Network L.L.C. v. TV Net Solutions, LLC*,
  12-CV-1629, 2014 U.S. Dist. LEXIS 165120 (M.D. Fla. Nov. 25,
  2014) ........................................................................................................................... 7

*Eitel v. McCool*,
  782 F.2d 1470 (9th Cir. 1986) ..................................................................*passim*

*Elektra Entm't Group Inc. v. Bryant*,
  No. CV 03-6381 GAF, 2004 WL 783123 (C.D. Cal. Feb. 13, 2004) .............. 5, 13

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
  76 F.3d 259 (9th Cir. 1996) ..................................................................................... 7

*Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*,
  886 F.2d 1545 (9th Cir. 1989) ............................................................................... 14

*Geddes v. United Fin. Group*,
  559 F.2d 557 (9th Cir. 1977) ............................................................................... 2, 5

*Harris v. Emus Records Corp.*,
  734 F.2d 1329 (9th Cir. 1984) ............................................................................... 18

*Int'l Korwin Corp. v. Kowalczyk*,
  665 F. Supp. 652 (N.D. Ill. 1987), *aff'd*, 855 F.2d 375 (7th Cir. 1988) ............... 15

*IO Grp., Inc. v. Antelope Media, LLC*,
  No. C-08-4050 MMC, 2010 WL 2198707 (N.D. Cal. May 28, 2010)........... 17, 22

*Jackson v. Sturkie*,
  255 F. Supp. 2d 1096 (N.D. Cal. 2003) ................................................................ 14

*Lamb v. Starks*,
  1997 U.S. Dist. LEXIS 11369 (N.D. Cal. Jul. 2, 1997)........................................ 18

*Lava Records, LLC v. Ates*,
  Civ. A-05-1314, 2006 WL 1914166 (W.D. La. July 11, 2006) ........................... 23

*Lindy Pen Co. v. Bic Pen Corp.*,
  982 F.2d 1400 (9th Cir. 1993) ............................................................................... 24

*Louis Vuitton Malletier SA v. Akanoc Solutions*,
  658 F.3d 936 (9th Cir. 2011) ................................................................................. 17

iv

MOTION FOR DEFAULT JUDGMENT
DWT 29912059v4 0094038-000021

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Lucasfilm Ltd. v. Media Market Gp., Ltd.*,
   182 F. Supp. 2d 897 (N.D. Cal. 2002) ................................................... 22

*MAI Systems Corp. v. Peak Computer, Inc.*,
   991 F.2d 511 (9th Cir. 1993) ....................................................... 22, 23

*Marcelos v. Dominguez*,
   No. C 08-00056 WHA, 2009 WL 230033 (N.D. Cal. Jan. 29, 2009) ................. 13

*Nintendo of Am., Inc. v. Dragon Pac. Int'l*,
   40 F.3d 1007 (9th Cir. 1994) ........................................................ 21

*O'Reilly v. Valley Entertainment, Inc.*,
   C-09-03580-CW, 2011 U.S. Dist. LEXIS 15826 (N.D. Cal. 2011) ...................... 3

*Odnil Music Ltd. V. Katharsis LLC*,
   No. CIV S-05-0545 WBSJFM, 2006 SL 2545869 (E.D. Cal. July 21,
   2006) .............................................................................. 14

*Optimal Pets, Inc. v. Nutri-Vet, LLC*,
   877 F. Supp. 2d 953 (C.D. Cal. 2012) ................................................. 9

*Pearson Educ., Inc. v. Wong*,
   No. 09-1889 SC, 2010 WL 476685 (N.D. Cal. Feb. 3, 2010) .......................... 17

*Peer Intern. Corp. v. Pausa Records, Inc.*,
   909 F.2d 1332 (9th Cir 1990) ........................................................ 17

*PepsiCo, Inc. v. Cal. Sec. Cans*,
   238 F. Supp. 2d 1172 (C.D. Cal. 2002) ............................................ 5, 11

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007) ...................................................... 6, 7

*Philip Morris USA v. Castworld Prods., Inc.*,
   219 F.R.D. 494 (C.D. Cal. 2003) ................................................... 4, 12

*Sailor Music v. IML Corp.*,
   867 F. Supp. 565 (E.D. Mich. 1994) .................................................. 18

*Schwarzenegger v. Fred Marin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) .......................................................... 3

*Sennheiser Elect. Corp. v. Eichler*,
   CV 12-10809 MMM, 2013 WL 3811775 (C.D. Cal. July 19, 2013) ........... 2, 5, 18

v

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Shanghai Automation Instrument Co., Ltd. v. Kuei*,
   194 F. Supp. 2d 995 (N.D. Cal. 2001) ................................................................. 13

*Taylor Made Golf Co., Inc. v. Carsten Sports Ltd.*,
   175 F.R.D. 658 (S.D. Cal. 1997) ........................................................................ 24

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
   505 U.S. 763 (1992) ............................................................................................ 8

*Warner Bros. Entertainment Inc. v. Caridi*,
   346 F. Supp. 2d 1068 (C.D. Cal. 2004) ................................................. 13, 15, 17

*Wecosign, Inc. v. IFG Holdings, Inc.*,
   845 F. Supp. 2d 1072 (C.D. Cal. 2012) ....................................................... 19, 21

**Statutes**

15 U.S.C.
   § 1116(a) ............................................................................................................. 22
   § 1117(a) ...................................................................................................... 21, 24
   § 1121(a) ............................................................................................................... 4
   § 1125(a) ............................................................................................................... 8
   § 1125(a)(1)(B) ............................................................................................... 9, 10

17 U.S.C.
   § 101 ...................................................................................................................... 6
   § 106(4) ................................................................................................................. 6
   § 411(a) ................................................................................................................. 6
   § 502(a) ............................................................................................................... 22
   § 504(b) ............................................................................................................... 19
   § 504(c)(1)-(2) .................................................................................................... 14
   § 505 ................................................................................................................... 24

28 U.S.C.
   § 1331 .................................................................................................................... 4
   § 1338 .................................................................................................................... 4
   § 1338(b) ............................................................................................................... 4
   § 1367 .................................................................................................................... 4
   § 1961(a) ............................................................................................................. 24

50 App. U.S.C. § 521 ................................................................................................ 3

California Business and Professions Code

§ 14330 ................................................................................................................22
§ 14340 ................................................................................................................22
§ 17200 ..............................................................................................5, 10, 11, 22

**Rules**

Federal Rule of Civil Procedure 55 ........................................................................13

Local Rule 54 ........................................................................................................24

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on November 7, 2016 at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 6 of the Honorable Steven V. Wilson, located at 312 N. Spring Street, Los Angeles, California, Plaintiffs China Central Television, China International Communications Co., Ltd., TVB Holdings (USA), Inc., and DISH Network L.L.C. (collectively "Plaintiffs") will and hereby do move this Court pursuant to Federal Rule of Civil Procedure 55 for Default Judgment against Defendant Asha Media Group, Inc. ("Asha Media").

