UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-01869-SVW-AJW | Date | November 7, 2016 |
|---|---|---|---|
| Title | *China Central Television et al. v. Create New Technology HK Limited et al.* | | |

Present: The Honorable   STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:**   IN CHAMBERS ORDER GRANTING MOTION FOR DEFAULT
JUDGMENT [201].

## I.   Procedural Background

On March 13, 2015, plaintiffs China Central Television ("CCTV"), China International
Communications Co., Ltd. ("CICC"), TVB Holdings (USA), Inc. ("TVB USA"), and DISH Network
L.L.C. ("DISH") (collectively "Plaintiffs") filed this action against Create New Technology HK Limited
("CNT"), Hua Yang International Technology Limited ("HYIT"), Shenzhen GreatVision Network
Technology Co., Ltd. ("GreatVision"), (collectively "the CNT defendants"), and various fictitious
defendants (plaintiffs denominate the CNT defendants and fictitious defendants collectively as the
"Retransmission defendants") for the following: (1) direct copyright infringement; (2) secondary
copyright infringement; (3) trademark infringement; (4) unfair competition; and (5) violation of Bus. &
Prof. Code § 17200.   Dkt. 1.   Plaintiffs also name as defendants Club TVpad, Inc. ("Club TVpad"),
Bennett Wong, Asha Media Group ("AMG"), Amit Bhalla, newTVpad Ltd. Company ("newTVpad"),
Liangzhong Zhou, and Honghui Chen.   *Id.*   On December 7, 2015, the Court granted Plaintiffs' motion
for default judgment relating to the liability of CNT and HYIT.   Dkt. 158.   The Court awarded
$55,460,291.   *Id.*   On April 4, 2016, the Court granted Plaintiff's application for permanent injunction
relating to the liability of CNT and HYIT.   Dkt. 185.   After counsel for AMG and Amit Bhalla withdrew
as attorney, the Court granted Plaintiff's request to strike the answer of AMG and Amit Bhalla on July, 8,
2016.   Dkt. 196.   Contemporaneously, the Clerk entered default against AMG on the same day.[41]   Dkt.

---

[41] The action as to Amit Bhalla is stayed pursuant to a pending bankruptcy.   Dkt. 180.

Initials of Preparer   : 

PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:15-cv-01869-SVW-AJW | Date | November 7, 2016 |
|---|---|---|---|
| Title | *China Central Television et al. v. Create New Technology HK Limited et al.* | | |

195.   Presently before the Court is Plaintiff's motion for default judgment relating to the liability of AMG.   Dkt. 201.

### II.   Factual Background

CCTV and Television Broadcasts Limited ("TVB") are television broadcasters in mainland China and Hong Kong, respectively.[1]   Through affiliates, CCTV and TVB license copyrighted television programming for retransmission in the United States via authorized satellite, cable, and other television service providers ("Authorized U.S. Providers").[2]

CICC is a CCTV affiliate that licenses Authorized U.S. Providers to broadcast CCTV's "Great Wall" package of channels to paying U.S. subscribers.   Although CICC licenses certain satellite and cable retransmission rights, CCTV retains and owns the exclusive right to transmit CCTV programming in the United States over the internet.[3]   TVB USA is a wholly owned indirect subsidiary of TVB and distributes and licenses TVB programming in the United States.   TVB owns and maintains the right to transmit TVB programming in the United States.   DISH is a television service provider that delivers television services to subscribers through satellite and internet platforms.   DISH is a licensee of both CCTV and TVB; pursuant to licensing agreements, DISH owns the exclusive right to transmit certain CCTV and TVB programming in the United States.[4]

CNT is a Hong Kong company that manufactures the "TVpad" device – a set-top box that delivers streaming television programming from Asia to customers in the United States over the internet without

---

[1]Compl. ¶¶ 1-3, 5.

[2]Compendium of Evidence in Support of Motion for Preliminary Injunction ("Injunction Compendium"), Volume I, Docket No. 23-1 (Mar. 16, 2015), Declaration of Samuel P. Tsang ("Tsang Decl.") ¶¶ 3-4, 11; Compendium, Volume I, Declaration of Chunguang Lu ("Lu Decl.") ¶¶ 3-5, 9.

[3]Lu Decl. ¶¶ 5, 10-11.

[4]Compendium of Evidence in Support of Plaintiffs' Motion for Default Judgment ("Compendium"), Volume I, Docket No. 125-1 (Sept. 14, 2015), Declaration of Christopher Kuelling ("Kuelling Decl.") ¶¶ 5-7; Lu Decl. ¶¶ 12-13; Tsang Decl. ¶ 26.; "OTT" is the delivery of video programming using an internet connection that is not owned, managed, or operated by the party delivering the programming – i.e., Netflix.   (Kuelling Decl. ¶ 4, n.1.)

Initials of Preparer

:

PMC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:15-cv-01869-SVW-AJW | Date | November 7, 2016 |
|---|---|---|---|
| Title | *China Central Television et al. v. Create New Technology HK Limited et al.* | | |

requiring customers to pay subscription fees to an authorized provider.[5] HYIT is a Hong Kong company that has its principal place of business in Hong Kong.[6] Plaintiffs assert that the CNT defendants are commonly owned, operated, and controlled for the purpose of distributing and profiting from the Tvpad Retransmission Service in the United States and around the world.[7]

Before a TVpad user can access television programming, he or she must download applications from the "TVpad Store." The store is a primary feature of every TVpad device. Thus, before TVpad users in the United States can access unauthorized CCTV and TVB programming, they must download free apps from the TVpad Store for their devices.[12] Plaintiffs' investigators have identified 15 TVpad apps available in the TVpad Store that permit TVpad users in the United States to access unauthorized CCTV and TVB programming ("Infringing TVpad Apps").[13] The CNT defendants purportedly are deeply involved in, and are directly or indirectly responsible for (a) capturing CCTV's and TVB's broadcasts in Asia and infringing retransmission of that programming over the Internet to TVpad users in the United States; and (b) developing, maintaining, and disseminating the Infringing TVpad Apps.[14] In late 2014, plaintiffs' investigator observed and recorded 30 CCTV television episodes and 23 TVB television episodes streamed through Infringing TVpad Apps on a TVpad device. A TVB USA executive observed and recorded portions of an additional 406 TVB episodes streamed through Infringing TVpad Apps in video-on-demand mode. Each episode recorded by plaintiffs' investigator and the TVB USA executive ("Registered Programs") are registered with the United States Copyright Office. Plaintiffs have not granted anyone a license to stream the Registered Programs over the internet into the United States through the Infringing TVpad Apps.[15]

---

[5] Compl. ¶¶ 3-4; Injunction Compendium, Volume I, Declaration of Christopher Weil ("Weil Decl.") ¶¶ 9, 16.

