SEAN M. SULLIVAN (State Bar No. 229104)
  seansullivan@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Tel.: (213) 633-6800 Fax: (213) 633-6899

ROBERT D. BALIN (*pro hac vice*)
  robbalin@dwt.com
LACY H. KOONCE, III (*pro hac vice*)
  lancekoonce@dwt.com
SAMUEL BAYARD (*pro hac vice*)
  samuelbayard@dwt.com
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas
New York, New York 10020
Tel.: (212) 489-8230 Fax: (212) 489-8340
ATTORNEYS FOR PLAINTIFFS

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHINA CENTRAL TELEVISION, a China company; CHINA INTERNATIONAL COMMUNICATIONS CO., LTD., a China company; TVB HOLDINGS (USA), INC., a California corporation; and DISH NETWORK L.L.C., a Colorado corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> CREATE NEW TECHNOLOGY (HK) LIMITED, a Hong Kong company; HUA YANG INTERNATIONAL TECHNOLOGY LIMITED, a Hong Kong company; SHENZHEN GREATVISION NETWORK TECHNOLOGY CO. LTD., a China company; CLUB TVPAD, INC., a California corporation; BENNETT WONG, an individual, ASHA MEDIA GROUP INC. d/b/a TVPAD.COM, a Florida corporation; AMIT BHALLA, an individual; NEWTVPAD LTD. COMPANY d/b/a NEWTVPAD.COM a/k/a TVPAD USA, a Texas corporation; LIANGZHONG ZHOU, an individual; HONGHUI CHEN d/b/a E-DIGITAL, an individual; JOHN DOE 1 d/b/a BETV; JOHN DOE 2 d/b/a YUE HAI; JOHN DOE 3 d/b/a 516; JOHN DOE 4 d/b/a HITV; JOHN DOE 5 d/b/a GANG YUE; JOHN DOE 6 d/b/a SPORT ONLINE; JOHN DOE 7 d/b/a GANG TAI WU XIA; and JOHN DOES 8-10, <br><br> Defendants. | Case No. **CV 15-1869 SVW (AJWx)** <br><br> **NOTICE OF MOTION AND MOTION TO HOLD THIRD PARTIES AZURE TECHNOLOGY CO., LTD.; ZERO DDOS LLC; AND CLEARDDOS TECHNOLOGIES IN CONTEMPT** <br><br> [[Proposed] Order and Declarations of Wukoson and Braak submitted concurrently] <br><br> Date: November 27, 2017 <br> Time: 1:30 p.m. <br> Courtroom: 10A <br> Judge: Hon. Stephen V. Wilson <br><br> Complaint Filed: March 13, 2015 |

## TABLE OF CONTENTS

                                                                  **Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

I. INTRODUCTION ................................................................................. 1

II. FACTUAL BACKGROUND ................................................................ 2

III. ARGUMENT ......................................................................................... 6

    A. Standard for Determining Civil Contempt. ......................................... 6

    B. Plaintiffs Have Produced Clear and Convincing Evidence of the Non-Compliant ISPs' Wholesale Failure to Comply with This Court's Permanent Injunction Order. .......................................... 7

        1. The Court's Permanent Injunction Order Is Clear and Definite. ........................................................................................ 8

        2. The Non-Compliant ISPs Received Notice of the Permanent Injunction Order, But They Have Failed and/or Refused to Remove or Disable Infringing Content Used by the Enjoined Parties. .................................... 8

    C. The Non-Compliant ISPs' Refusal to Obey the Court's Permanent Injunction Order Merits A Finding of Contempt, and Imposition of Coercive Sanctions for Continued Non-Compliance. ......................................................................................... 9

        1. A $1,000 Daily Coercive Fine is Appropriate. ...................... 10

        2. An Award of Attorneys' Fees is Appropriate ....................... 10

IV. CONCLUSION ................................................................................... 11

i

MOTION FOR CONTEMPT
4831-7431-7644v.4 0094038-000021

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bademyan v. Receivable Management Services Corp.*,
  Case No. CV 08-00519 MMM, 2009 WL 605789 (C.D. Cal. Mar. 9, 2009) .................................................................................................. 7, 10

*Balla v. Idaho State Bd. of Corrections*,
  869 F2d 461 (9th Cir. 1989) ................................................................................ 7