As set forth in the accompanying declarations and memorandum of points and authorities, Plaintiffs are entitled to entry of default judgment against Asha Media as it was properly served with the Complaint in this action, after which the Court struck Asha Media's Answer, and default has been entered against Asha Media. Accordingly, Plaintiffs seek judgment in their favor and against Asha Media for statutory damages in the amount of $6,885,000 on Plaintiffs' copyright claims, and $2,145,234 in damages on Plaintiffs' trademark claims, and for costs, attorneys' fees and post-judgment interest.  In addition, Plaintiffs seek an Order permanently enjoining and restraining Asha Media, its agents, servants, employees and all persons acting in concert with it, from infringing or fostering others to infringe Plaintiffs' Copyrighted Programming or the CCTV or TVB Marks, as more fully set forth in Plaintiffs' concurrently lodged Proposed Order Granting Plaintiffs' Motion for Default Judgment and Permanent Injunction.   Finally, Plaintiffs seek attorneys' fees in the amount of $115,625, costs and post-judgment interest.

///

///

MOTION FOR DEFAULT JUDGMENT
DWT 29912059v4 0094038-000021

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1    This Motion is based upon this Notice, the Memorandum of Points and

2 Authorities, the Declarations of George P. Wukoson, Carla A. McCauley, Nicholas

3 Braak, Shuk Kuen "Lily" Lau, Samuel P. Tsang, Chunguang Lu and Christopher

4 Kuelling and Exhibits 1 through 6, 53 through 56, 80 through 92, 94 through 95, 98

5 through 99 and 102, and any additional evidence and arguments as may be presented

6 at or before any hearing on this matter.

7    DATED:  September 22, 2016          DAVIS WRIGHT TREMAINE LLP
                                          CARLA A. McCAULEY
8                                         ROBERT D. BALIN (*pro hac vice*)
                                          LACY H. KOONCE, III (*pro hac vice*)
9                                         SAMUEL BAYARD (*pro hac vice*)
                                          GEORGE WUKOSON (*pro hac vice*)
10

11

12                                        By:_____/s/ Carla A. McCauley_____
                                                      Carla A. McCauley
13                                        Attorneys for Plaintiffs
                                          CHINA CENTRAL TELEVISION; CHINA
14                                        INTERNATIONAL COMMUNICATIONS CO.,
                                          LTD.; TVB HOLDINGS (USA), INC.; AND
15                                        DISH NETWORK L.L.C.

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR DEFAULT JUDGMENT
DWT 29912059v4 0094038-000021

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This action arises out of a massive copyright infringement enterprise perpetrated through a set-top television box known as the TVpad—a device that retransmits unauthorized television programming from China to viewers in the United States.  For years, this infringing service has intercepted and delivered to U.S. TVpad users—24 hours per day, seven days a week—virtually every minute of television programming transmitted by Plaintiffs in China across dozens of channels.

As the largest broadcasters of Chinese-language television in mainland China and Hong Kong, respectively, China Central Television ("CCTV") and Television Broadcasts Limited ("TVB") are the primary victims of this rampant and willful infringement.  Plaintiffs CCTV, China International Communications Co., Ltd., TVB Holdings (USA), Inc., and DISH Network L.L.C. (collectively "Plaintiffs") are the legal and beneficial owners of exclusive rights to exploit copyrighted CCTV and TVB television programs in the United States.

The last remaining active defendant in this action—Asha Media Group, Inc. ("Asha Media")—is one of the largest distributors of TVpads in the United States. Asha Media  has committed blatant copyright infringement by (among other things): (a) actively promoting the TVpad device to its customers as a platform for viewing copyrighted television programming from Asia without paying subscription fees; (b) actively encouraging its customers to download infringing applications on the TVpad device (the "Infringing TVpad Apps") to view Plaintiffs' television programming; and (c) providing Infringing TVpad Apps to customers to enable them to watch infringed CCTV and TVB programming.  In addition, Asha Media has committed trademark infringement by using Plaintiffs' trademarks to market and sell TVpad devices.  In total, Asha Media was responsible for selling at least 8,123 TVpads to customers from 2013 to 2015, totaling over $2.145 million in sales.  Asha Media's willful actions have induced the infringement of Plaintiffs' copyrights and

MOTION FOR DEFAULT JUDGMENT
DWT 29912059v4 0094038-000021

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

trademarks over the course of years, causing Plaintiffs severe injury.

After filing an Answer in the action in April 2015, Asha Media's attorneys ultimately withdrew from their representation of Asha Media.  After Asha Media chose not to obtain substitute counsel or otherwise defend the action, the Court ordered its Answer stricken and default entered.  Plaintiffs now come before the Court to request that default judgment be entered against Asha Media.

## II.   ARGUMENT

### A.   Legal Standard Governing Default Judgment Motions.

Upon entry of default, the complaint's factual allegations regarding liability are taken as true and are deemed admitted. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977); *Sennheiser Elect. Corp. v. Eichler*, CV 12-10809 MMM (PLAx), 2013 WL 3811775, at *2 (C.D. Cal. July 19, 2013) ("[T]he factual allegations of the complaint, except those concerning damages, are deemed to have been admitted by the non-responding party" after default). "If the court determines that the allegations in the complaint are sufficient to establish liability, it must then determine the 'amount and character' of the relief that should be awarded." *Id.* [1]

### B.   Plaintiffs Have Satisfied All Procedural Requirements for Obtaining a Default Judgment Against Asha Media.

Plaintiffs served the Summons and Complaint on Asha Media on March 19, 2015.  Dkt. No. 42.  Asha Media initially appeared, filing an answer on April 23, 2015.  Dkt. No. 58.  Thereafter on August 28, 2015, Asha Media filed a petition for

---

[1] Although nothing beyond the allegations in the Complaint is required to establish liability under the default judgment standard, Plaintiffs also have submitted for the Court's consideration substantial evidence of Asha Media's unlawful activity that Plaintiffs filed in support of their Motion for Preliminary Injunction against Asha Media and other defendants.  *See* Declarations of Sam Tsang ("Tsang Decl."), Nicholas Braak ("Braak Decl."), Shuk Kuen "Lily" Lau ("Lau Decl.") and Chunguang Lu ("Lu Decl."), concurrently submitted.  In addition, Plaintiffs also submit additional evidence of liability gathered through discovery in this action before Asha Media's default, as well as through the pending bankruptcy proceeding initiated by Amit Bhalla, Asha Media's President.  *See* Declaration of George P. Wukoson ("Wukoson Decl.") Exs. 2 and 3.

MOTION FOR DEFAULT JUDGMENT
DWT 29912059v4 0094038-000021

2

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

liquidation under Florida's state liquidation statute.  Wukoson Decl. ¶ 12.  Asha Media's counsel ultimately requested leave to withdraw as counsel of record in this action, which this Court granted.  *Id*.  On May 19, 2016, the Court ordered Asha Media to locate substitute counsel or have its Answer stricken and default entered.  Dkt. No. 191.  Asha Media failed to secure alternate counsel, and on July 8, 2016, the Court set aside Asha Media's Answer.  Dkt. No. 195.  The Clerk thereafter entered default against Asha Media on July 8, 2016.  Dkt. No. 196.  Asha Media is not an infant or incompetent, nor is it a military service member, or otherwise entitled to the exceptions found in the Servicemembers Civil Relief Act (50 App. U.S.C. § 521).  Wukoson Decl.  ¶ 13.