[6] Compl. ¶ 20.

[7] *Id.* ¶ 81.

[12] Injunction Compendium, Volume I, Declaration of Nicholas Braak ("Braak Decl.") ¶¶ 8, 14-16; Weil Decl. ¶ 26; Kuelling Decl. ¶¶ 9-10.

[13] Compl. ¶ 8.

[14] *Id.*

[15] Braak Decl. ¶¶ 74-76; Tsang Decl., ¶¶ 23, 25-27; Injunction Compendium, Volume VI, Ex. 92; Lu Decl. ¶¶ 23-25; *id.*,

                                                                                    :  _____
                                                        Initials of Preparer
                                                                                    PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:15-cv-01869-SVW-AJW | Date | November 7, 2016 |
|---|---|---|---|
| Title | *China Central Television et al. v. Create New Technology HK Limited et al.* | | |

Plaintiffs' investigator performed forensic analysis of the TVpad device and determined that Infringing TVpad Apps in "live" mode stream CCTV and TVB programming through a peer-to-peer network, in which each TVpad user streams video content to large numbers of other users worldwide. Stated differently, each TVpad user not only receives live CCTV and TVB broadcasts, but also simultaneously retransmits those broadcasts to other TVpad users throughout the United States and around the world. CNT is aware of the peer-to-peer streaming feature of the TVpad and has publicly advertised the feature.[18]

Plaintiffs' investigator reports that peer-to-peer streaming can only function if an individual initially captures CCTV and TVB broadcast signals in Asia. After the signal is captured, the individual converts the signal into digital data and then streams the data to TVpad users through the peer-to-peer network.[19] The investigator has also determined that Infringing TVpad Apps in "video-on-demand" mode stream CCTV and TVB programs to TVpad users directly from servers in the United States, including servers in Los Angeles.[20] Data packets received from the servers indicate that recorded video files reside on the servers. Thus, individuals or entities that pirate CCTV and TVB programs from Asia make copies of the programs and stream those copies from servers located in the United States.[21] Forensic analysis has demonstrated that Infringing TVpad Apps in time-shift mode stream CCTV and TVB programming both through the peer-to-peer network and directly from servers in China.[22]

Both CCTV and TVB allege that they have registered or applied for trademarks and service

---

Volume VI, Ex. 94; *id.*, Kuelling Decl. ¶ 14.

[18]Braak Decl. ¶¶ 10(a), 53-56; Injunction Compendium, Volume IV, Ex. 45; Weil Decl. ¶ 19; Injunction Compendium, Volume II, Ex. 9 at 1.

[19]Braak Decl. ¶¶ 17, 56. Plaintiffs denominate individuals responsible for capturing broadcast signals and converting them into data streamed through peer-to-peer networks as "App Infringers."

[20]*Id.* ¶¶ 10(b), (d), 60-62; Injunction Compendium, Volume IV, Ex. 45.

[21]Braak Decl. ¶ 62; Injunction Compendium, Volume IV, Ex. 45.

[22]Braak Decl. ¶¶ 10(c), 63.

Initials of Preparer _____ : _____

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:15-cv-01869-SVW-AJW | Date | November 7, 2016 |
|---|---|---|---|
| Title | *China Central Television et al. v. Create New Technology HK Limited et al.* | | |

marks.[36]  They have shown that they own numerous U.S. copyright registrations for television programming.[37]  Plaintiffs have also shown that the Infringing TVpad Apps on the TVpad have streamed 2,006 of the copyrighted programs and streamed entire programming schedules all day, every day for at least four years.[38]

Plaintiffs' trademarks are streamed through defendants' TVpads along with plaintiffs' programming.[39]  Not only do defendants stream plaintiffs' copyrighted programming and trademarks, but they use plaintiffs' trademarks in advertising and promotional materials such as posts to their Facebook page and blog.[40]  They display plaintiffs' trademarks and assert that they have "exclusive & authorized live content[ ]" to solicit investors.[41]

### A.  Factual Background Relating to AMG's Violations

AMG conducts business throughout the US via a commercial website at http:tvpad.com/en/ ("TVpad.com") and ships TVpad devices from Bloomington, California.[42]  Amit Bhalla personally owns and operates TVpad.com, wherein TVpads are sold at prices ranging from $259-$329.[43]  From July 2013 to June 2015, AMG sold at least 8,123 TVpad devices.[44]  AMG advertises and promotes itself as an

---

[36]Compl. ¶¶ 52, 64.

[37]See *id*., Ex. A-Ex. D (table listing numerous registered works and their accompanying copyright registrations).

[38]Braak Decl. ¶¶ 12-14; Tsang Decl. ¶¶ 5-15.

[39]Weil Decl. ¶¶ 14-40, 41; Injunction Compendium, Volume III, Ex. 20.

[40]*Id*.; Compl. ¶¶ 6–8, 47–49, 50–53, 138-39.

[41]Weil Decl. ¶¶ 28-50; Injunction Compendium, Volume II, Ex.'s 8, 13-17; *id.*, Volume III, Ex.'s 18-29; *id.*, Volume IV, Ex. 33

[42] Compl. ¶¶ 175, 188-89.

[43] *Id*. ¶¶ 175-76.