*BOLDFACE Licensing + Branding v. By Lee Tillett, Inc.*,
  No. CV1210269ABCPJWX, 2014 WL 12558005, at *3 (C.D. Cal. Mar. 20, 2014) ................................................................................................ 6

*China Cent. Television v. Create New Tech. (HK) Ltd.*,
  No. CV151869MMMAJWX, 2015 WL 6755188 (C.D. Cal. Nov. 4, 2015) ................................................................................................................ 11

*Citizens for Lawful and Effective Attendance Policies v. Sequoia Union High School District*,
  No. C 87-3204 MMC, 1998 WL 305513 (N.D. Cal. June 4, 1998) ..................... 9

*Donovan v. Mazzola*,
  716 F.2d 1226 (9th Cir. 1983) ............................................................................ 7

*Fed. Trade Comm'n v. Productive Mktg., Inc.*,
  136 F. Supp. 2d 1096 (C.D. Cal. 2001) ............................................................ 10

*General Signal Corporation v. Donallco, Inc.*,
  787 F.2d 1376 (9th Cir. 1986) ............................................................................ 9

*Gifford v. Heckler*,
  741 F.2d 263 (9th Cir. 1984). Civil .................................................................... 6

*HM Elecs., Inc. v. R.F. Techs., Inc.*,
  No. 12CV2884-BAS (MDD), 2014 WL 12102169 (S.D. Cal. Dec. 16, 2014) ........................................................................................................ 10

*Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.*,
  539 F.3d 1039 (9th Cir. 2008) .......................................................................... 10

*Portland Feminist Women's Health Center v. Advocates for Life, Inc.*,
  877 F2d 787 (9th Cir. 1989) ........................................................................ 9, 10

ii

MOTION FOR CONTEMPT
4831-7431-7644v.4 0094038-000021

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*United States v. United Mine Workers of America*,
  330 U.S. 258 (1947) .................................................................................................. 9

*Whittaker Corp. v. Execuair Corp.*,
  953 F.2d 510 (9th Cir. 1992) ..................................................................................... 9

*Wolfard Glassblowing Co. v. Vanbragt*,
  118 F.3d 1320 (9th Cir. 1997) ............................................................................... 7, 8

iii

MOTION FOR CONTEMPT
4831-7431-7644v.4 0094038-000021

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on November 27, 2017 at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 10A of the Honorable Stephen V. Wilson, located at 350 W. 1st Street, 10th Floor, Los Angeles, California, Plaintiffs China Central Television, China International Communications Co., Ltd., TVB Holdings (USA), Inc., and DISH Network L.L.C. (collectively "Plaintiffs") will and hereby do move this Court to hold the third-party internet service providers Azure Technology Co., Ltd. ("Azure Tech"), ZERO DDOS LLC ("Zero DDOS"), and ClearDDoS Technologies ("Clear DDOS") (collectively, the "Non-Compliant ISPs") in contempt of this Court's Second Amended Order Granting Plaintiffs' Motion for Default Judgment and Permanent Injunction [ECF No. 214] (the "Permanent Injunction Order").

As set forth in the accompanying declarations and memorandum of points and authorities, Plaintiffs are entitled to an order finding the Non-Compliant ISPs in willful contempt of the Permanent Injunction Order since each of the Non-Compliant ISPs received actual notice of the Permanent Injunction Order no later than May 22, 2017, and yet each of the Non-Compliant ISPs has refused to obey the Permanent Injunction Order. Specifically, in violation of the Permanent Injunction Order, each of the Non-Compliant ISPs continues to host digital content used by Defendants Create New Technology (HK) Limited and Hua Yang International Technology Limited ("Defendants") and other Enjoined Parties[1] to infringe Plaintiffs' copyrighted TV programming.