This Court has jurisdiction to enter judgment in this matter.  Taking the Complaint's well-pleaded allegations as true, there is personal jurisdiction over Asha Media because Plaintiffs have alleged that Asha Media has purposefully consummated transactions with residents of the forum, and otherwise purposefully availed itself of the forum by conducting activities here; Plaintiffs' claims arise from Asha Media's forum-related activities; and the exercise of jurisdiction is reasonable.  Complaint ¶¶ 38, 177, 193; *see Schwarzenegger v. Fred Marin Motor Co*., 374 F.3d 797, 800-01 (9th Cir. 2004); *O'Reilly v. Valley Entertainment, Inc*., C-09-03580-CW (DMR), 2011 U.S. Dist. LEXIS 15826, at *9-*13 (N.D. Cal. 2011).  Specifically, Plaintiffs allege that Asha Media has engaged in copyright and trademark infringement through intentional acts.  Complaint ¶¶ 152-154.  Plaintiffs also allege that Asha Media transmitted, supplied, shipped, advertised and marketed both the TVpad Service and TVpad devices to customers and business partners in the State of California and this District, causing injury to Plaintiffs in this State and this District.  Complaint ¶¶ 175, 177, 193.  Plaintiffs further allege that Asha Media has a warehouse in Bloomington, California from which it ships TVpad devices to customers.  Complaint ¶¶ 188, 189; *see also* Wukoson Decl. Ex. 3 at 56:1-9; Braak Decl. ¶¶ 68-72 and Exs. 53 and 55.  Plaintiff TVB (USA) is headquartered in this

MOTION FOR DEFAULT JUDGMENT
DWT 29912059v4 0094038-000021

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

District and thus is directly harmed in the location of its principal place of business. Complaint ¶ 17.

The Court also has subject matter jurisdiction: (i) pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121(a) because this action arises under acts of Congress relating to copyrights and trademarks; and (ii) over the claims asserted under California law because they are related to Plaintiffs' claims for copyright and trademark infringement and therefore fall within this Court's supplemental jurisdiction under 28 U.S.C. §§ 1338(b) and 1367.  Complaint ¶ 37.  Thus, Plaintiffs have satisfied all procedural requirements for obtaining a default judgment.

## C.   The *Eitel* Factors Favor Entry of Default Judgment in This Case.

In the Ninth Circuit, a court's decision to grant default judgment is guided by the following factors:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  While the decision to grant a default judgment is left to the sound discretion of the Court, "default judgments are more often granted than denied."  *Philip Morris USA v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003).  Weighing the seven *Eitel* factors here compels the issuance of a default judgment in this case.

### 1.   Plaintiffs Will Be Prejudiced Without Entry of Default Judgment.

Prejudice exists where, absent entry of a default judgment, a plaintiff would lose the right to judicial resolution of its claims and be deprived of other recourse to

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

recovery. *Elektra Entm't Group Inc. v. Bryant*, No. CV 03-6381 GAF (JTLX), 2004 WL 783123, at *3 (C.D. Cal. Feb. 13, 2004). Here, without a default judgment, Plaintiffs plainly will be deprived of the right to judicial relief from Asha Media's egregious acts of copyright and trademark infringement, unfair competition, and violation of California Business & Professions Code Section 17200 ("Section 17200"), and would be left without recovery for the injuries Plaintiffs have sustained from Asha Media's unlawful conduct. Thus, this factor favors Plaintiffs.

### 2. Plaintiffs' Claims Are Meritorious and The Complaint Sufficiently Pled.

The second and third *Eitel* factors are commonly analyzed together and "require that a plaintiff state a claim on which the [plaintiff] may recover." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (internal citations omitted). Because, upon entry of default, the Complaint's factual allegations regarding liability are taken as true, Asha Media's default serves as an admission of Plaintiffs' well-pled allegations of fact. *See Geddes*, 559 F.2d at 560; *Sennheiser*, 2013 WL 3811775 at *2. Plaintiffs' detailed, 74-page Complaint pleads facts sufficient, as a matter of law, to establish that Asha Media is liable for copyright and trademark infringement, unfair competition, and violation of Section 17200. In addition, Plaintiffs' detailed evidence in support of their successful Motion for Preliminary Injunction further supports Asha Media's liability, as do the admissions against interest made by Asha Media's President and sole owner in recent deposition testimony.

### a. Asha Media Has Engaged in Secondary Copyright Infringement.

The third[2] claim for relief in Plaintiffs' Complaint is for secondary copyright infringement against Asha Media under theories of contributory infringement and

---

[2] Plaintiffs' first and second claims for relief are against other defendants against whom Plaintiffs have secured a default judgment.

MOTION FOR DEFAULT JUDGMENT
DWT 29912059v4 0094038-000021

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

vicarious liability.  For all theories of secondary liability, a plaintiff "must establish that there has been direct infringement [of plaintiff's work] by third parties," *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007), which, in turn, requires a showing of (1) copyright ownership and (2) violation of an exclusive interest under the Copyright Act. *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001).

As set forth in the Complaint, CCTV holds U.S. copyright registrations for various television programs. Complaint ¶ 41, Exs. A-B (attaching certificates of registration); *see also* Lu Decl. ¶ 25 and Ex. 94.  Similarly, TVB, through its subsidiaries, has secured U.S. copyright registrations for various television programs and episodes. Complaint ¶ 56, Exs. C-D (attaching certificates of registration); *see also* Tsang Decl. ¶¶ 25-27 and Ex. 92.  Collectively, these CCTV and TVB registered programs are called "Plaintiffs' Registered Programs" for purposes of this motion. Plaintiffs also allege that, since CCTV's and TVB's television programs are foreign works, registration with the United States Copyright Office is not a prerequisite to filing a copyright infringement action with respect to them.  17 U.S.C. §§ 101, 411(a). Complaint ¶¶ 42, 57, 234.  Plaintiffs further allege that they are the legal and/or beneficial owners of exclusive U.S. rights to CCTV's and TVB's television programs and broadcasts, including but not limited to Plaintiffs' Registered Programs. Complaint ¶¶ 232, 235; *see also* Tsang Decl. ¶¶ 5-12; Lu Decl. ¶¶ 3-6, 9-13.  In short, the Complaint and copyright registration certificates submitted to this Court clearly establish that Plaintiffs are the owners of the copyrighted works at issue in this action.

Plaintiffs also have established that third parties have directly infringed Plaintiffs' works, including TVpad users who retransmit Plaintiffs' copyrighted works to other TVpad users through a peer-to-peer network, thereby infringing Plaintiffs' exclusive right under Section 106(4) to publicly perform their copyrighted works.  Complaint ¶¶ 106, 111-117, 121, 246-247; *see ABC, Inc. v. Aereo, Inc.*, 134

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

S. Ct. 2498, 2506 (2014) ("[T]he concep[t] of public performance . . . cover[s] not only the initial rendition or showing, but also any further act by which that rendition or showing is transmitted or communicated to the public."); *DISH Network L.L.C. v. TV Net Solutions, LLC*, 12-CV-1629, 2014 U.S. Dist. LEXIS 165120, at *13-*14 (M.D. Fla. Nov. 25, 2014) (retransmission of Arabic television channels over the Internet into the United States infringed DISH's public-performance rights).