[44] Wukoson Decl. ¶ 6.

Initials of Preparer    :

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-01869-SVW-AJW | Date | November 7, 2016 |
|----------|----------------------|------|------------------|
| Title | *China Central Television et al. v. Create New Technology HK Limited et al.* | | |

"Official Authorized TVpad Store" while also advertising and promoting the Infringing TVpad Apps and the alleged infringing capabilities of the TVpad device.[45]   Moreover, the AMG website discusses various uses including a peer to peer network and blog posts that advises users on which Infringing TVpad Apps provide which entertainment portals/channels that infringe on CCTV and TVB programing.[46]   For example, AMG's FAQ pages answers "How does the TVpad differ from other TV Boxes that are available? The fees and charges differ. At the moment, most of the similar products have monthly subscription fees. You could find that your 12 month bill is more than the cost for the TVpad outright."[47]

Plaintiffs' investigator called AMG and spoke to Amit Bhalla, wherein Bhalla stated that the TVpad device relies on Infringing TVpad Apps for streaming video and that a USB is provided with the TVpad devices preloaded with "popular apps."[48] At the request of Plaintiffs' investigator, a representative of TVpad.com sent a list of available CCTV and TVB channels through the Infringing TVpad Apps.[49] After Plaintiffs' investigator purchased two TVpad devices—accompanied with flash drives—from TVpad.com, Plaintiffs discovered and documented that the TVpad devices were infringing upon 459 separate episodes of their copyrighted work.[50] In November 2014 and December 2014, DISH sent cease and desist letters to AMG demanding that AMG stop facilitating and inducing the infringement of Plaintiffs' copyrighted programming.[51]

---

[45] *Id*. ¶¶ 178-79.

[46] *Id*. ¶¶ 180-83.

[47] *See* Lau Decl. ¶ 27; Ex. 81 at p. 8.

[48] Compl. ¶¶ 186.

[49] *Id*. ¶ 188.

[50] Compl. ¶¶ 188-92; Braak Decl. ¶¶ 74-74; Tsang Decl. ¶¶ 25-26; Ex. 92.

[51] Compl. ¶ 195.

Initials of Preparer                    :

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:15-cv-01869-SVW-AJW | Date | November 7, 2016 |
|---|---|---|---|
| Title | *China Central Television et al. v. Create New Technology HK Limited et al.* | | |

### III.    Legal Standard

Before a Court may rule on a motion for default judgment, it first must determine whether the motion complies with Rule 55 of the Federal Rules of Civil Procedure and Local Rule 55-1. *See Pepsico, Inc. v. California Security Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002).    The motion must set forth: (1) when and against which party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is adequately represented; (4) that the Soldiers' and Sailors' Civil Relief Act of 1940 does not apply; and (5) that notice of the application has been served on the defaulting party, if required. *Id.*; *see also Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 919 n.19 (C.D. Cal. 2010) (holding that service on defaulting party is required only if the party has appeared in the action). Further, Rule 55(a) of the Federal Rules of Civil Procedure states, "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."[52]

Once these procedural conditions are met, "[g]ranting or denying a motion for default judgment is a matter within the court's discretion." *Landstar*, 725 F. Supp. 2d at 919.    In deciding whether to grant a default judgment, a court considers: "(1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Upon entry of default, the well-pleaded allegations of the complaint, except those concerning damages, are deemed true.    Fed. R. Civ. P. 8(b)(6).    The court, however, must assure itself that "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Landstar*, 725 F. Supp. 2d at 920.

Plaintiffs are required to prove all damages sought in the complaint, and such damages "shall not be different in kind from, or exceed in amount, what is demanded in the pleadings."    Fed. R. Civ. P. 54(c).    "Plaintiff's burden in 'proving up' damages is relatively lenient." *Philip Morris USA, Inc. v.*

---

[52] This Court struck AMG's Answer to the Complaint because AMG failed to retain new counsel, and subsequently entered default.    Dkt. 196.

Initials of Preparer

_____ : _____

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:15-cv-01869-SVW-AJW | Date | November 7, 2016 |
|---|---|---|---|
| Title | *China Central Television et al. v. Create New Technology HK Limited et al.* | | |

*Castworld Products, Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (internal citations omitted).   But sufficient facts, necessary to determine damages, must be provided to the court.   *See id.*

### IV.   Discussion

#### A.  Procedural Prerequisites

Plaintiffs have met the procedural requirements set out in *PepsiCo.*   Plaintiffs' motion for default judgment sets forth: (1) Default was entered against AMG on July 8, 2016; (2) Default was entered as to Plaintiffs' complaint; (3) that AMG is not infants or incompetent; (4) the Soldiers' and Sailors' Civil Relief Act of 1940 does not apply; and (5) Defendants have been served with the present application. Dkt. 201.

Thus, the Court finds that Plaintiffs have satisfied the applicable procedural prerequisites for entry of default judgment.   *See* Fed. R. Civ. P. 54, 55; L.R. 55-1; Dkt. 201.

#### B.  Substantive Factors

##### 1.  Merits of Plaintiff's Claims

In accordance with Federal Rule of Civil Procedure 8(b)(6), the well-pleaded allegations of the complaint are deemed true, except for those concerning damages.   Hence, the Court considers the merits of Plaintiffs' substantive claim and the sufficiency of the complaint together.

###### a.  Secondary Copyright Infringement

Plaintiffs' third claim for relief[53] alleges a claim for vicarious and contributory liability.   The Supreme Court acknowledges that "[t]he Copyright Act does not expressly render anyone liable for infringement committed by another," *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 434 (1984), but they have held that "[o]ne infringes contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it."   *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913,

---

[53]  Plaintiffs' first and second claims for relief are not against AMG.

Initials of Preparer                :

                    PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:15-cv-01869-SVW-AJW | Date | November 7, 2016 |
|---|---|---|---|
| Title | *China Central Television et al. v. Create New Technology HK Limited et al.* | | |

930 (2005). In order to establish secondary liability under either theory, plaintiffs first "must establish that there has been direct infringement by third parties." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007). In order to meet this threshold, "a plaintiff who claims copyright infringement must show: (1) ownership of a valid copyright; and (2) that the defendant violated the copyright owner's exclusive rights under the Copyright Act." *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004); *see* 17 U.S.C. § 501(a) (2003).