---

[1] As defined in the Permanent Injunction Order, the "Enjoined Parties" are Defendants, and all of their parents, subsidiaries, affiliates, officers, agents, servants and employees, and all those persons or entities acting in active concert or participation with Defendants (including but not limited to parties that procure or provide sales, distribution, shipping or logistics services, primary and backup storage services, or web, server or file hosting services on behalf of Defendants, including but not limited to those parties listed in Exhibits C and D to the Permanent Injunction

MOTION FOR CONTEMPT
4831-7431-7644v.4 0094038-000021

1

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Accordingly, Plaintiffs seek entry of an order (the "Compliance Order") (a) holding each of the Non-Compliant ISPs in contempt of court; (b) directing that each Non-Compliant ISP promptly comply with the Permanent Injunction Order; (c) assessing against each of the Non-Complaint ISPs the attorneys' fees and costs Plaintiffs have incurred in making this motion; and (d) directing that any Non-Compliant ISP that fails to comply with the Permanent Injunction Order within five (5) court days of receiving notice of the Compliance Order shall pay to the Court a fine of $1,000 per day until such time as that Non-Compliant ISP complies with the Permanent Injunction Order.

As detailed in the attached declarations and exhibits, counsel for Plaintiffs informed all the Non-Compliant ISPs that their failure to comply with the Permanent Injunction Order could result in Plaintiffs potentially seeking relief from the Court and their being held in contempt. Two of the Non-Compliant ISPs originally responded to Plaintiffs' communications, but have since stopped responding to Plaintiffs' communications entirely. One of the Non-Compliant ISPs never responded to Plaintiffs' communications. Thus, counsel for Plaintiffs have been unable to conduct a conference of counsel pursuant to L.R. 7-3.

///

Order) and all persons and entities who receive actual notice of the Permanent Injunction Order. (Permanent Injunction Order at 5, ¶ 9.)

2

MOTION FOR CONTEMPT
4831-7431-7644v.4 0094038-000021

This Motion is based upon this Notice, the Memorandum of Points and Authorities, the Declarations of George P. Wukoson and Nicholas Braak, Exhibits 1 through 26, and any additional evidence and arguments as may be presented at or before any hearing on this matter.

DATED: October 17, 2017

DAVIS WRIGHT TREMAINE LLP
SEAN M. SULLIVAN
ROBERT D. BALIN (*pro hac vice*)
LACY H. KOONCE, III (*pro hac vice*)
SAMUEL BAYARD (*pro hac vice*)

By: /s/Sean M. Sullivan
Sean M. Sullivan

Attorneys for Plaintiffs
CHINA CENTRAL TELEVISION; CHINA INTERNATIONAL COMMUNICATIONS CO., LTD.; TVB HOLDINGS (USA), INC.; AND DISH NETWORK L.L.C.

MOTION FOR CONTEMPT
4831-7431-7644v.4 0094038-000021

3

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

As this Court knows, this lawsuit concerns massive ongoing copyright and trademark infringement by Defendants, who develop, sell, and operate infringing software applications ("Infringing Apps") on set-top box devices known as TVpad and blueTV, and who transmit infringing video of Plaintiffs' copyrighted television programs to those Infringing Apps over the internet. Defendants could not accomplish any of this infringement without using the services of numerous third-party internet service providers ("ISPs"). Defendants particularly rely on third parties to host their infringing content and provide other related data storage and delivery services. These third party ISPs provide the servers and connections that Defendants must use to store and deliver infringing streaming video and updates to the Infringing Apps, among other things. For this reason, the Permanent Injunction Order (and an earlier Preliminary Injunction) granted by this Court [ECF No. 214] contains provisions that expressly prohibit ISPs and other third parties who receive notice from providing hosting services for the infringing content. While the Defendants have defaulted and have flagrantly ignored and violated this Court's injunctions, Plaintiffs have obtained largely effective enforcement of this Court's injunctions by serving them on third party ISPs.

Although most third-party ISPs have obeyed this Court's injunctions, the Non-Compliant ISPs—Azure Tech, Zero DDOS, and Clear DDOS—have continually ignored and refused to comply with those injunctions. These Non-Compliant ISPs have been given ample and repeated notice of the Preliminary Injunction and the Permanent Injunction Order, and have taken zero steps to comply with them. Instead, the Non-Compliant ISPs have responded to Plaintiffs by merely stating that they have informed their customers—Defendants and other Enjoined Parties—of Plaintiffs' demands for compliance. When Plaintiffs have patiently explained to the

1

MOTION FOR CONTEMPT
4831-7431-7644v.4 0094038-000021

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Non-Compliant ISPs that this does not satisfy the injunctions, the Non-Compliant ISPs have responded with silence and evasion. The Non-Compliant ISPs have thus plainly and willfully refused to accord any respect to this Court and its orders. The Court should therefore enter the Compliance Order, holding the Non-Compliant ISPs in contempt, directing that they immediately comply, awarding Plaintiffs their attorneys' fees in making this motion, and fining the Non-Compliant ISPs $1,000 per day in the event of further non-compliance.