To prevail on their contributory copyright infringement claim, Plaintiffs must prove that Asha Media (a) has knowledge of infringing activity; and (b) induces, causes, or materially contributes to direct infringement by others. *Amazon.com*, 508 F.3d at 1171.  Inducement, in turn, has four elements: (1) distribution of a device, product, or service; (2) acts of infringement; (3) an object of promoting use of the device, product, or service to infringe copyright; and (4) causation. *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1032 (9th Cir. 2013).  To prevail on their vicarious infringement claim, Plaintiffs must establish that defendant (1) has the right and ability to control the infringing conduct, and (2) derives a direct financial benefit from that conduct. *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 261 (9th Cir. 1996).  The Complaint and evidence submitted by Plaintiffs on this motion amply demonstrate that Asha Media is liable for both contributory and vicarious copyright infringement.

Asha Media distributed the TVpad device with the object of promoting and encouraging its use to infringe copyrighted television programs, resulting in infringement of Plaintiffs' copyrighted works.  Complaint ¶¶ 179-184, 186-187, 190-192, 259; *see also* Lau Decl. ¶¶ 21, 26-28, 30-32 and Exs. 80-86.  Asha Media also knowingly and intentionally induced unauthorized public performances and reproductions of Plaintiffs' copyrighted works by customers of the TVpad device in the United States, including by advertising the TVpad's peer-to-peer network and touting the TVpad's ability to provide access to Plaintiffs' copyrighted works without monthly fees, all as a means of promoting and selling the device.  Complaint ¶¶ 179-

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

184, 186-187, 190-192, 260; *see also* Lau Decl. ¶¶ 26, 30 and Exs. 80-81.  Asha Media also advertised specific Infringing TVpad Apps that provided unauthorized access to Plaintiffs' copyrighted programming on the TVpad device.  Complaint ¶¶ 182-183, 186-187, 190, 196, 259-260; *see also* Lau Decl. ¶¶ 28c and 28d, 32 and Exs. 84, 86 and 89-90 (various Asha Media website screenshots and email from "Charles Franco" advertising Infringing TVpad Apps); Wukoson Decl. Ex. 3 at 183:18-184:1 (Asha Media's admission that "Charles Franco" is alias of Asha Media's principal, Amit Bhalla).  Asha Media even shipped the TVpad devices to customers together with a flash drive containing the Infringing TVpad Apps, which not only provided customers access to unauthorized copies of Plaintiffs' copyrighted works, but also enabled customers to retransmit those copyrighted works to other TVpad customers.  Complaint ¶¶ 186-187, 190-191, 193; *see also* Braak Decl. ¶¶ 68-76 and Exs. 54 and 56; Lau Decl. ¶¶ 31, 35 and Exs. 88 and 91.  Finally, Asha Media derived a direct financial benefit—revenues from sales of TVpad devices—by promoting and encouraging customers to purchase the TVpad device and to use the Infringing TVpad Apps to infringe Plaintiffs' copyrighted television programming. Complaint ¶¶ 177, 179-184, 194.

These allegations in the Complaint (which must be taken as true) as well as the substantial factual evidence supplied by Plaintiffs, establish Asha Media's liability for secondary copyright infringement under multiple theories.

**b.    Asha Media Violated the Lanham Act and Infringed the TVB and CCTV Trademarks.**

The fourth and fifth claims in Plaintiffs' Complaint are for trademark infringement in violation of 15 U.S.C. § 1125(a) and common law trademark infringement under California state law.  Complaint ¶¶ 268-279.  The Lanham Act prohibits infringement of trademarks even if they have not been registered with the United States Patent and Trademark Office. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767-68 (1992) (infringement of unregistered marks prohibited by 15

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

U.S.C. § 1125(a)). The Lanham Act also prohibits the use in connection with any goods or services of any word, term or name, any false designation of origin or any false or misleading description or representation in commercial advertising or promotion that misrepresents the nature, characteristics or qualities of the person's or anyone else's goods, services or commercial activities. 15 U.S.C. § 1125(a)(1)(B). Common law prohibits the infringement of trademarks where the owners of the trademarks show they are the first to use the trademark and/or trade dress in a particular area. *Optimal Pets, Inc. v. Nutri-Vet, LLC*, 877 F. Supp. 2d 953, 958 (C.D. Cal. 2012).

Plaintiffs' allegations in the Complaint establish that Asha Media has violated Plaintiffs' exclusive rights to use their trademarks for their television services. CCTV brands its television broadcasting services with marks including CCTV and CCTV AMERICA, Registration No. 4730301, and the stylized CCTV logo. Complaint ¶ 48. CCTV's wholly owned indirect subsidiary, CICC, is authorized to use the CCTV Marks in connection with its distribution of CCTV programming in the United States. Complaint ¶¶ 44, 49. TVB brands its television broadcasting services and programming under a family of trademarks and service marks, including (a) the word mark JADE (Registration No. 2752223); (b) the JADE logo (Registration No. 2831375 and U.S. Application Serial No. 86171201); (c) the word mark TVB (U.S. Application Serial No. 86171162); and (d) the Chinese language word mark for THE JADE CHANNEL (Registration No. 3072394). Complaint ¶ 64. TVB has authorized its indirect subsidiary, TVB (USA), to use the TVB Marks in the United States. Complaint ¶ 65. Long before the acts described in the Complaint, Plaintiffs used their respective marks in interstate commerce in connection with television broadcasting services, programming and related entertainment services in the United States. Complaint ¶¶ 49, 52-53, 68-69. Plaintiffs have also spent substantial amounts promoting their brands and Marks in conjunction with television broadcasting, programming and related entertainment services. Complaint ¶¶ 48-50,

MOTION FOR DEFAULT JUDGMENT
DWT 29912059v4 0094038-000021

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

66-67, 274.

Plaintiffs have alleged that Asha Media infringed their marks and engaged in unfair competition and common law trademark infringement by using exact copies of Plaintiffs' marks to advertise the TVpad, creating consumer confusion regarding Plaintiffs' relationship, authorization, sponsorship and affiliation with Asha Media's products and services.  Complaint ¶¶ 181-184.  These allegations, taken as true, establish Plaintiffs' claims for trademark infringement under Section 1125(a)(1)(B) and common law trademark infringement. *See* Amended Default Judgment Order at 20-24, Dkt. No. 158 (discussing validity of Plaintiffs' Lanham Act claim and common law trademark infringement claim).