The *Grokster* court delineated the two categories of contributory liability: "Liability under our jurisprudence may be predicated on actively encouraging (or inducing) infringement through specific acts (as the Court's opinion develops) or on distributing a product distributees use to infringe copyrights, if the product is not capable of 'substantial' or 'commercially significant' noninfringing uses." 545 U.S. at 930 ( Ginsburg, J., concurring) (internal citation omitted).   "A defendant is vicariously liable for copyright infringement if he enjoys a direct financial benefit from another's infringing activity and has the right and ability to supervise the infringing activity." *Ellison*, 357 F.3d at 1076.

Plaintiffs contend that CCTV holds U.S. copyright registrations for their various television programs, Compl. ¶ 41, Ex.'s A, B, and TVB has secured U.S. copyright registrations for their various television programs. Compl. ¶ 56; Exhs. C, D. As such, Plaintiffs allege that they are the legal owners of the exclusive U.S. rights to CCTV's and TVB's Registered Programs. *Id*. ¶¶ 232, 235. Plaintiffs also allege that when TVpad users watch and retransmit Plaintiffs' Registered Programs through a peer-to-peer network, third parties are violating Plaintiffs' exclusive rights under the Copyright Act. Compl. ¶¶ 106, 111-17, 121, 246-47; *see Ellison*, 357 F.3d at 1076.

Moreover, Plaintiffs assert that AMG distributes the TVpad device with the intention of promoting and encouraging its use to infringe on the copyrighted Registered Programs that CCTV and TVB offer. *See* Compl. ¶¶ 178-83. Supporting this assertion, Plaintiffs refer to blog posts that advertise "over 100 different Asian channels and apps to choose from" which include watching live broadcasts from CCTV and TVB programs. Compl. ¶ 182. Plaintiffs claim that AMG sells TVpads on their website—Tvpad.com—for prices ranging from $259-$329 per device. *Id*. ¶¶ 175-76. These TVpads are shipped along with flash drives that contain Infringing TVpad Apps that users can then use to infringe on Plaintiffs' Registered Programs by downloading the appropriate applications. *Id*. ¶ 186. The complaint pleads that AMG's entire business model derives from generating revenue from their infringement of Plaintiffs' programs—by distributing and selling a product that gives TVpad users unauthorized access to Plaintiffs' Registered Programs. Compl. ¶¶ 111, 120-21, 123-24, 135-37. Because Plaintiffs have

_____ : _____

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-01869-SVW-AJW | Date | November 7, 2016 |
|---|---|---|---|
| Title | *China Central Television et al. v. Create New Technology HK Limited et al.* | | |

alleged facts indicating AMG has *encouraged* and *induced* their TVpad consumers to infringe on Plaintiffs' copyrights, they have stated a claim for contributory infringement. *See Grokster*, 545 U.S. at 930. Because Plaintiffs have alleged facts indicating AMG has enjoyed a *direct financial benefit*, they have stated a claim for vicarious infringement. *See Ellison*, 357 F.3d at 1076. Therefore, Plaintiffs have alleged sufficient facts for their claim of secondary copyright infringement.

### b. Trademark Infringement pursuant to the Lanham Act

Plaintiffs' fourth claim for relief alleges trademark infringement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), which states the following:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). "To establish a trademark infringement claim, a plaintiff must show (1) it has valid, protectable trademarks, and (2) that defendant's use of the marks is likely to cause confusion." *Dimas v. Matilde*, No. CV1308840DDPASX, 2015 WL 5768341, at *2 (C.D. Cal. Sept. 30, 2015) (internal quotations omitted).

Initials of Preparer : _____

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:15-cv-01869-SVW-AJW | Date | November 7, 2016 |
|---|---|---|---|
| Title | *China Central Television et al. v. Create New Technology HK Limited et al.* | | |

#### i.    Validity of Trademark

The registration of a trademark provides: (1) "[the] prima facie evidence of the validity of the registered mark"; (2) "the registrant's ownership of the mark"; and (3) "[the] exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration." 15 U.S.C. § 1115(a); *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999). "It is axiomatic in trademark law that the standard test of ownership is priority of use. To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir.), *as modified*, 97 F.3d 1460 (9th Cir. 1996).

Plaintiffs allege that their respective CCTV and TVB logos brand their Registered Programs.  *See* Compl. ¶¶ 44, 48-49, 64-65.   CCTV has the following family of trademarks: (1) CCTV; (2) CCTV AMERICA, Registration No. 4730301; and (3) the stylized CCTV logo.  *Id.* ¶ 48.   Only CCTV's wholly owned direct subsidiary, CICC, is authorized to use the CCTV marks in connection with distributing CCTV programming in the United States.  *Id.* ¶¶ 44, 49.    TVB has the following family of trademarks and service marks: (1) the word mark JADE (Registration No. 2752223); (2) the JADE logo (Registration No. 2831375 and U.S. Application Serial No. 86171201); (3) the word mark TVB (U.S. Application Serial No. 86171162); and (4) the Chinese language word mark for THE JADE CHANNEL (Registration No. 3072394).   *Id.* ¶ 64.   Only TVB's indirect subsidiary, TVB (USA), is authorized to use TVB's trademarks in the United States.  *Id.* ¶ 65.   Because the Court accepts these allegations as true, they constitute prima facie evidence of the validity of CCTV's[54] and TVB's trademarks.

Furthermore, Plaintiffs have sufficiently alleged prior use of their trademarks in commerce. Plaintiffs contend that they been using their respective brands, trademarks, and logos in interstate commerce in connection with television broadcasting, programming, and related entertainment services in the United States well before the actions of the present complaint transpired.  *Id.* ¶¶ 49, 52-53, 68-69. Accordingly, the Court finds that Plaintiffs' trademarks and service marks to be valid.[55]

---

[54]   As stated in the previous Order, the Court stated that "even if the CCTV marks are weak, CCTV has demonstrated that it has a protectable interest in the marks."  Dkt. 158.