## II. FACTUAL BACKGROUND

On June 11, 2015, this Court issued a Preliminary Injunction [ECF No. 98] ("Preliminary Injunction"). Thereafter, the Court also issued a series of permanent injunctions (each amending the last) against the Defendants (who manufacture the TVpad device and a Comparable System[2] known as the blueTV device) and other Enjoined Parties culminating in the Permanent Injunction Order, issued on May 10, 2017 [ECF No. 214].

The Permanent Injunction Order permanently enjoins Defendants and other Enjoined Parties from, among other things: distributing and advertising TVpad devices and blueTV devices; distributing and advertising Infringing TVpad Apps and similarly infringing blueTV apps; providing or controlling servers hosting infringing copies of Plaintiffs' copyrighted TV programming; technologically assisting with streaming of infringing copies of Plaintiffs' copyrighted TV programming; and otherwise infringing Plaintiffs' rights in their copyrighted TV programming. (Permanent Injunction Order at 5–7, ¶ 9.) The Permanent Injunction Order also permanently enjoins Defendants and other Enjoined Parties from encouraging or soliciting others to: transmit, reproduce, or offer transmissions of Plaintiffs'

---

[2] As defined in the Permanent Injunction Order, a "Comparable System" means any device, data transmission service or application that provides users unauthorized access to Plaintiffs' copyrighted programming, using any peer to peer or internet based transmission, file sharing or content delivery technology, including but not limited to the blueTV device. Permanent Injunction Order at 3, ¶ 1(g).

2
MOTION FOR CONTEMPT
4831-7431-7644v.4 0094038-000021

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

copyrighted TV programming; or upload, post, or index any files that constitute or point to Plaintiffs' copyrighted TV programming. (Permanent Injunction Order at 7, ¶ 10.)

Recognizing that Defendants conduct their internet-based infringing activities through the use of third-party ISPs, the Permanent Injunction Order also contains provisions that expressly enjoin ISPs and other third parties who receive notice of the Permanent Injunction Order. These provisions state as follows:

> "Third parties providing web, server and file hosting services, data center and colocation services, and primary and backup storage services (including but not limited to cloud storage services) used in connection with the activities enjoined . . . hereinabove, including but not limited to the third parties providing hosting services for the Internet servers identified in **Exhibit C** hereto (including but not limited to servers providing streaming video, application files, TVpad Store functionality, and TVpad Device initialization, operation and authentication) and who receive actual notice of this Order, are immediately and permanently enjoined from providing such hosting services to (i) any Enjoined Parties in connection with the activities enjoined . . . hereinabove; (ii) any server, IP address, domain name or website used in conjunction with the TVpad Device, Infringing TVpad Apps or any Comparable System; and (iii) the TVpad Websites.
>
> Third parties providing services used in connection with the activities enjoined . . . hereinabove, including but not limited to back-end service providers, service providers routing traffic or providing bandwidth, content delivery networks and domain name server systems (including but not limited to CloudFlare and DNSPod), search-based online advertising services (such as through paid inclusion, paid search results, sponsored search results, sponsored links, and Internet keyword advertising), domain name registration privacy protection services, providers of social media services (including but not limited to Facebook and Twitter), user generated and online content services (including but not limited to YouTube) and data security services (including but not limited to denial-of-service attack prevention, firewall and proxy services), who receive actual notice of this Order are permanently enjoined from providing such services to: (i) any Enjoined Parties in connection with the activities enjoined . . . hereinabove; (ii) any server, IP address, domain name or website used in conjunction with the TVpad Device, Infringing TVpad Apps or any Comparable System; and (iii) the TVpad Websites."

(Permanent Injunction Order at 9–10, ¶¶ 16–17 (emphasis in original).)

The Permanent Injunction Order explicitly identifies Azure Tech, Zero DDOS, and Clear DDOS in Exhibit C. (Permanent Injunction Order Ex. C.)