      **c.**    **Asha Media's Conduct Constitutes a Violation of Business & Professions Code § 17200.**

Plaintiffs CCTV, CICC and TVB (USA)'s sixth claim for relief against Asha Media is for violation of California Bus. & Prof. Code Section 17200 *et seq.*, which prohibits any unlawful, unfair or fraudulent business act or practice. Complaint ¶¶ 280-285. Plaintiffs allege that Asha Media's actions, including those discussed in Part II.C.2.b, above, are likely to cause confusion or deceive consumers about the affiliation, connection or association of Asha Media with Plaintiffs as to the origin, sponsorship or approval of Asha Media's products and services by Plaintiffs. Such conduct constitutes unlawful, unfair or fraudulent business acts or practices in violation of Section 17200.  *Id.* ¶¶ 281-282; *Acad. of Motion Picture Arts & Scis. v. Creative House Prom's., Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991) (likelihood of confusion is governing test under both the Lanham Act and Section 17200). Plaintiffs allege that they have suffered injury in fact and have lost money and property as a result of Asha Media's actions. Complaint ¶ 283.  Again, Asha Media's default constitutes admission of the facts alleged in the Complaint, and these admitted facts state a claim for violation of Section 17200.  *See* Amended Default

Judgment Order at 24-25, Dkt. No. 158 (discussing validity of Plaintiffs' Section 17200 claim).

### 3. The Damages Sought by Plaintiffs Are Consistent with Asha Media's Willful Misconduct.

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. Plaintiffs seek $6,885,000 in statutory damages for copyright infringement, and an additional $2,145,234 for trademark infringement. These sums are entirely in keeping with the gravity of Asha Media's infringing conduct. From September 2013 until June 15, 2015, Asha Media sold over $2.145 million of TVpads to consumers. Wukoson Dec. ¶ 6. That amount represents the sale of **at least 8,123** TVpads over this time period. Asha Media achieved these significant sales by encouraging customers to buy TVpads to access Plaintiffs' copyrighted programming without permission and by using Plaintiffs' trademarks to advertise the fact that customers could watch Plaintiffs' programming on the TVpad device—all while avoiding paying the monthly fees that customers pay when accessing Plaintiffs' content through legitimate means, including by purchasing a DISH subscription. *See* Lau Decl. ¶ 26 at Ex. 80. Asha Media doubled down on its wrongful conduct by shipping TVpad devices with a flash drive that included the very Infringing TVpad Apps necessary for a customer to be able to watch Plaintiffs' programming unlawfully, without paying for the content. *See* Lau Decl. ¶¶ 31, 35; Braak Decl. ¶¶ 69-73 and Exs. 54 and 56. Asha Media's President even touted Asha Media's shipment of the Infringing TVpad Apps along with the TVpad as a way he garnered more sales by differentiating his company from its competitors. Wukoson Decl. Ex. 3 at 181:1-9. The thousands of TVpad devices that Asha Media sold to its customers, in turn, were used by those customers to view thousands upon thousands of hours of Plaintiffs' copyrighted programming all day, every day, for years.

Asha Media exacerbated its wrongful conduct by ignoring Plaintiffs' cease and

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

desist letters.  DISH sent cease and desist letters to Asha Media on November 20,
2014 and December 19, 2014.  Kuelling Decl. ¶¶ 15-17, 19 and Exs. 95, 98-99 and
102.  Rather than ceasing its sales after receiving these cease and desist letters, Asha
Media continued to make sales of TVpad devices.  In fact, sales records show that
Asha Media sold over 4000 TVpad devices to customers *after* it received Plaintiffs'
first cease and desist letter.  Wukoson Declaration ¶ 7.  In addition, even after
receiving Plaintiffs' cease and desist letters, Asha Media continued to advertise
through its website the availability of CCTV television programming on the TVpad
device.  *See* Lau Decl. ¶ 28(e) and Ex. 87.  Further, Asha Media made its last sale of
a TVpad on June 15, 2015—months after the filing of this lawsuit and several days
after Plaintiffs had secured an order from this Court granting a preliminary injunction
against Asha Media barring it from selling or marketing the TVpad.  Wukoson Decl.
¶ 8.  In summary, long after Asha Media was placed on notice of its wrongful
conduct, Asha Media continued to sell the TVpad device, continued to promote the
device's use to infringe Plaintiffs' copyrighted programming and continued to use
Plaintiffs' trademarks without permission.

While $9,030,234 in combined damages for copyright and trademark
infringement is a substantial sum, it is entirely appropriate given Asha Media's
brazenly willful conduct and its sale of thousands of TVpads and concurrent
distribution of Infringing TVpad Apps that allowed users to infringe Plaintiffs'
copyrighted programming.  For all of these reasons, the amount of damages
requested by Plaintiffs is commensurate with the seriousness of Asha Media's
conduct.

### 4.    There Is No Possibility of Dispute Regarding Material Facts.

The fifth *Eitel* factor requires the Court to consider the possibility of a dispute
as to a material fact.  *Eitel*, 782 F.2d at 1471-72.  A defendant's failure to respond to
a complaint indicates that "the likelihood that any genuine issue may exist is, at best,
remote."  *Philip Morris*, 219 F.R.D. at 500.  Here, there is no possible dispute

concerning the material facts because Asha Media has intentionally defaulted, and therefore the factual allegations of Plaintiffs' complaint are taken as true. *Marcelos v. Dominguez*, No. C 08-00056 WHA, 2009 WL 230033, at *4 (N.D. Cal. Jan. 29, 2009).

### 5. There Is No Possibility of Excusable Neglect.

Under the sixth *Eitel* factor, the Court considers whether Asha Media's default resulted from excusable neglect. *Eitel*, 782 F.2d at 1471-72. Here, the facts show that Asha Media's default was intentional, and not the result of excusable neglect. Asha Media initially filed an answer, and then made a strategic decision to proceed with a liquidation action in Florida, leading its counsel of record to withdraw. Asha Media purposefully did not engage substitute counsel. This state of affairs demonstrates that Asha Media's conduct is intentional and not a result of excusable neglect. *See Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (defendant's default when properly served with complaint and notice of entry of default not attributable to excusable neglect).

### 6. Policy For Deciding Case On the Merits.

The final *Eitel* factor considers the preference for deciding cases on the merits. *Eitel*, 782 F.2d at 1471-72. "However, this factor, standing alone, cannot suffice to prevent entry of default judgment for otherwise default judgment could never be entered." *Warner Bros. Entertainment Inc. v. Caridi,* 346 F. Supp. 2d 1068, 1073 (C.D. Cal. 2004). Fed. R. Civ. P. 55 authorizes termination of a case before a hearing on the merits in these precise circumstances. *See Bryant*, 2004 U.S. Dist. LEXIS 26700, at *13. Here, the only reason this lawsuit against Asha Media cannot proceed to the merits is because Asha Media has decided not to defend this action.

///

///

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**D.      Plaintiffs Are Entitled To All of Their Requested Relief.**

**1.      Plaintiffs' Request for Statutory Damages For Willful Copyright Infringement Is Reasonable.**

The Copyright Act authorizes an award of statutory damages of $750 to $30,000 per infringed work, and enhanced statutory damages of up to $150,000 per infringed work for willful infringement. 17 U.S.C. § 504(c)(1)-(2).  Statutory damages are available in copyright infringement suits because actual damages and lost profits "are often virtually impossible to prove." *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991). "Statutory damages are particularly appropriate in a case . . . in which defendant has failed to mount any defense or to participate in discovery, thereby increasing the difficulty of ascertaining plaintiffs [sic] actual damages." *Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1101 (N.D. Cal. 2003).