[55]   AMG was properly given notice to retain new counsel within twenty-one days, Dkt. 191. On July 7, 2016, AMG's answer

|  |  | : |
|---|---|---|
| Initials of Preparer | | |
| | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-01869-SVW-AJW | Date | November 7, 2016 |
|---|---|---|---|
| Title | *China Central Television et al. v. Create New Technology HK Limited et al.* | | |

ii.    **Likelihood of Confusion**

"The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1214 (9th Cir. 2012) (internal citations omitted).   The Ninth Circuit employs an eight factor test—the *Sleekcraft* factors—in determining the likelihood of confusion.   *Brookfield Commc'ns, Inc.*, 174 F.3d at 1053–54.   "These factors include: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines."   *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008).

However, "in cases involving counterfeit marks, it is unnecessary to perform the step-by-step examination . . . because counterfeit marks are inherently confusing."   *Philip Morris USA Inc. v. Shalabi*, 352 F.Supp.2d 1067, 1073 (C.D. Cal. 2004).   "A trademark is counterfeited if a defendant, without authorization from the trademark owner, uses an original mark or a copy of a mark in connection with the sale of goods."   *Gucci Am., Inc. v. Pieta*, No. CV 04-9626 ABC (MCx), 2006 WL 4725706, *3 (C.D. Cal. Jan. 23, 2006) (internal citations omitted).

Plaintiffs allege that AMG infringed on their trademarks by using exact copies of Plaintiffs' trademarks to advertise, promote and sell TVpad devices on TVpads.com.   Compl. ¶¶ 181-84.   One blog post advertises the ability to watch live broadcasts from "Chinese Central Television or CCTV5."   *Id.* ¶ 182.   Plaintiffs also allege that AMG's unauthorized use of Plaintiffs' trademarks caused consumer confusion regarding Plaintiffs' relationship, authorization, sponsorship, and affiliation with AMG's product and services.   *Id.* ¶¶ 181-84.   Accordingly, Plaintiffs' sufficient allegations establish that AMG did indeed use counterfeit marks—it is unnecessary to perform a step-by-step examination of the likelihood of confusion. *See Shalabi*, 352 F.Supp.2d at 1073.

Because the Court accepts these allegations as true, this Court finds that a *reasonably prudent*

---

was stricken from the record because they failed to do so.   Dkt. 195.   Because AMG has not challenged the validity of Plaintiffs' trademarks or prior use claims, this Court accepts these allegations as true.

:

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-01869-SVW-AJW | Date | November 7, 2016 |
|---|---|---|---|
| Title | *China Central Television et al. v. Create New Technology HK Limited et al.* | | |

*consumer* would likely be confused by AMG's use of Plaintiffs' trademarks and would mistakenly believe there is an association or authorization by the Plaintiffs to stream their Registered Programs on the TVpad devices. Therefore, Plaintiffs' allegations fulfill the last element of a claim for federal trademark infringement and false designation of origin.

For the foregoing reasons, this Court determines that the Plaintiffs have stated a viable trademark infringement claim under the Lanham Act, 15 U.S.C. § 1125(a).

### c. Common Law Trademark Infringement and Violation of Business and Professions Code § 17200

Finally, Plaintiffs' fifth and sixth claims for relief allege common law trademark infringement and violation of California Business and Professions Code § 17200. The Ninth Circuit finds that "federal and state laws regarding trademarks and related claims of unfair competition are substantially congruent." *Int'l Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 916 (9th Cir. 1980); *see Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994) (internal quotations omitted) (Courts in the Ninth Circuit "consistently hold that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are substantially congruent to claims made under the Lanham Act."). California state law trademark infringement claims "are subject to the same test" as federal claims under the Lanham Act. *Jada Toys, Inc.*, 518 F.3d at 632.

As provided by the Lanham Act, "the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks." *Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F.Supp.2d 1013, 1031 (C.D. Cal. 2011) (citing *Smith v. Chanel, Inc.*, 402 F.2d 562, 563 (9th Cir. 1968)), aff'd, 738 F.3d 1085 (9th Cir. 2013). Thus, the same test is applicable under California law. *See Acad. of Motion Picture Arts & Scis. v. Benson*, 15 Cal.2d 685, 692 (1940) (common law unfair competition protects "a similarity which would be likely to deceive or mislead an ordinary unsuspecting customer"); *see also Solid 21, Inc v. Hublot of Am.*, No. CV 11-00468 DMG (JCx), 2015 WL 3756490 *7 (C.D. Cal. June 12, 2015) (addressing Lanham Act and state trademark and unfair competition claims in tandem); *Century 21 Real Estate, LLC v. Ramron Enterp.*, No. 1:14-cv-00788-AWI-JLT, 2015 WL 521350 *7 (E.D. Cal. Feb. 9, 2015) ("claims for trademark infringement and unfair competition under California law are 'subject to the same legal standards' as Lanham Act claims").

As stated above, because federal and state trademark and unfair competition claims are

Initials of Preparer _____ : _____

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:15-cv-01869-SVW-AJW | Date | November 7, 2016 |
|---|---|---|---|
| Title | *China Central Television et al. v. Create New Technology HK Limited et al.* | | |

*substantially congruent*, this Court finds that Plaintiffs' have also stated viable claim for common law trademark infringement and unfair competition, as well as a viable claim for the violation of California Business and Professions Code § 17200.[56]

### 2. Remaining *Eitel* Factors

The *Eitel* factors weigh in favor of granting Plaintiffs' motion for default judgment.

As to the possibility of prejudice factor, AMG was properly served notice of Plaintiffs' complaint on March, 3, 2015 and was given twenty-one days to retain new counsel, which they failed to do.   *See* Compl.; Dkt. 191.   The Defendant has had adequate time to rebuke Plaintiff's allegations and provide an answer, which they have not done.   Given the nature of the alleged infringement, Plaintiffs would be prejudiced if denied an equitable remedy.   Thus, this factor weighs in favor of the Plaintiffs.