MOTION FOR CONTEMPT
4831-7431-7644v.4 0094038-000021

3

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Each of these Non-Compliant ISPs has received repeated notices of the Permanent Injunction Order, and in some cases prior injunctions in this action, as follows:

On October 12, 2015, Plaintiffs sent Clear DDOS a copy of the Preliminary Injunction, notified Clear DDOS of the terms of the Preliminary Injunction binding on it, and requested that Clear DDOS cease providing hosting services to the Enjoined Parties in connection with their infringing activities. (Declaration of George P. Wukoson ("Wukoson Decl."), dated October 12, 2017 ¶ 7.) A "Nico Zheng" responded to say only, "We have inform user to check, thanks." (*Id.* ¶ 8.) When Plaintiffs reiterated in writing that this Court's Preliminary Injunction required that Clear DDOS cease providing services to the Enjoined Parties, Mr. Zheng responded evasively and refused to comply:

> "We will fully assist for your request. However, we have no idea about the clients content if there's any copyright issue. And we also has contract and SLA with the client. So its [sic] not that easy for us to simply shutdown all their service just based your email notice. We will escalate this issue to the client, hopefully to get this issue be fixed asap."

(*Id.* ¶ 9.) Plaintiffs sent Mr. Zheng another demand that Clear DDOS comply with the Preliminary Injunction, but Clear DDOS did not respond. (*Id.*)

On May 22, 2017, Plaintiffs sent Clear DDOS a copy of the Permanent Injunction Order, notified Clear DDOS of the terms of the Permanent Injunction Order binding on it, and requested that Clear DDOS cease providing hosting services to the Enjoined Parties in connection with their infringing activities. (*Id.* ¶ 10.) Even though Plaintiffs addressed this May 2017 correspondence to the same email and physical addresses as Plaintiffs' prior correspondence that elicited a response from Mr. Zheng, Clear DDOS entirely ignored this May 2017 correspondence, follow-up correspondence from Plaintiffs, and the Court's Permanent Injunction Order. (*Id.* ¶¶ 10–11.)

Azure Tech is the alter ego of a company called Cloud DDOS Technology Co., Limited ("Cloud DDS"). (Declaration of Nick Braak ("Braak Decl."), dated

4

MOTION FOR CONTEMPT
4831-7431-7644v.4 0094038-000021

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

October 12, 2017, ¶ 7.) On October 12, 2015, Plaintiffs sent Cloud DDOS a copy of the Preliminary Injunction, notified Cloud DDOS of the terms of the Preliminary Injunction binding on it, and requested that Cloud DDOS cease providing hosting services to the Enjoined Parties in connection with their infringing activities. (Wukoson Decl. ¶ 14.) Nico Zheng also responded to this email to similarly state, "we have inform our user to check, thanks." (*Id.* ¶ 15.) In response, Plaintiffs sent an email to Mr. Zheng to reiterate that Cloud DDOS could not comply with the Preliminary Injunction merely by notifying its customers of it. (*Id.*)

On May 22, 2017, Plaintiffs sent Azure Tech a copy of the Permanent Injunction Order, notified Azure Tech of the terms of the Permanent Injunction Order binding on it, and requested that Azure Tech cease providing hosting services to the Enjoined Parties in connection with their infringing activities. (*Id.* ¶ 16.) Having received no response, Plaintiffs sent follow-up emails to Azure Tech in June and July 2017, again demanding that Azure Tech comply with the Permanent Injunction Order and notifying Azure Tech of additional IP addresses of Azure Tech servers the Enjoined Parties were using to carry out their infringement. (*Id.* ¶ 17.) Azure Tech's only response was to state it had notified its users of the issue. (*Id.* ¶ 18.) When Plaintiffs once again informed Azure Tech that it was clearly violating the Permanent Injunction Order, Azure Tech did not respond. (*Id.* ¶ 19.)