Courts may award enhanced statutory damages both "to provide adequate compensation to the copyright holder and to deter infringement." *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1554 (9th Cir. 1989).  District courts have broad discretion in determining the amount of statutory damages to award for copyright infringement.  *Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1101-02 (N.D. Cal. 2003).  A court's consideration of the appropriate award of statutory damages is guided by factors including "the expense saved by the defendant in avoiding a licensing agreement; profits repeated by defendant in connection with the infringement; revenues lost to the plaintiff; and the willfulness of the infringement…." *Controversy Music v. Shiferaw*, No. C03-5254 MJJ, 2003 WL 22048519, *2 (N.D. Cal. July 7, 2003).  A party may elect statutory damages "regardless of the adequacy of the evidence offered as to his actual damages and the amount of the defendant's profits." *Columbia Pictures Television, Inc. v. Krypton Broad.*, 259 F.3d 1186, 1194 (9th Cir. 2001) (citation omitted); *see also Odnil Music Ltd. V. Katharsis LLC*, No. CIV S-05-0545 WBSJFM, 2006 SL 2545869, *7 (E.D.

Cal. July 21, 2006) ("[I]nfringers should not be free to 'sneer' in the face of the Copyright Act; courts must put defendants on notice that it costs less to obey the Copyright Act than to violate it.") (citing *Int'l Korwin Corp. v. Kowalczyk*, 665 F. Supp. 652, 659 (N.D. Ill. 1987), *aff'd*, 855 F.2d 375 (7th Cir. 1988)).

Here, Plaintiffs are requesting a total award of $6,885,000 in copyright statutory damages, representing an award of $15,000 for each of the 459 episodes of Plaintiffs' copyrighted works the evidence shows were infringed before Asha Media ceased its sales of TVpad devices in June 2015. *See* Braak Decl. ¶¶ 74-75 (detailing infringed CCTV and TVB copyrighted programs); Tsang Decl. ¶¶ 25-26 and Ex. 92 (identifying infringed TVB copyrighted programs). Plaintiffs' requested award is far less than the maximum of $150,000 per copyrighted work for willful infringement that Plaintiffs could request given the evidence of Asha Media's willful infringement, and is consistent with the Court's earlier default judgment award against other defendants in this action. *See* Dkt. No. 158 at 34 n.104.

### a. Willfulness

Asha Media's default mandates a finding of willfulness. *Caridi*, 346 F. Supp. 2d at 1074 ("Because of the entry of default . . . the Court must take Warner Bros.'s allegation of willful infringement as true."); *see also Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008). Indeed, Asha Media's documented actions establish extreme willfulness: (1) For years Asha Media deliberately advertised and marketed the availability of TVB and CCTV programming on the TVpad in order to make sales of the device, despite having no license or agreement with Plaintiffs; (2) Asha Media ignored the pre-litigation cease and desist letters that Plaintiffs sent to it on November 20, 2014 and December 19, 2014, making half of its reported TVpad sales **after** it received the first cease and desist letter; and (3) Asha Media continued to sell the TVpad for months after Plaintiffs initiated this lawsuit and filed a motion for preliminary injunction, and even continued to make sales after the Court's entry of injunctive relief. Wukoson Decl. ¶

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

8.  In light of Asha Media's willful infringement and the massive scope of infringement perpetrated by Asha Media, an award of $15,000 per infringed work for a total of $6,885,000 in statutory damages is appropriate.

### b.      Number of Registered Works Infringed

Prior to Asha Media's cessation of sales of the TVpad device, Plaintiffs documented the infringement of 459 separate episodes of their copyrighted programming on various TVpad devices, including through the TVpad devices sold by Asha Media to Plaintiffs' investigators.  *See* Braak Decl. ¶¶ 74-75 (detailing 30 infringed CCTV copyrighted programs and 23 infringed TVB copyrighted programs); Tsang Decl. ¶¶ 25-26 and Ex. 92 (identifying 406 TVB copyrighted episodes Mr. Tsang documented as infringed and verifying Mr. Braak's documentation of 23 infringed TVB copyrighted episodes); Lu Decl. Ex. 94 (detailing copyright registration information for 30 CCTV episodes documented as infringed by Mr. Braak).   The evidence also shows that the TVpad devices sold by Asha Media to Plaintiffs' investigators illegally streamed, recorded, and retransmitted Plaintiffs' copyrighted programming, including through the Infringing TVpad Apps that Asha Media provided on the flash drives it shipped along with the TVpad devices it sold.  *See* Complaint ¶¶ 41, 114; Braak Decl. ¶¶ 68-73.

These 459 episodes of Plaintiffs' programming represent only a small fraction of the copyright infringement perpetrated as a result of Asha Media's sales of over 8,000 TVpad devices to consumers.  As detailed in Plaintiffs' motion for default judgment against other defendants in this action (*see* Dkt. 158), Plaintiffs confirmed that thousands of additional episodes of their copyrighted programming were available for viewing without Plaintiffs' authorization through the Infringing TVpad Apps on TVpad devices after entry of the preliminary injunction in this action.  *See* Dkt. No. 158 at 11-12 (detailing Plaintiffs' verification of the infringement of 2,006 copyrighted episodes).  All of the over 8,000 TVpad devices Asha Media sold to consumers before entry of the preliminary injunction in this matter continued to have

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

the capability to stream thousands of additional episodes of Plaintiffs' television broadcasts even after Asha Media stopped selling the device to consumers.  Given this complete picture of Asha Media's wrongdoing in this action, it is entirely appropriate for this Court to award statutory damages of $15,000 per work, for each of the 459 works that were documented as being infringed, for a total of $6,885,000.

### c.   The Amount Requested Is Consistent with Precedent

Plaintiffs' proposed statutory damages of $15,000 per work are far below the awards in other cases in which statutory damages have been awarded for similarly egregious, willful infringement. *See*, *e.g.*, *Peer Intern. Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336-37 (9th Cir 1990) (affirming award of $150,000 maximum award for each of 80 infringed works); *Louis Vuitton Malletier SA v. Akanoc Solutions*, 658 F.3d 936, 946-47 (9th Cir. 2011) (same, for two works); *Krypton Broad.*, 259 F.3d at 1195 (approving award of $31.68 million based on two-thirds of statutory maximum for 440 works).