As for the merits of the claim and sufficiency of the complaint, the Court has concluded, *supra*, that Plaintiffs have sufficiently pled meritorious claims for secondary copyright infringement, trademark infringement under the Lanham Act, common law trademark infringement, and violation of California Business and Professions Code § 17200.   Thus, these factors weigh in favor of the Plaintiffs.

As to the amount of money at stake, Plaintiffs seek $6,885,000 for copyright damages, $2,145,000 in trademark damages, and $115,625 in attorneys' fees. Ordinarily, in cases where a large sum of money is at stake, this factor weighs in favor of the defendant.   *See Eitel*, 782 F.2d at 1472.   However, if the amount requested has evidentiary support—specifically tailored and proportional to the defendant's misconduct—then default should not be denied because the amount sought is substantial.   *BR North 223, LLC v. Glieberman*, No. 1:10-cv-02153 LJO-BAM, 2012 WL 639500, *5-6 (E.D. Cal. Feb. 27, 2012) (citing *Board of Tr. of the Sheet Metal Workers Health Care Plan v. Superhall Mechanical, Inc.*, No. 10-cv-2212-EMC, 2011 WL 2600898, *2 (N.D. Cal. June 30, 2011).   As discussed *supra*, Plaintiffs have proffered evidence supporting an award of $6,885,000 for copyright damages, $2,145,000 in trademark damages, and $115,625 in attorneys' fees.   Thus, this factor weighs in favor of the Plaintiffs.

As to the possibility of factual disputes, AMG has failed retain new counsel in response to the

---

[56] This Court as previous found AMG liable for Trademark Infringement pursuant to the Lanham Act. *See supra* p. 13-16.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:15-cv-01869-SVW-AJW | Date | November 7, 2016 |
|---|---|---|---|
| Title | *China Central Television et al. v. Create New Technology HK Limited et al.* | | |

Plaintiffs' complaint, and thus, the Court accepts Plaintiffs' allegations as true. Thus, this factor weighs in favor of the Plaintiffs.

As to the possibility of excusable neglect factor, Plaintiffs' allegations, taken as true, reveal AMG's course of conduct to be intentional.   AMG had provided an answer to the complaint originally, but failed to retain new counsel after being properly served notice to do so on May 15, 2016.   Dkt. 191. The possibility of excusable neglect is remote.   Thus, this factor weighs in favor of the Plaintiffs.

Finally, as to the policy in favor of decisions on the merits factor, AMG's failure to respond has made such a decision impractical.    Thus, this factor weighs in favor of the Plaintiffs.

Accordingly, the *Eitel* factors in this case are weighed in favor of granting default judgment.

### C.  Equitable Remedies

#### 1.  Damages for Copyright Infringement

Plaintiffs seek statutory damages for AMG's copyright infringement of their Registered Programs. Section 504 of the Copyright Act permits a copyright owner to recover statutory damages of not less than $750 and not more than $30,000 for the infringement of any one work; in cases of willful infringement, the maximum amount of statutory damages increases to not more than $150,000 per work.   17 U.S.C. §§ 504(c)(1)-(2).   Pursuant to the Copyright Act, 17 U.S.C. § 504, "an infringer of copyright is liable for either—(1) the copyright owner's actual damages and additional profits of the infringer . . . ;or (2) statutory damages."   The copyright owner may elect which form of damages to recover.   *See id*.   Furthermore, the Court has discretion in determining the amount of statutory damages under the Copyright Act." *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994).

The Court considers the following factors in finding the appropriate amount of damages to award: (1) expenses saved by the defendant in avoiding a licensing agreement; (2) profits reaped by defendant in connection with the infringement; (3) revenues lost to the plaintiff ; and (4) willfulness of the infringement.   *Controversy Music v. Shiferaw*, No. C03-5254 MJJ, 2003 WL 22048519, *2 (N.D. Cal. July 7, 2003).

:

Initials of Preparer

PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:15-cv-01869-SVW-AJW | Date | November 7, 2016 |
|---|---|---|---|
| Title | *China Central Television et al. v. Create New Technology HK Limited et al.* | | |

Plaintiffs seek an award of $6,885,000 in statutory damages—$15,000 for each of the 459 copyrighted episodes that AMG infringed upon under the Copyright Act.   *See* Braak Decl. ¶¶ 74-75; Tsang Decl. ¶¶ 25-26; Ex. 92.

Regarding the expenses saved in avoiding a license agreement, Plaintiffs allege that AMG would have had to pay the Plaintiffs $243,690 in total—$30-per-user licensing fee for the 8,123 TVpad devices AMG sold from June 2013 to July 2015.   McCauley DJ Decl. ¶ 54.

Regarding AMG's profits reaped from the infringement, Plaintiffs allege, based on AMG's sales records, that AMG generated $2,145,000 in sales revenue—approximately half of which occurred after receiving the first cease and desist letter in November 2014.   Wukoson Decl. ¶ 7.

Regarding Plaintiffs' lost revenue, Plaintiffs assert that U.S. residents would have to pay $15 per month for a CCTV package and $30 per month for a TVB package.   Kuelling Decl. ¶¶ 7-8, 10-11. This would amount to subscription[57] revenues ranging from $2,558,745 (8,123 TVpad devices x $15 CCTV monthly subscription x 24 months) to $5,848,560 (8,123 TVpad devices x $30 monthly TVB subscription x 24 months).   *Id.*

Lastly, regarding AMG's willfulness of infringement, Plaintiffs have adequately established AMG's willfulness, adducing that AMG infringed upon Plaintiffs' work by shipping the TVpad devices—capable of illegally streaming, recording, and retransmitting Plaintiffs' Registered Programs—along with flash drives that gave TVpad consumers a shortcut to downloading the requisite applications to infringe on Plaintiffs' copyrighted work.   *See* Compl. ¶¶ 41, 114.   Plaintiffs have further established AMG's willfulness by showing that two pre-litigation cease and desist letters were sent to AMG on November 20, 2014 and December 19, 2014, yet AMG ceased sales of the TVpad devices in June 2015.   *See* Wukoson Decl. ¶ 8.   Thus, the Court finds that AMG was *willfully blind* to Plaintiffs' copyright rights before the November 2014 cease and desist letter and *actually aware* of their infringing activity after receipt of the letter.   *See Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 944 (9th Cir. 2011) ("To prove 'willfulness' under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the

---

[57]   The length of a typical contract is 24 months.   *See* Kuelling Decl. ¶ 4.