On October 12, 2015, Plaintiffs sent Zero DDOS a copy of the Preliminary Injunction, notified Zero DDOS of the terms of the Preliminary Injunction binding on it, and requested that Zero DDOS cease providing hosting services to the Enjoined Parties in connection with their infringing activities. (*Id.* ¶ 21.) Zero DDOS never responded to this letter. (*Id.*) On May 22, 2017, Plaintiffs sent Zero DDOS a copy of the Permanent Injunction Order, notified Zero DDOS of the terms of the Permanent Injunction Order binding on it, and requested that Zero DDOS cease providing hosting services to the Enjoined Parties in connection with their infringing activities. (*Id.* ¶ 22.) Plaintiffs received confirmations that this May 22nd letter was delivered to

5

MOTION FOR CONTEMPT
4831-7431-7644v.4 0094038-000021

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Zero DDOS. (*Id.* ¶ 22, Exs. 25-26.) Having received no response, Plaintiffs then sent a follow-up email to Zero DDOS on June 1, 2017. (*Id.* ¶ 23.) Zero DDOS has never responded to any of Plaintiffs' correspondence. (*Id.* ¶ 19.)

From July through September 2017, Plaintiffs' investigator Nicholas Braak tested several TVpad and blueTV devices to determine which, if any, third party ISPs were still hosting digital content used by the TVpad and blueTV devices and their Infringing Apps to stream infringing video of Plaintiffs' copyrighted TV programming. (Braak Decl. ¶ 5, Ex. 2.) During this period, Mr. Braak's testing consistently showed that, despite having received the Permanent Injunction orders, each of the Non-Compliant ISPs is continuing to host digital content used by the TVpad and blueTV devices and their Infringing Apps to stream infringing video of Plaintiffs' copyrighted TV programming. (*Id.* ¶ 6, Ex. 2.)

In sum, Plaintiffs have given Clear DDOS, Azure Tech, and Zero DDOS repeated and ample notice of the Permanent Injunction Order and earlier injunctions entered in this action. Despite having received repeated notices of this Court's Permanent Injunction Order, the Non-Compliant ISPs continue to host infringing TV content for the Enjoined Parties in flagrant violation of the Permanent Injunction Order.

### III. ARGUMENT

A finding of contempt against the Non-Compliant ISPs and imposition of coercive penalties and attorneys' fees is clearly warranted.

#### A. Standard for Determining Civil Contempt.

"A court has wide latitude in determining whether there has been contemptuous defiance of its order." *Gifford v. Heckler*, 741 F.2d 263, 266 (9th Cir. 1984). "Civil contempt occurs when a party disobeys a specific and definite court order by failing to take all reasonable steps within its power to comply." *BOLDFACE Licensing + Branding v. By Lee Tillett, Inc.*, No. 12 Civ. 10269 (ABC) (PJWX), 2014 WL 12558005, at *3 (C.D. Cal. Mar. 20, 2014).

6

MOTION FOR CONTEMPT
4831-7431-7644v.4 0094038-000021

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

"The party moving for contempt bears the burden of establishing by clear and convincing evidence that the contemnor has violated a specific and definite order of the court." *Bademyan v. Receivable Management Services Corp.*, Case No. CV 08-00519 MMM (RZx), 2009 WL 605789, at *2 (C.D. Cal. Mar. 9, 2009) (citing *Wolfard Glassblowing Co. v. Vanbragt*, 118 F.3d 1320, 1322 (9th Cir. 1997); *Balla v. Idaho State Bd. of Corrections*, 869 F2d 461, 466 (9th Cir. 1989)). "Once the moving party shows by clear and convincing evidence that the contemnor has violated a specific and definite order of court, the burden shifts to the contemnor to demonstrate that he or she took every reasonable step to comply, and to articulate reasons why compliance was not possible." *Bademyan*, 2009 WL 605789, at *2 (citing *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983)). "Intent is not an issue in civil contempt proceedings. The sole question is whether a party complied with the district court's order." *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983) (internal citations omitted).

  **B. Plaintiffs Have Produced Clear and Convincing Evidence of the Non-Compliant ISPs' Wholesale Failure to Comply with This Court's Permanent Injunction Order.**

Notwithstanding the clear terms of the Court's Permanent Injunction Order explicitly binding the Non-Compliant ISPs, the Non-Compliant ISPs have taken absolutely no steps to comply. Despite having received notice of the Court's Permanent Injunction Order more than three months ago (and having similarly received notice of the Preliminary Injunction over 11 months ago), the Non-Compliant ISPs have knowingly refused to cease providing services to the Enjoined Parties, as both Injunctions require they do. To this day, the Non-Compliant ISPs all continue to violate the provisions of the Permanent Injunction Order that bind them. The Non-Compliant ISPs' total failure to comply with the Court's Permanent Injunction Order cannot be explained by good faith or any reasonable interpretation of the Permanent Injunction Order, and, as such, a finding of civil contempt is appropriate.