Plaintiffs' proposed award is also entirely consistent with the prior award in this case against other defendants, and is far below approved statutory damages awards by other district courts in this Circuit in similar copyright actions.  In *IO Grp., Inc. v. Antelope Media, LLC*, No. C-08-4050 MMC, 2010 WL 2198707, at *1 (N.D. Cal. May 28, 2010), for example, the Court awarded the maximum statutory damages of $150,000 per work in an action involving distribution of copyrighted adult content on a revenue-generating online forum.  The court noted the particularly "egregious" circumstances, including defendant's continued infringement after notice of the lawsuit.  *Id.*  Likewise, in *Warner Bros. v. Caridi*, the court awarded $150,000 for each work infringed where the defendant—like Asha Media—ignored warnings of infringement and defaulted rather than defend.  *Caridi*, 346 F. Supp. 2d at 1074; *see also Pearson Educ., Inc. v. Wong*, No. 09-1889 SC, 2010 WL 476685 at *6 (N.D. Cal. Feb. 3, 2010) (awarding $15,000 per infringement for 85 copyrighted works given the willful and flagrant nature of infringement).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

### d.    Plausible Relationship to Actual Damages

Plaintiffs' proposed statutory damages award also bears more than a "plausible relationship" to Plaintiffs' actual damages—a factor considered by courts in this Circuit in setting statutory damages. *DFSB Kollective Co. v. Tran*, 11CV1049 LHK, 2011 WL 6730678, at *9 (N.D. Cal. Dec. 21, 2011).  To establish the relationship between statutory damages on the one hand and plaintiff's actual damages on the other hand, the court may consider "the expense saved by the defendant in avoiding a licensing agreement; profits repeated by defendant in connection with the infringement; revenues lost to the plaintiff; and the willfulness of the infringement…." *Controversy Music,* 2003 WL 22048519, *2; *see also Lamb v. Starks*, 1997 U.S. Dist. LEXIS 11369, at *6 (N.D. Cal. Jul. 2, 1997); *Sennheiser*, 2013 WL 3811775, at *8-9 (discussing type of evidence that can establish plausible relationship between trademark statutory damages and plaintiff's actual damages). Other courts award three times the amount of a properly purchased license for each infringement. *See, e.g.*, *Sailor Music v. IML Corp.*, 867 F. Supp. 565, 570 (E.D. Mich. 1994); *Broadcast Music, Inc. v. R Bar of Manhattan*, 919 F. Supp. 656, 660 (S.D.N.Y. 1996); *Broadcast Music, Inc. v. JMN Restaurant Management Corp.*, Case 14-cv-01190 JD, 2014 WL 5106421, at *3 (N.D. Cal. Oct. 10, 2014).  Evidence of actual damages in a statutory damages context need not meet the same standard of proof as where a plaintiff seeks an award of actual damages or infringing profits; otherwise a key purpose of statutory damages—allowing a recovery where proof of actual damages and infringing profits is difficult—would be frustrated. *See Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984) ("[s]tatutory damages may be elected whether or not there is adequate evidence of the actual damages suffered by plaintiff or of the profits reaped by defendant.").  "[T]here need not be a precise link between [defendant's] revenues or profits and the ultimate award." *Sennheiser*, 2013 WL 3811775, at *8.

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Here, Plaintiffs' request for statutory damages of $6.885 million bears a plausible relationship to both to Asha Media's estimated profits and Plaintiffs' lost subscription revenue for properly licensed content, as detailed below.

### (1)   Asha Media's TVpad Profits

According to Asha Media's own sales records, Asha Media generated revenue of over $2.145 million from the sale of TVpad devices for the period of July 2013 through June 2015.  Almost half of those sales were consummated after Asha Media received a cease and desist letter from DISH in November 2014.  Wukoson Decl. ¶ 7.  This $2.145 million in sales must be treated as profits for Asha Media given its default in this action.  In copyright cases, the burden is on a defendant to demonstrate any offsetting expenses against revenues, and any elements of profits not attributable to infringement of the plaintiff's works. 17 U.S.C. § 504(b).  Here, the revenue calculation is treated as profits given Asha Media's default and failure to present evidence of offsetting costs.  *See Wecosign, Inc. v. IFG Holdings, Inc*., 845 F. Supp. 2d 1072, 1084 (C.D. Cal. 2012) ("With respect to Defendants' profits, Plaintiff is required to prove only sales; had Defendants mounted a defense, they would have carried the burden of showing deductions.").

Plaintiffs recognize that their request for $6,885,000 in total statutory damages exceeds Asha Media's reported sales of TVpad devices.  Plaintiffs submit, however, that an award of no less than $15,000 per infringed work is appropriate given Asha Media's blatantly willful conduct and the enormous scope of infringement available through a single TVpad device.  The more than 8,000 TVpad devices sold by Asha Media infringed Plaintiffs' entire line up of copyrighted television programming every hour of every day for years—making an award of the magnitude proposed by Plaintiffs entirely appropriate.  In addition, Asha Media's very business model was premised on encouraging consumers to commit copyright infringement and evade monthly subscription fees required to view authorized copyrighted programming.  *See* Lau Decl. ¶ 27 Ex. 81 at p. 8 (citing Asha Media's FAQ page) ("How does the

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

TVpad differ from other TV Boxes that are available?  The fees and charges differ. At the moment, most of the similar products have monthly subscription fees.  You could find that your 12 month bill is more than the cost for the TVpad outright.").  Taking these factors into account, Plaintiffs' statutory damages amount bears a plausible relationship to the damages caused by Asha Media's sales of 8,123 TVpad devices over three years.

### (2) Lost Subscription Revenue.

The plausibility of Plaintiffs' statutory damages demand is further evidenced by the amount of monthly subscriptions DISH lost by reason of Asha Media's sales of over 8,000 TVpad devices that allowed Asha Media's customers to view CCTV and TBV programs for free.  DISH charges its subscribers on a monthly basis for authorized packages of CCTV and TVB programming.  Kuelling Decl. ¶¶ 7-8, 10-11. For its Great Wall package of CCTV channels, DISH charges approximately $15 per month; it charges approximately $30 per month for its Jade package of TVB channels.  *Id.*  Consumers who purchase TVpads and access CCTV and TVB content for free represent lost potential subscribers for Plaintiffs.  Indeed, one of Asha Media's key advertising pitches for consumers to purchase the TVpad device was to avoid the type of monthly fees that DISH and other legitimate services charge consumers to access copyrighted television programs that the TVpad device illegally makes available.  If users of the 8,123 TVpads purchased from Asha Media instead purchased a subscription to just one of the CCTV or TVB packages through an authorized service such as DISH, and held such a subscription for 24 months (the length of a typical contract, *see* Kuelling Decl. ¶ 4), this would have resulted in subscription fees of anywhere between ***$2,880,000*** (8,000 x $15 CCTV subscription for 24 months), on the low end, and ***$5,760,000*** (8000 x $30 TVB subscription for 24 months), on the high end.  These subscription fee losses may even be greater given the three year time period during which Asha Media sold TVpad devices to consumers and the over one-year time period following Asha Media's last sale in

MOTION FOR DEFAULT JUDGMENT
DWT 29912059v4 0094038-000021

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

June 2015, during which TVpads already in the stream of commerce continued to operate and infringe Plaintiffs' copyrighted television programming.

While the subscription fees lost by Plaintiffs as a result of Asha Media's unlawful conduct may be orders of magnitude higher than the range identified above, the range provides a fair benchmark for demonstrating the relationship between the enormous impact of Asha Media's wrongdoing on Plaintiffs, on the one hand, and Plaintiffs demand for statutory damages for copyright infringement, on the other hand.