Initials of Preparer                :

                                     PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:15-cv-01869-SVW-AJW | Date | November 7, 2016 |
|---|---|---|---|
| Title | *China Central Television et al. v. Create New Technology HK Limited et al.* | | |

defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights.").

In the previous Order, the Honorable Judge Morrow granted statutory damages of $15,000 per infringing work.  Dkt. 158 at 34.  Because the Court finds AMG's conduct to be equally culpable as the prior defendants',[58] we adopt the same statutory damage standard.  For the foregoing reasons, this Court grants Plaintiffs an award of $6,885,000 in statutory damages.

### 2. Damages for Trademark Infringement

Plaintiffs next seek damages for AMG's trademark infringement pursuant to 15 U.S.C. § 1117(a).  Section 1117 of the Lanham Act states that plaintiffs are entitled to recover defendant's profits, and "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only."  *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 514 (9th Cir. 1985); *see also Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1084 (C.D. Cal. 2012) (internal citation omitted) ("With respect to Defendants' profits, Plaintiff is required to prove only sales; had Defendants mounted a defense, they would have carried the burden of showing deductions.").  After the plaintiff has proven revenue, the burden then shifts to the defendant to prove any deductions and resolve any possible discrepancy or doubt relative to the computation of costs or profits.  *See id.* (internal citations omitted).

In support of their damages request, Plaintiffs have proffered evidence—based on AMG's own sales record—that AMG grossed approximately $2,145,000 in sales revenue.  Wukoson Decl. ¶ 7.  Furthermore, Plaintiffs argue that the crux of AMG's business model was centered on using Plaintiffs' trademarks in advertising, promoting, and selling TVpad devices .  AMG's FAQ page states the following: "How does the TVpad differ from other TV Boxes that are available? The fees and charges differ. At the moment, most of the similar products have monthly subscription fees. You could find that your 12 month bill is more than the cost for the TVpad outright."  *See* Lau Decl. ¶ 27; Ex. 81 at p. 8.

Essentially, Plaintiffs present the same evidence in support of their request for trademark damages under the Lanham Act as they do in support of their argument for statutory damages pursuant to the Copyright Act.  As stated in the previous Order, Ninth Circuit law does not deem an award of trademark damages as an impermissible double recovery—relative to the award of copyright damages.  *See*

---

[58]  The Court granted Plaintiffs' motion for default judgment as to the other Defendants on December 7, 2015.  Dkt. 158.

Initials of Preparer

: _____

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-01869-SVW-AJW | Date | November 7, 2016 |
|---|---|---|---|
| Title | *China Central Television et al. v. Create New Technology HK Limited et al.* | | |

*Nintendo of Am.*, 40 F.3d at 1011 ("[I]t is clear enough that, when a defendant violates both the Copyright Act and the Lanham Act, an award of both types of damages is appropriate.").   For the foregoing reasons, this Court grants the Plaintiffs an award of $2,145,000.

### 3. Injunctive Relief

Lastly, Plaintiffs seek a permanent injunction under the Copyright and Lanham Acts enjoining AMG "and their officers, agents, servants, and employees and all those in active concert or participation with them, from (i) publically performing, transmitting, distributing, and/or reproducing Plaintiffs' Copyrighted Works; (ii) inducing, encouraging, causing, facilitating, and/or materially contributing to the unauthorized public performance, transmission, distribution, and/or reproduction of Plaintiffs' Copyrighted Works by others; (iii) infringing Plaintiffs' trademarks and service marks; or (iv) engaging unfair competition."   Compl. at 73.

Pursuant to the Lanham Act,   15 U.S.C. § 1117(a), courts have "power to grant injunction according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant registered in the Patent and Trademark office."   Similarly, pursuant to the Copyright Act, 17 U.S.C. § 502(a), courts may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."

Before a court grants a permanent injunction, plaintiffs must first satisfy a four-factor test.   *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).   "A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."   *Id*. (internal citations omitted).

Regarding the irreparable harm and inadequate remedies, Plaintiffs have sufficiently established that absent an injunction, TVpad consumers and users may believe that AMG is explicitly or implicitly authorized to stream Plaintiffs' Registered Programs.   Moreover, the general public may be misled in buying a device that promotes and induces copyright and trademark infringement, which *irreparably harms* the Plaintiffs' brands, goodwill, and reputation.   *See Sennheiser Elec. Corp. v. Eichler*, No. CV 12-10809 MMM PLAX, 2013 WL 3811775, at *10 (C.D. Cal. July 19, 2013) ("[T]he injury caused by the

|  |  | : |  |
|---|---|---|---|
| | Initials of Preparer | | |
| | | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-01869-SVW-AJW | Date | November 7, 2016 |
|---|---|---|---|
| Title | *China Central Television et al. v. Create New Technology HK Limited et al.* | | |

presence of infringing products in the market—such as lost profits and customers, as well as damage to goodwill and business reputation—will often constitute irreparable injury."). Although AMG ceased selling the TVpad devices in June 2015, Plaintiffs have sufficiently established that absent an injunction, Plaintiffs would have *inadequate remedies* as to prevent AMG from resuming their prior activity. Additionally, AMG's lack of participation in this matter fails to give the court satisfactory assurance that their interference with Plaintiffs' exclusive copyright and trademark rights will not reboot in the future. *See Warner Bros. Home Entm't Inc. v. Jimenez*, No. CV 12-9160 FMO JEMX, 2013 WL 3397672, at *7 (C.D. Cal. July 8, 2013) ("Defendant's failure to appear also suggests that defendant's infringing activities will not cease absent judicial intervention."). Accordingly, both factors weigh in favor of granting a permanent injunction.