7

MOTION FOR CONTEMPT
4831-7431-7644v.4 0094038-000021

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

### 1. The Court's Permanent Injunction Order Is Clear and Definite.

The Court's Permanent Injunction Order in this matter is clear and not susceptible to any reasonable interpretation that would explain the Non-Complaint ISPs' failure to take <u>any</u> steps to comply with the Permanent Injunction Order. *Wolfard Glassblowing,* 118 F.3d at 1322. As it applies to the Non-Compliant ISPs, the Permanent Injunction Order sets forth a simple directive: upon receiving notice of the Permanent Injunction Order, the Non-Compliant ISPs must cease providing hosting services to the Enjoined Parties. (Permanent Injunction Order at 9–10, ¶¶ 16–17.) The Permanent Injunction Order even includes a list (Exhibit C) of the <u>precise</u> IP addresses of servers owned or controlled by the Non-Compliant ISPs that the Enjoined Parties are using to host content used in conjunction with their enjoined infringing activities. There is <u>nothing</u> in the Permanent Injunction Order that is in any way unclear regarding what the Non-Compliant ISPs must do to comply with the Permanent Injunction Order.

### 2. The Non-Compliant ISPs Received Notice of the Permanent Injunction Order, But They Have Failed and/or Refused to Remove or Disable Infringing Content Used by the Enjoined Parties.

Despite being permanently enjoined from doing so, Defendant Create New Technology (HK) Limited ("CNT") has brazenly continued to transmit Plaintiffs' copyrighted television programs through Infringing Apps on the TVpad and blueTV devices. For this reason, this Court found CNT in contempt and imposed a coercive fine and award of attorneys' fees against it. [ECF No. 140] However, because Defendant CNT is located in China and geographically outside of the Court's reach, it has continued to flout the Court's Permanent Injunction Order. CNT and the other Enjoined Parties have been able to continue to operate the Infringing Apps on the TVpad and blueTV devices due to the intransigence of the Non-Compliant ISPs.

8

MOTION FOR CONTEMPT
4831-7431-7644v.4 0094038-000021

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Plaintiffs have given the Non-Compliant ISPs ample and frequent notice of the Permanent Injunction Order and the prior Preliminary Injunction Order, highlighting the terms of the order that require the Non-Compliant ISPs to cease providing content hosting services to the Enjoined Parties and painstakingly explaining the binding nature of these Injunctions to the Non-Compliant ISPs. Despite Plaintiffs' careful explanations, the Non-Compliant ISPs have stubbornly refused to comply with the injunctions.

      **C.    The Non-Compliant ISPs' Refusal to Obey the Court's Permanent Injunction Order Merits A Finding of Contempt, and Imposition of Coercive Sanctions for Continued Non-Compliance.**

Once a violation of a court order has been shown, civil contempt sanctions may be imposed. Civil contempt sanctions are employed "to coerce the defendant into compliance with the court's order." *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992); *see also Citizens for Lawful and Effective Attendance Policies v. Sequoia Union High School District*, No. C 87-3204 MMC, 1998 WL 305513, at *4 (N.D. Cal. June 4, 1998).

Civil coercive sanctions by their very nature are "conditional"—meaning "they only operate if and when the person found in contempt violates the order in the future." *Id.* (internal citation omitted). Civil contempt sanctions that are coercive in nature are paid to the district court. *See General Signal Corporation v. Donallco, Inc.,* 787 F.2d 1376, 1380 (9th Cir. 1986). "A court, in determining the size and duration of a coercive fine, must 'consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired.'" *Whittaker,* 953 F.2d at 516 (citing *United States v. United Mine Workers of America*, 330 U.S. 258, 304 (1947)).