### 2. Plaintiffs' Request for Damages of $2,145,234 for Trademark Infringement Is Reasonable.

Damages in the amount of a defendant's profits are available for trademark infringement pursuant to 15 U.S.C. § 1117(a). "[S]ales are equivalent to profits absent evidence from the defendant as to costs or other deductions from said profits." *Craigslist, Inc. v. Kerbel*, 2012 U.S. Dist. LEXIS 108573, at *51 (N.D. Cal. Aug. 2, 2012) (holding third-party evidence of defendant's gross sales substantiated damages for Lanham Act violation). Here, Plaintiffs have provided evidence that Asha Media sold over $2.145 million worth of TVpad devices to consumers based in part on Asha Media's advertisement of the TVpad device as a means for TVpad users to watch TVB and CCTV shows for free—all while using Plaintiffs' Marks to do so. Complaint ¶¶ 138-141. Given Asha Media's failure to dispute the gross sales established by Plaintiffs' evidence, the gross sales figure is appropriately entered as damages for the Asha Media's trademark infringement in this action. *See Wecosign, Inc.*, 845 F. Supp. 2d at 1084.

Awarding this amount in addition to the copyright statutory damages requested above does not constitute a double recovery as, "when a defendant violates both the Copyright Act and the Lanham Act, an award of both types of damages is appropriate." *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1011 (9th Cir. 1994); *see* Dkt. No. 158 at 35 (awarding over $25 million in trademark damages

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1 | in addition to copyright statutory damages of $30 million).

2 | **3.    Plaintiffs Are Entitled to Injunctive Relief.**

3 | "The basis for injunctive relief in the federal courts has always been

4 | irreparable injury and the inadequacy of legal remedies."  *Lucasfilm Ltd. v. Media*

5 | *Market Gp., Ltd.*, 182 F. Supp. 2d 897, 899 (N.D. Cal. 2002).  "As a general rule, a

6 | permanent injunction will be granted when liability has been established and there is

7 | a threat of continuing violations."  *MAI Systems Corp. v. Peak Computer, Inc.*, 991

8 | F.2d 511, 520 (9th Cir. 1993).  The Copyright Act specifically authorizes the Court

9 | to grant injunctive relief to "prevent or restrain infringement of a copyright."  17

10 | U.S.C. § 502(a).  Similarly, under the Lanham Act and California law, injunctive

11 | relief is available to prevent future trademark infringement.  15 U.S.C. § 1116(a);

12 | Cal. Bus. & Prof. Code §§ 14330, 14340, 17200 *et seq.*; *Century 21 Real Estate*

13 | *Corp. v. Sandlin*, 846 F.2d 1175, 1180-81 (9th Cir. 1988) ("Injunctive relief is the

14 | remedy of choice for trademark and unfair competition cases.").

15 | Asha Media's default acts as an admission of the factual allegations regarding

16 | liability.  Additionally, there is a significant threat of continuing irreparable injury

17 | present here, which, when balanced against the negligible hardship to Asha Media

18 | and the public interest, favor an injunction.

19 | First, without a permanent injunction, nothing will prevent Asha Media from

20 | continuing to sell the TVpad or any similar device that streams Plaintiffs' television

21 | programming without authorization.  Notably, Asha Media sold TVpad devices even

22 | after the Court entered a preliminary injunction in this action.  While Asha Media

23 | apparently has abided by the Court's preliminary injunction since July 2015,

24 | Plaintiffs would have no assurances that Asha Media would not resume its sales of

25 | the TVpad or similar device without entry of a permanent injunction, again causing

26 | irreparable injury to Plaintiffs.  *IO Group, Inc. v. Antelope Media, LLC*, 2010 WL

27 | 2198707, at *2 (N.D. Cal. May 28, 2010).  Plaintiffs have submitted declarations

28 | detailing the irreparable injury they have experienced over the years during which

Asha Media was one of the largest distributors of the TVpad device, the injury such sales caused Plaintiffs, and how such injury will continue if Asha Media is not enjoined.  *See* Tsang Decl. ¶¶ 28-42; Lu Decl. ¶¶ 26-36; Kuelling Decl. ¶¶ 26-33.

Second, an award of monetary damages alone is unlikely to prevent or deter Asha Media's conduct given Asha Media's efforts to avoid liability in this action by both pursuing liquidation proceedings in Florida while also opting not to defend this lawsuit.  Wukoson Decl. ¶ 12.  Therefore, collecting any monetary award will likely prove to be challenging for Plaintiffs.  *See Lava Records, LLC v. Ates*, Civ. A-05-1314, 2006 WL 1914166, at *3 (W.D. La. July 11, 2006) (awarding permanent injunction because of "the need to prevent irreparable harm to Plaintiffs, which will not be remedied by a damage award that may or may not be collectible").

Finally, the public interest will be served by granting an injunction to uphold Plaintiffs' rights.  *See MAI Systems*, 991 F.2d at 520; *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983) ("[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work."). Particularly given that Asha Media has falsely advertised and marketed the TVpad device as a means for consumers to watch Plaintiffs' programming and has indicated on its FAQ page that the TVpad device is lawful, a permanent injunction is necessary to ensure that consumers do not unwittingly purchase a device that streams unauthorized content, thinking the product and its promised content is legitimate. Lau Decl. ¶ 27 Ex. 81 (citing Asha Media FAQ page) ("Is it legal to use the TVpad? YES, it is legal.").

Plaintiffs therefore submit that their requested permanent injunctive relief be entered in its entirety against Asha Media and those working in concert with Asha Media.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

#### 4.   Attorneys' Fees and Costs

Attorneys' fees and costs are recoverable on Plaintiffs' copyright claims under 17 U.S.C. § 505, and on Plaintiffs' trademark claims under 15 U.S.C. § 1117(a).  *See Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1409 (9th Cir. 1993); *Taylor Made Golf Co., Inc. v. Carsten Sports Ltd.*, 175 F.R.D. 658, 663 (S.D. Cal. 1997). Plaintiffs request those attorneys' fees associated with Plaintiffs' pre-filing investigation of Asha Media, fees associated with filing and serving the complaint and motion for preliminary injunction, fees associated with discovery of Asha Media's wrongdoing in this case (including discovery conducted in the bankruptcy proceeding of Asha Media's principal, Amit Bhalla), mediation and Court conferences, and fees associated with seeking Asha Media's default and default judgment.  McCauley Decl. ¶¶ 19-21 and Exs. 5 and 6.   Plaintiffs therefore request $115,625 in attorneys' fees.  *Id.*  Plaintiffs will submit an Application to Tax Costs, following entry of judgment pursuant to Local Rule 54.

#### 5.   Post-Judgment Interest

Plaintiffs respectfully request post-judgment interest calculated "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."  28 U.S.C. § 1961(a).

### III.   CONCLUSION

For the reasons stated above, Plaintiffs respectfully request the Court grant their Motion for Default Judgment in its entirety.

DATED: September 22, 2016       DAVIS WRIGHT TREMAINE LLP


By:  /s/Carla A. McCauley
_____
Carla A. McCauley
Attorneys for Plaintiffs
CHINA CENTRAL TELEVISION; CHINA INTERNATIONAL COMMUNICATIONS CO., LTD.; TVB HOLDINGS (USA), INC.; AND DISH NETWORK L.L.C.

MOTION FOR DEFAULT JUDGMENT
DWT 29912059v4 0094038-000021