Regarding the balance of hardship, Plaintiffs have sufficiently established their hardship based on the same reasons they would also suffer irreparable harm absent an injunction. AMG has not participated in this matter, and thus, has not provided any injury or hardship they would suffer if an injunction is granted. Furthermore, the Court cannot speculate as to an AMG hardship besides prohibiting further copyright and trademark infringement from their TVpad devices. *See Warner Bros. Home Entm't*, 2013 WL 3397672, at *7 ("[T]he balance of hardships tips in plaintiff's favor because defendant faces no cognizable hardship in refraining from future infringement of plaintiff's copyrighted works."). Accordingly, after balancing the hardship, this factor weighs in favor of granting a permanent injunction.

Regarding the public interest factor, it is well-established that courts of equity "often define the public interest at stake as the right of the public not to be deceived or confused." *CytoSport, Inc. v. Vital Pharm., Inc.*, 617 F.Supp.2d 1051, 1081 (E.D. Cal. 2009). When the defendant's continued usage of "plaintiff's trademark without authorization is likely to cause confusion, the public interest is damaged by the defendant's use." *Sennheiser Elec. Corp.*, 2013 WL 3811775, at *11 (quoting *AT & T Corp. v. Vision One Sec. Sys.*, No. 95–0565–IEG (BTM), 1995 WL 476251, *7 (S.D.Cal. July 27, 1995)). "[T]he public interest lies in the enforcement of the principles recognized by Congress in creating the [Copyright and Lanham] Acts, especially the prevention of consumer confusion." *Microsoft Corp. v. Atek 3000 Computer Inc.*, No. 06CV6403(SLT)(SMG), 2008 WL 2884761, at *6 (E.D.N.Y. July 23, 2008). Accordingly, this factor weighs in favor of the Plaintiffs.

Plaintiffs have demonstrated that it would be appropriate to enter an injunction: (1) permanently enjoining AMG from broadcasting, advertising, distributing, offering for sale, or selling, whether directly or indirectly, plaintiffs' copyrighted works, including works bearing Plaintiffs' trademarks or trade names

_____ : _____

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-01869-SVW-AJW | Date | November 7, 2016 |
|---|---|---|---|
| Title | *China Central Television et al. v. Create New Technology HK Limited et al.* | | |

that are confusingly similar to the trademarks, trade names, designs, or logos of Plaintiffs; (2) permanently
enjoining AMG from using Plaintiffs' marks or any copy, reproduction, or colorable imitation, or
confusingly similar simulation of Plaintiffs' marks on or in connection with the promotion, advertising,
distribution, manufacture or sale of defendants' goods; and (3) ordering AMG to cancel, withdraw, and
recall all promotions and advertisements bearing Plaintiffs' marks or confusingly similar simulation of the
marks, that have been published or placed by AMG.   An injunction of this type directly addresses the
infringing conduct in which AMG has engaged.   The court therefore finds that it is narrowly tailored to
redress the harm plaintiffs continue to suffer.   *See Microsoft Corp. v. Evans*, No.
1:06CV01745-AWI-SMS, 2007 WL 3034661, at \*13 (E.D. Cal. Oct. 17, 2007) ("Generally an injunction
must be narrowly tailored to remedy only the specific harms shown by the plaintiffs.").

For the foregoing reason, this Court GRANTS a permanent injunction enjoining AMG from using
Plaintiffs' marks and copyrights in connection with the advertising, promoting, offering for sale, or selling
of their products.

### 4. Attorneys' Fees and Costs

Pursuant to the Lanham Act and the Copyright Act, courts have discretion to allow a prevailing
party to recover its costs and reasonable attorneys' fees.   *See* 15 U.S.C. § 1117(a); 17 U.S.C. § 505.   Rule
55-3 provides that fees shall be calculated at $5,600 plus 2% of the judgment over $100,000.   CA CD L.R.
55-3.   As such, this amounts to $5,600 + ($9,030,000 - $100,000) x 2% = *$184,200*.   Plaintiffs request
$115,625 in attorneys' fees, well below the scheduled amount per Local Rule 55-3.   *See* McCauley Decl.
¶¶ 19-21; Ex.'s 5, 6.   Plaintiffs will submit an Application to Tax Costs following the entry of judgment
pursuant to Local Rule 54. Accordingly, this Court GRANTS Plaintiffs' request for $115, 625 in
attorneys' fees.

### 5. Post-Judgment Interest

Pursuant to 28 U.S.C. §1961, "the award of post judgment interest on a district court judgment
is mandatory." *Barnard v. Theobald*, 721 F.3d 1069, 1078 (9th Cir. 2013).   As published by the Board
of Governors of the Federal Reserve System, post-judgment interest accrues at a rate equal to the weekly
average 1-year constant maturity treasury yield for the calendar week preceding this judgment.   28
U.S.C. § 1961(a).   The rate for the week ending October 31 was .66%.   The Court will therefore award
post-judgment interest at a rate from and after November 8, 2016.

_____ : _____

Initials of Preparer

PMC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:15-cv-01869-SVW-AJW | Date | November 7, 2016 |
|----------|------------------------|------|------------------|
| Title | *China Central Television et al. v. Create New Technology HK Limited et al.* | | |

### V.      Conclusion

For the foregoing reasons, the Court GRANTS Plaintiffs' motion for default judgment. The Court AWARDS the Plaintiffs $9,030,000.00 in copyright and trademark damages, and $115,625.00 in attorneys' fees.   Accordingly, the Court GRANTS Plaintiffs' request for injunctive relief.

The prevailing party shall submit a proposed judgment consistent with this order.

IT IS SO ORDERED.

_____          :  _____

Initials of Preparer

PMC