Compensatory sanctions, in contrast, are paid to the party bringing the civil contempt motion and are intended to compensate for losses suffered as a result of the contemptuous conduct. *Portland Feminist Women's Health Center v. Advocates for Life, Inc.*, 877 F2d 787, 790 (9th Cir. 1989). Such compensatory sanctions may

9

MOTION FOR CONTEMPT
4831-7431-7644v.4 0094038-000021

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

include plaintiffs' costs to bring the contempt proceeding, including reasonable attorney's fees. *Id.*

### 1. A $1,000 Daily Coercive Fine is Appropriate.

The Non-Compliant ISPs have shown disdain for this Court's Permanent Injunction Order, and have taken no steps to comply. The Non-Compliant ISPs' refusal to obey the Permanent Injunction Order empowers the Enjoined Parties to continue infringing Plaintiffs' copyrights in violation of the Permanent Injunction Order through use of the Non-Compliant ISPs' services. As a result, the massive infringement of Plaintiffs' copyrighted TV programs continues unabated on a daily basis, notwithstanding entry of injunctive relief.

Such brazen disregard for this Court's Permanent Injunction Order and the serious harm being suffered by Plaintiffs requires a significant coercive sanction of $1,000 per day for every day that the Non-Compliant ISPs fail to comply. Such a fine is consistent with other coercive sanctions imposed in this Circuit. *See HM Elecs., Inc. v. R.F. Techs., Inc.*, No. 12CV2884-BAS (MDD), 2014 WL 12102169, at *2 (S.D. Cal. Dec. 16, 2014) (recommending imposition of $1,000 daily coercive fine on non-parties for contempt of court order); *Fed. Trade Comm'n v. Productive Mktg., Inc.*, 136 F. Supp. 2d 1096, 1112 (C.D. Cal. 2001) (imposing over $16,000 compensatory fine plus daily fine of $50, doubling every subsequent day of non-compliance, on non-party for contempt of court order).

### 2. An Award of Attorneys' Fees is Appropriate

The Non-Compliant ISPs' disregard for this Court's Permanent Injunction Order also warrants a compensatory sanction of assessing against each of the Non-Compliant ISPs attorneys' fees and costs incurred by Plaintiffs in making this motion. "The Ninth Circuit has held that a court may sanction a contemnor by ordering that she pay a party's attorneys' fees and costs." *Bademyan*, 2009 WL 605789 at *4 (citing *Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.*, 539 F.3d 1039, 1042 (9th Cir. 2008)). "Where the moving party has incurred time and expense

10

MOTION FOR CONTEMPT
4831-7431-7644v.4 0094038-000021

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

in bringing a motion to enforce compliance with a court order, and the contemnor has taken no steps to comply with the terms of the court's order, an attorneys' fees award is particularly appropriate." *China Cent. Television v. Create New Tech. (HK) Ltd.*, No. CV151869MMMAJWX, 2015 WL 6755188, at *7 (C.D. Cal. Nov. 4, 2015) [ECF No. 140] (this Court previously held CNT in contempt and awarded attorneys' fees against CNT in the amount of $34,680.60).

Plaintiffs request that the Court assess against the Non-Compliant ISPs the attorneys' fees and costs incurred by Plaintiffs in making this motion and direct that Plaintiffs submit a declaration itemizing their attorneys' fees and costs within fourteen (14) days of the Court's order for the Court's review.

## IV. CONCLUSION

The Non-Compliant ISPs' disregard for this Court's Permanent Injunction Order cannot be countenanced. Plaintiffs therefore respectfully request that this Court issue the Compliance Order (a) holding each of the Non-Compliant ISPs in contempt of court; (b) directing that each Non-Compliant ISP promptly comply with the Permanent Injunction Order; (c) assessing against the Non-Complaint ISPs the attorneys' fees incurred by Plaintiffs in making this motion; and (d) directing that any Non-Compliant ISP that fails to comply with the Permanent Injunction Order within five (5) court days of receiving notice of the Compliance Order pay to the Court a fine of $1,000 per day until such time as that Non-Compliant ISP complies with the Permanent Injunction Order.

DATED: October 17, 2017

DAVIS WRIGHT TREMAINE LLP
SEAN M. SULLIVAN
ROBERT D. BALIN (*pro hac vice*)
LACY H. KOONCE, III (*pro hac vice*)
SAMUEL BAYARD (*pro hac vice*)

By: /s/Sean M. Sullivan
Sean M. Sullivan
Attorneys for Plaintiffs
CHINA CENTRAL TELEVISION; CHINA INTERNATIONAL COMMUNICATIONS CO., LTD.; TVB HOLDINGS (USA), INC.; AND DISH NETWORK L.L.C.

11

MOTION FOR CONTEMPT
4831-7431-7644v.4 0094038-000021

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899